**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANTHONY BOWDEN** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-2202 (RBW)** |
| ) | |
| **LAWRENCE M. SMALL, SECRETARY,** ) | |
| **SMITHSONIAN INSTITUTION,** ) | |
| ) | |
| **Defendant.** ) | |

**FIRST AMENDED COMPLAINT OF EMPLOYMENT
DISCRIMINATION AND BREACH OF CONTRACT**

(Race, Color, Sex, Religion, Disability, Reprisal)

**Nature of the Claim**

1.      Plaintiff, Anthony Bowden (hereinafter "Plaintiff" or "Bowden"), respectfully

submits this First Amended Complaint of Employment Discrimination and Breach of Contract.

This First Amended Complaint, as was Plaintiff's original Complaint of Employment

Discrimination and Breach of Contract, is based primarily on acts of race, color, sex, religion

and disability discrimination and reprisal [for prior Equal Employment Opportunity ("EEO")

activity] by Defendant, Lawrence M. Small, Secretary of the Smithsonian Institution, National

Zoological Park ("Smithsonian," "NZP," "National Zoo," "Agency" or "Defendant"), against

Plaintiff.  The acts complained of violate, *inter alia*, Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, *et seq*, as amended by the Equal Employment Opportunity Act of 1972, 42

U.S.C. § 2000e-16 *et seq.*, and as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a

(hereinafter collectively referred to as "Title VII"), violate the Rehabilitation Act of 1973, 29

-1-

U.S.C §§ 791 and 794a, *et seq.,* as amended (hereinafter "Rehabilitation Act"), and also breach

contract with Plaintiff.  Plaintiff is now filing this First Amended Complaint to include

administrative formal complaint Agency Case Number 06-04-010306 in this civil action, which

was filed with the Agency after Plaintiff filed his original Complaint of Employment and Breach

of Contract with this Court, and to make certain corrections and additions, primarily of a stylistic

manner, to his original Complaint.


### Jurisdiction and Venue

2.      This Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e-5(f) and

16(c); 29 U.S.C. §§ 791 and 794a; 28 U.S.C. § 1331, § 1343(a), and 1367(a).

3.      Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b)

because all of the actions complained of herein took place in the District of Columbia within the

jurisdiction of the United States District Court for the District of Columbia.


### Parties

4.      Plaintiff Anthony Bowden is a male, African American, black, non-Jewish,

Baptist, citizen of the United States who suffers from various mental disabilities, including panic

disorder, anxiety disorder and depression, and is an employee of the Smithsonian Institution,

National Zoological Park.  At all times relevant to this action through the present, Plaintiff was

employed by the Smithsonian Institution, National Zoological Park as an Exhibits Specialist,

GS-1010-11.

5.      Defendant Lawrence M. Small, is Secretary of The Smithsonian Institution, of

which the National Zoological Park is a part. The Smithsonian Institution, National Zoological

Park is an agency of the United Stated Federal Government within the meaning of 42 U.S.C. §

2000e-16(a), and 29 U.S.C. § 791.  As the Secretary of the Smithsonian Institution, National

Zoological Park, Defendant is responsible for the employment practices and procedures within

the Smithsonian Institution, National Zoological Park, and is named in his official capacity as

head of the Smithsonian, pursuant to 42 U.S.C. § 2000e-16(c), and 29 U.S.C. § 791.


**Procedural History**

6.      Plaintiff filed three (3) individual administrative formal complaints of

discrimination with the Agency against Defendant which he included in this civil action on

November 10, 2005.  These Complaints are: 1) Agency Case Number 04-16-080604, EEOC No.

100-2004-00391X; 2) Agency Case Number 05-10-031805 and, 3) Agency Case Number 05-23-

071105.

7.      Plaintiff has exhausted all of his administrative remedies.  Plaintiff filed his first

administrative formal Complaint of Discrimination, Agency Case Number 04-16-080604, EEOC

No. 100-204-00391X ("First Complaint"), on or about August 6, 2004 with the Agency alleging

discrimination based on race (African American), color (black), sex (male), religion

(Baptist/non-Jewish), disability (mental), and reprisal for prior Equal Employment Opportunity

activity.  The Complaint was accepted for investigation by letters dated September 3, 2004 and

September 27, 2004, and Complainant requested a hearing after the investigation was completed

before the Equal Employment Opportunity Commission ("EEOC") on February 18, 2005.  By

letter dated August 3, 2005, to the EEOC Administrative Judge ("AJ") Richard W. Furcolo,

Plaintiff withdrew his request for a hearing, informing the AJ that he was planning on filing a

civil action on the matter in federal court, asking that the Complaint be returned to the Agency.

AJ Furcolo then closed the case and returned jurisdiction to the Agency. The Agency then issued a Final Agency Decision ("FAD") dated October 4, 2005 which Plaintiff received on October 11, 2005, in which the Agency found no discrimination and dismissed the complaint. Thus, Plaintiff timely filed this action with this Court on November 10, 2005 regarding the First Complaint pursuant to 42 U.S.C. § 2000e-16(c) ("Within 90 days of receipt of notice of formal action taken by a department, agency, or unit ...", and 29 C.F.R. § 1614.407(a) ("Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed").

8.     Plaintiff filed a second administrative formal Complaint of Discrimination, Agency Case Number 05-10-031805 ("Second Complaint") with the Agency, on or about March 17, 2005  alleging discrimination based on race (African-American), color (black), disability (mental) and reprisal for his previous EEO activity. The Complaint was accepted by the Agency for investigation on March 28, 2005. After the investigation was completed, Plaintiff requested a hearing before the EEOC on August 2, 2005. The Agency has had Plaintiff's Complaint in excess of 180 days and has failed to issue a final action on Plaintiff's Complaint. Thus, Plaintiff timely filed this action with this Court on November 10, 2005 regarding the Second Complaint pursuant to 42 U.S.C. § 2000e-16(c) ("after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit...") and 29 C.F.R. § 1614 407(b) ("After 180 days from the date of filing an individual or class complainant if an appeal has not been filed and final action has not been taken").

9.     On or about July 11, 2005, Plaintiff filed a third administrative formal Complaint of Discrimination, Agency Case Number 05-23-071105 ("Third Complaint") with the Agency, alleging discrimination based on race (African American), color (black), sex (male), religion (Baptist/non-Jewish), disability (mental), and reprisal for his previous EEO activity. The

Agency issued a Final Agency Decision dated August 30, 2005 dismissing Plaintiff's Complaint. Plaintiff thus timely filed this action with this Court on November 10, 2005 as to the Third Compliant pursuant to 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(a) as less than 90 days from Plaintiff's receipt of the Agency's Final Agency Decision had passed when Plaintiff filed this action.

10.      On or about January 3, 2006, Plaintiff filed a fourth administrative formal Complaint of Discrimination, Agency Case No. 06-04-010306 ("Fourth Complaint"), alleging discrimination based on race (African American), color (black), sex (male), disability (mental), and reprisal for his previous EEO activity.  The Agency issued a Final Agency Decision dated January 23, 2006, which was postmarked January 24, 2006, and which Complainant received no earlier than January 25, 2006.  The Agency dismissed that complaint pursuant to 29 C.F.R. § 1614.107(a)(1), as the Agency found that Plaintiff had stated the same claim in this Complaint that had been decided by the Agency in his prior complaints of discrimination.  The Agency made this finding notwithstanding the fact that it acknowledged in the Final Agency Decision that Plaintiff was alleging "more recent incident dates" in this Complaint.  Plaintiff also wishes to include the Fourth Complaint in this civil action, and is timely filing this action as to the Fourth Complaint pursuant to 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(a) as less than 90 days from Plaintiff's receipt of the Agency's Final Agency Decision have passed.

**Factual Allegations**

11.      At all times relevant to this Complaint, Plaintiff was employed by Defendant as an Exhibits Specialist, GS-1010-11. Plaintiff is a black, African American, male, Baptist/non-Jewish citizen of the United States who suffers from various medical conditions, including, *inter alia*, panic disorder, anxiety disorder and depression.  Plaintiff also has previous EEO activity.

12.     Plaintiff has been an employee of the Smithsonian Institution for almost 22 years.

13.     Plaintiff began working at the National Zoological Park in April 1999, when he was transferred there from the National Museum of Natural History pursuant to an agreement with the Agency settling a discrimination complaint filed by Plaintiff in the U.S. District Court, District of Columbia, and styled, *Anthony Bowden v. Ira Michael Heyman, Secretary, Smithsonian Institution*, Civil Action No. 97-0545, JR (D.D.C), which was settled, and approved by the Court on February 18, 1999, and filed with the Court on February 19, 1999.

14.     The settlement agreement for *Bowden v. Heyman*, required, *inter alia*, that the Agency make certain specific reasonable accommodations to Plaintiff's medical conditions, including *inter alia*, "(a) to allow Bowden short breaks to go to the bathroom or if he is not feeling well, (b) to permit Bowden to go outside for a breath of fresh air when working in the spray booth, and (c) to allow Bowden to eat snacks when he takes his medication. Bowden will continue to be permitted time for doctor's appointment in accordance with agency policies and availability of leave."

15.     The aforesaid settlement agreement in *Bowden v. Heyman* also states that "the Smithsonian Institution agrees to restore leave taken by Bowden from July 1994 to the present when Bowden can show by objective evidence, was used as a direct result of his medical condition that is the basis for his claim pursuant to the Rehabilitation Act."  Plaintiff used 140.75 hours of sick leave and 153.25 hours of annual leave for a total of 294 hours of leave taken as a result of his medical condition.  Despite the efforts of Plaintiff's first attorney in 1999 and his present attorney in 2004, the Agency has refused to grant Plaintiff any of this leave and has thus breached the settlement agreement.

**Factual Allegations Regarding Plaintiff's First Complaint,**
**Agency Case Number 04-16-080604, EEOC No. 100-2004-00391X**

16.     During much of the time which the events complained of in Plaintiff's First

Complaint, filed or about August 6, 2004, occurred, Ms. Kathleen Samiy, (white, female, Jewish,

disability status uncertain) was Plaintiff's immediate supervisor, holding the position of

Supervisory Graphics and Production Manager. Ms. Samiy's employment with the Agency

ended on or about March 2004.

17.     In or about June, 2004, Jeffrey Baxter, (white, male, Christian, no disability)

became Plaintiff's immediate supervisor, holding the position of Supervisory Exhibits

Specialist..

18.     During much of the time during which the events complained of in which

Plaintiff's First Complaint occurred, Lynn Dolnick (white, female, Jewish, disability status

unknown) was Plaintiff's second line supervisor, holding the position of Associate Director for

Exhibits and Outreach. Ms. Dolnick's employment with the Agency ended on or about August

2004.

19.     In or about August 2004, Mary Tanner (white/Hispanic, female, Catholic, no

disability) became Plaintiff's second line supervisor.   Ms. Tanner held the position of Deputy

Director of the National Zoological Park.

20.     During all or parts of the time of the events complained of, Plaintiff's supervisors

knew of Plaintiff's prior EEO activity, including specifically his prior civil action against the

Smithsonian Institution which resulted, *inter alia*, in his transfer to his position at the NZP.

21.     During all or parts of the events complained of, Plaintiff's supervisors knew of

his protected activity in opposing discrimination, including specifically from a January 2004

meeting with Mary Tanner and Dolph Sand (white, male, Jewish, disability status unknown),

head of Personnel, during which Plaintiff complained of the discriminatory and retaliatory treatment to which he was being subjected.

22.     Plaintiff alleges that he was subjected to a hostile working environment on the basis of his race, color, religion, sex, disability and in reprisal for his previous EEO activity beginning in or about 2001 and continuing to the present when, *inter alia*:

a.     In 2001 Plaintiff was asked to take on the responsibilities of his supervisor, Rick Hyder (white, male, religion unknown, disability status unknown), who was a Supervisory Exhibits Specialist GS-12.  Plaintiff acted for Mr. Hyder in his (Mr. Hyder's) absence.  Mr. Hyder promised Plaintiff that Plaintiff would receive additional money for his additional responsibilities, but the money never came.

b.   In or about August 2002, Plaintiff was given a letter by Ms. Samiy that stated that Plaintiff was to be the Acting Head of Production for 120 days.  Ms. Dolnick kept assuring him that he would receive a promotion.  However, Plaintiff was never promoted even though this responsibility lasted over one and a half years.

c.     Ms. Dolnick has promoted Jews who were performing higher graded duties, including Jesse Cohen (white, female, Jewish), Aaron Ferster (white, male, Jewish), and Susan Ades (white, female, Jewish), but did not promote Plaintiff when he performed higher graded duties.

d.     On or about May 14, 2003 Ms. Samiy called Plaintiff to her office and gave him a position description for Exhibit Specialist/Project Leader.  Plaintiff explained to her that it was not his position description, that he was an "Exhibit Specialist," and that if he was a "Leader," he deserved a promotion.

-8-

e.      On or about July 25, 2003, Plaintiff met with Scarlett Proctor, Personal Specialist (black, female, religion unknown, no known disability) and Ms. Samiy regarding his position description. Plaintiff described why his assigned duties deserved a promotion, comparing his position to other similar positions.  It was then agreed that he would receive a desk audit. Ms. Samiy requested the desk audit on or about July 23, 2003.

f.      On or about October 16, 2003, Ms. Samiy attempted to postpone the desk audit; however, the audit was conducted on or about October 17, 2003 by James Lewis (white, male, religion unknown).

g.      The report produced by the desk audit was inaccurate and did not include many of the duties actually performed by Plaintiff.

h.      In or about November 2003, Ms. Dolnick said words to the effect that Plaintiff would never be a supervisor.

i.      Plaintiff was told by Ms. Proctor words to the effect that during a desk audit, the auditor questions the supervisor(s), and, if they state that they no longer require the individual to perform certain duties, these duties may be omitted from consideration in the desk audit's consideration of the duties being performed.  Ms. Proctor said that management can change an employee's position description at any time or give you a position description that fits the duties that management wants you to perform.

j.      On information and belief, Plaintiff asserts that his supervisors, Ms. Samiy and Ms. Dolnick, lied to the auditor about his duties in order to prevent him from receiving a promotion.  He also believes that management tried to include in his position description the additional duties that he was performing so that he would not be promoted.

k.      On or about January 13, 2004, Plaintiff met with Ms. Samiy to discuss his having

to work alone on large and heavy projects, and asked for assistance.  He informed her that he injured his back while doing this heavy lifting.  Ms. Samiy responded by getting very angry, yelling at Plaintiff, and asking him how dare he question her.  Plaintiff asked to be excused but Ms. Samiy kept yelling at him, and she then went to Ms. Dolnick's office, who backed her.  Ms. Samiy never addressed Plaintiff having to work with large and heavy projects.

l.       On or about January 16, 2004, Plaintiff met with Mary Tanner and Dolph Sand to complain about the hostile work environment to which he was being subjected, the discriminatory desk audit, discriminatory hiring/promotion practices, and other discriminatory and retaliatory harassment by Ms. Samiy.  During this meeting, Plaintiff complained that he was inappropriately being required to work alone on and move large heavy objects, *e.g.,* signs, despite his having injured his back.  Plaintiff believes that he was deliberately given these potentially injurious assignments based on discriminatory and retaliatory motives.

m.      Subsequent to this January 2004 meeting, the hostile environment continued and got worse.

n.       Kathleen Samiy stated in a staff meeting to be careful around Plaintiff because he has a mental disorder.

o.      On March 19, 2004, as a direct result of the discriminatory and inaccurate information given during the desk audit, the Agency classified Plaintiff's position as a GS-1001-11 Exhibit Specialist, thus failing to properly compensate him for the actual duties that he was performing.

p.      Plaintiff is continually given duties and titles above his assigned position

description, but not compensated for those increased duties and titles.

q.    The Agency thus has continually failed to properly compensate Plaintiff for the higher graded duties that he is actually performing, paying him at a lower rate than that called for by Agency and federal rules and regulations, and lower than that paid to other similarly situated employees not in Plaintiff's protected groups.

r.    In or about May, 2004, Plaintiff's performance appraisal was unjustifiably lowered from "Outstanding" to "Fully Successful." This rating violated Agency procedures because, *inter alia*, it was performed by Lynn Dolnick, who was not Plaintiff's immediate supervisor and violated other Agency evaluation procedural requirements.  Plaintiff had never received any performance rating lower than an "Outstanding" since he was employed at the National Zoo until then.

s.    African Americans are discriminated against in Plaintiff's Department by being required to perform duties not assigned to non-African Americans, including, *inter alia*, moving furniture for the white employees, cleaning and sweeping duties.

t.    Jeff Baxter, Plaintiff's current supervisor, continues to discriminate against Plaintiff by harassing him when, *inter alia*, Mr. Baxter: questions Plaintiff about his activities (but does not question other employees); assigns duties to Plaintiff that Plaintiff should not be doing because they are properly Mr. Baxter's; speaks to Plaintiff in a harsh and demanding manner when he does not treat other employees of other protected groups in that manner; more closely monitors Plaintiff's work than he does that of other employees; re-assigned Plaintiff to a small, windowless office; deliberately overloaded Plaintiff with work assignments; fails to provide Plaintiff the reasonable accommodations

-11-

to which he is entitled by law and to which the Agency specifically previously agreed by Court settlement, and speaks to Plaintiff in an unprofessional manner.

23.    Plaintiff alleges that he was subjected to discrimination on the basis of his race, color, disability and in reprisal for his previous EEO activity when he was informed on or about April 22, 2004 that the Agency had failed to select him for the position of Supervisory Exhibits Specialist (GS-1010-12), Vacancy Announcement No. 04SP-1005.

a.    Lynn Dolnick (white, female, Jewish, disability status uncertain) selected Jeff Baxter (white, male, Christian, no disability) for the position.

b.    Plaintiff was significantly better qualified for the position than Mr. Baxter and had been performing many of the position's duties for some time.  Mr. Baxter was supposedly selected because he had experience with design tools, which turned out not to be the case.

c.    In or about November 2003, previous to the selection for this position, Ms. Dolnick had said words to the effect that Plaintiff would never be a supervisor.

d.    Plaintiff's interview for the position was different from that of other candidates in that it lasted only about 15 minutes and during that interview, he was told words to the effect that they "knew everything about me."

e.    To the best of Plaintiff's knowledge, Ms. Dolnick has never promoted a black person to the GS-12 level.

f.    Ms. Dolnick had told Plaintiff words to the effect that she could not make Plaintiff a GS-12 because Ms. Samiy (white, female, Jewish) is a GS-12.

g.    The job description/job announcement was specifically written and re-written by

Ms. Dolnick to call for skills that were not relevant to the position but would have the effect of reducing Plaintiff's ability to compete and/or qualify for the position.

h.    Also, in what appears to be a highly irregular procedure, Lynne Dolnick had two GS-11's review the job applications for the position to help select the candidates to be interviewed (Ms. Dolnick informed Plaintiff of this).

24.    Plaintiff alleges that he was subjected to discrimination on the basis of his race, color, religion, sex, disability and in reprisal for his previous EEO activity when the Agency failed to properly compensate him for higher graded duties that he is actually performing, paying him at a lower rate than that called for by Agency and federal rules and regulations, and lower than that paid to other similarly situated employees not in Plaintiff's protected groups when it improperly failed to classify his position and duties as a GS-12 on March 19, 2004. Plaintiff alleges that the desk audit of his position that was performed on October 17, 2005 that resulted in his position classification as a GS-1001-11 dated March 19, 2004, was discriminatory, retaliatory, and inaccurate.

25.    On numerous occasions beginning in 2002, Plaintiff complained to Lynn Dolnick and Kathleen Samiy that he was not being provided the reasonable accommodations to his disability that he had been promised by the Agency in the settlement agreement of his previous EEO complaint/civil action.  These failures to accommodate his disabilities and violations of the settlement agreement included not being permitted to get something to eat with his medication, not being allowed to take frequent restroom breaks, and/or to get "fresh air."

26.    Agency employees have offered sworn testimony substantiating Plaintiff's allegations of discriminatory/retaliatory animus and/or a hostile work environment created and maintained by Ms. Samiy and/or Ms. Dolnick. These include, *inter alia*:

a.    <u>Aaron Ferster</u> (white, male, Jewish, no disability).  He and Plaintiff had the same

supervisors, Ms. Samiy and Ms. Dolnick.  Ferster, a Writer-Editor, GS-12-for nine years,

testified, *inter alia*, that he and Plaintiff "were part of a group of males that had been

subjected to what were hostile and inappropriate management activities by [their] mutual

supervisor, Kathleen Samiy." ... "In general, the Office of Exhibits and Outreach has

been run with a general lack of professionalism for a long period of time. The tone

changed from ... 'mismanagement' to 'hostile' shortly after Lynn Dolnick ... hired

Kathleen Samiy to lead the office as the supervisor. Ms. Samiy cultivated a hostile work

environment, in which employees, particularly males, were regularly subjected to threats

of official reprimand, hostile and accusatory confrontations, ambiguous work

responsibilities for which they would be 'held accountable,' and threats ranging from

withholding sick and annual leave to outright dismissal. Throughout, Ms. Dolnick openly

supported and sided with Samiy, effectively facilitating and encouraging the hostile

atmosphere" . . . "the treatment of certain individuals related to their race and gender ...

there was a clear distinction between those employees who were subjected to the most

hostile behavior: they were male, and African American males in particular  . . . I do not

think that African American males could reasonably expect to cultivate the kind of

relationship that would lead to advancement opportunities. When the work atmosphere

turned hostile, that lack of opportunity and access to the management contributed to Ms.

Samiy's ability to threaten and mistreat Mr. Bowden with impunity." Mr. Ferster also

referred in his testimony to Plaintiff's previously being "subjected to unlawful behavior

when he worked at the National Museum of History" and to "Mr. Bowden mention[ing]

that he [Plaintiff] was on medication, and was open with his colleagues about his needing medication and medical support due to stress."

b.    Herman Krebs, (white, male, Congregationalist/Protestant, no disability).  He and Plaintiff had the same supervisors, Ms. Samiy and Ms. Dolnick, and were both part of a group of individuals that gave "notice of intent" to file an EEO complaint in early 2004. Mr. Krebs also testified that he believed that Plaintiff was "also involved in an action at his previous Smithsonian job, which resulted in his being assigned to the National Zoo." Krebs, a senior graphic designer GS-11 who has been with the NZP since 1983, testified that the Office of Exhibits and Outreach "had been managed atrociously for at least ten years up until August of 2004. Lynn Dolnick created an atmosphere of suspicion, unfairness, favoritism, prejudice and incompetence. 'there were different rules for different people.' Promotions were given almost exclusively to staff members of Jewish origin. Performance Ratings were based on how 'comfortable' Ms. Dolnick felt with staff members rather than any professional considerations... and she felt uncomfortable both with men and with African Americans. When Kathleen Samiy was brought on board in July 2002, the situation became drastically worse. Ms. Dolnick was able to continue to foster her own brand of unfairness while using Ms. Samiy as a 'buffer' to insulate herself from personnel actions. This was indeed a hostile work environment for many of us." Furthermore, as to Plaintiff's non-selection for the Supervisory Exhibits Specialist position advertised under Vacancy Announcement No. 04SP-1005, Mr. Krebs testified: "It seemed to me that each time the Announcement was rewritten, the revisions seemed to increasingly exclude the [Plaintiff] from qualifying for the position.  These revisions seemed to mostly involve experience with software that had little to do with the position.

. . . Lynn Dolnick seemed to favor staff members of Jewish origin and was uncomfortable both with men and with African Americans."

c.    Ernest L. Robinson, (African American, male, brown complexion, religion unknown, no disability). He and Plaintiff had the same supervisors, Ms. Samiy and Ms. Dolnick. Robinson, a GS-11 Visual Information Specialist employed by the Smithsonian for 18 years, testified that Plaintiff had made everyone aware of his suffering "from depression and anxiety" during a weekly staff meeting, "and that he was able to control his condition through medication that would sometimes make him drowsy during long meetings." Mr. Robinson also testifies that he and Plaintiff were part of a group of males that had been subjected to hostile and inappropriate management activities by Samiy. He further testifies that: "I was present in a meeting with Kathleen Samiy and Lynn Dolnick, when they promised that Mr. Bowden would be promoted for the duties that he was then performing. When a position was announced for (Production Manager/Exhibits), Mr. Bowden applied for that position. At that time, the duties that he had performed as Acting Production Manager/ contracting officer were taken away from him, and it was at that point that I noticed a change in attitude and the way that he was treated by Kathleen Samiy, and Lynn Dolnick." Mr. Robinson also states that he was treated in a manner similar to Mr. Bowden.

d.    Judy Tasse, (white, female, Jewish, no disability). She and Plaintiff had the same supervisors, Ms. Samiy and Ms. Dolnick. Ms. Tasse, a GS-11 Interpretative Information Specialist at the Agency since 2003, testified that Ms. Samiy did not practice equal treatment in the way she supervised and that sex and race were factors in her treatment of employees. She states "Under the supervisory leadership of Kathleen Samiy, there was

an office environment where certain people, including Mr. Bowden, were treated with less leniency than others, regarding their timekeeping and whereabouts, and were approached, with an authoritarian attitude, rather than collegial professionalism. . . I did not experience this kind of treatment. However, it appeared to me that those people who did experience similar treatment were male, and among those males, the harshest treatment seemed to be given to African Americans." Ms. Tasse also noted that when Mr. Bowden first began working at the NZP, "he informed us (at a staff meeting) that he may sometimes get sleepy at meetings due to medications that he was taking for his disability." She also noted that she was aware that Plaintiff had filed a formal EEO complaint during the time that Kathleen Samiy was supervisor."

e.      Grace Lopez, [Asian American (Filipino), female, brown-skinned, no religious affiliation]. She and Plaintiff had the same supervisors, Ms. Samiy and Ms. Dolnick. Ms. Lopez, an Exhibits Specialist GS-11 who has been with the Smithsonian since 1993, testified: "During the time period in question, October 2003 until May 2004, the work environment had reached a level of hostility toward the employees that was pervasive and oppressive. I was aware of many mistreatments which I perceived first as gender-related bias, then racial bias." . . .During this time period, most all the employees in the department were subjected to poor treatment, especially the men." Mr. Lopez also testified that as "a co-worker, [she] was made aware that [Plaintiff] takes medication for a mental health condition."

**Factual Allegations Regarding Plaintiff's Second
Complaint, Agency Case Number 05-10-031805**

27.     As to Plaintiff's March 17, 2005 Complaint, Agency Case No. 05-10-031805

(Plaintiff's "Second Complaint"), Plaintiff alleges that beginning in about June 2004 his

immediate supervisor, Jeffrey Baxter, (white, male, Christian, no disability), discriminated

against Plaintiff on the basis of his race (African-American), color (black), sex (male), religion

(Baptist/non-Jewish), disability (mental) and in reprisal for his previous EEO activity by, *inter*

*alia*, creating and maintaining a continuous hostile work environment through harassment.  Mr.

Baxter's discriminatory/retaliatory acts include, *inter alia*:

    a.     Plaintiff was the only employee required by Mr. Baxter to work in the "lower

shop," an area that is unsafe; dirty; dusty; unheated; improperly ventilated; has no

exhaust system so that fumes, chemical smells and sawdust are allowed to escape; and

the machines are not properly bolted.  Mr. Baxter postponed requiring a female

employee, Grace Lopez, to work in this area because of the conditions in the lower shop.

No white employees are required to work in this area.

    b.     Mr. Baxter gave Plaintiff a "confirming counseling" letter dated December 17,

2004 relating to a comment Plaintiff had allegedly made about another employee (Elena

Lopez, Hispanic, female, religion and disability status unknown), allegedly calling her a

"crazy lady".  Plaintiff asserts that he only made this remark to his supervisor, Chuck

Fillah (white, male, religion unknown, no disability), actually stating that Ms. Lopez

"must be crazy" as she had told co-workers several lies about Plaintiff.  Mr. Baxter gave

Plaintiff this confirming counseling letter and not to other employees not of Plaintiff's

protected groups even though some of these other employees had said much worse things.

c.    Mr. Baxter required Plaintiff to schedule in advance all sick leave, including not only routine scheduled appointments, but also when Plaintiff became ill, a clearly impossible requirement.  No other employees were asked to meet such a requirement. Furthermore, Mr. Baxter is aware of Plaintiff's disabilities and need to use sick leave both for routine and non-routine purposes.

d.    Mr. Baxter has continuously denied Plaintiff reasonable accommodations to his disabilities despite he (Baxter) being aware of Plaintiff's accommodation needs, by, *inter alia*, continually questioning Plaintiff's whereabouts when Plaintiff goes to the restroom (Baxter does not question other employees not of Plaintiff's protected groups of their whereabouts), take short breaks and/or gets something to eat so that he can have food with his medications. Said reasonable accommodations are specifically provided for in Plaintiff's 1999 settlement matter styled *Anthony Bowden v. Ira Michael Heyman, Secretary, Smithsonian Institution*, Civil Action No. 97-0505, JR (D.D.C).

e.    Mr. Baxter also made Plaintiff attend a meeting only for supervisors which was clearly above his (Plaintiff's) job responsibilities and made Plaintiff feel uncomfortable. Plaintiff was not informed of upcoming projects and was thus unable to contribute much to the meeting.

f.    On March 1, 2005 Plaintiff was given a copy of his performance appraisal for the period of June 2004 through December 2004.  The appraisal was written by Mr. Baxter and occurred about six months after Plaintiff filed his August 6, 2004 EEO complaint which, *inter alia*, complained of acts by Mr. Baxter, and, of which Baxter was aware as

he provided an affidavit responding to that complaint.  Mr. Baxter's affidavit was completed on or about December 8, 2004. Plaintiff alleges that this evaluation which rated him only "Fully Successful" was unfair, incorrect and based on Mr. Baxter's discriminatory and/or retaliatory motives.  Plaintiff had previously received "Outstanding" ratings in 2001 and 2002.  He also was not working from a clear position description as he had been given three or four position descriptions, none of which had been finalized.

g.      On or about March 9, 2005, Mr. Baxter had assigned Plaintiff a task, specifically setting up the lower shop, that Plaintiff could not physically do by himself because of the magnitude of the work and the size/weight of the machines (up to 500 pounds).  Mr. Baxter first alleged that Plaintiff was a supervisor, and could assign other employees to help; however, Plaintiff is not a supervisor and has no authority to assign duties to other employees.  Mr. Baxter also alleged that Plaintiff was a team leader and could assign employees on that authority; however, Plaintiff is not a team leader and has no authority to assign duties to other employees on that basis.  Mr. Baxter refused Plaintiff's request to direct other employee to assist him. Plaintiff's March 2004 position description gives him no supervisory/leadership authority or responsibility and further states that there is no promotion potential in Plaintiff's present position.  Thus, Mr. Baxter was assigning Plaintiff a task that he could not perform by himself, and which he (Baxter) refused to assign Plaintiff the necessary resources to complete, and which Plaintiff had no authority to direct other employees to assist him.

h.      On more than one occasion, Mr. Baxter, in speaking with Plaintiff, had used the

phrase "you people" in speaking to Plaintiff a phrase that Plaintiff interprets as a

reference to African Americans, and which Plaintiff found obnoxious and humiliating.

i.       Earnest Robinson, an African American male, has testified that he heard Baxter

make the following statement to Plaintiff, specifically that he (Baxter) "doesn't trust you

people." Mr. Robinson took it to mean that Baxter was saying that he does not trust

"Blacks." Mr. Robinson further testified that based on his personal observations that

"there is an obvious level of discrimination and discomfort in the way that Mr. Baxter

relates to (Black Males) than other groups."

j.       Mr. Baxter also undermined Plaintiff by meeting with the Welders on or about

August 24, 2004 without Plaintiff knowing, and asking them for a work schedule, which

was Plaintiff's responsibility.

### Factual Allegations Regarding
### Plaintiff's Third Complaint. Agency Case No. 05-23-071105

28.      As to Plaintiff's July 11, 2005 Complainant, Agency Case No. 05-23-071105

(Plaintiff's "Third Complaint"), Plaintiff alleges that beginning in about December 2002 that he

has been continuously denied a reasonable accommodation to his disability and that the Agency

has continually violated the settlement agreement in the action styled *Anthony Bowden v. Ira*

*Michael Heyman, Secretary, Smithsonian Institution*, Civil Action No. 97-0505, JR (D.D.C); that

he has been continuously subjected to a hostile environment and disparate treatment based on his

race, color, sex, religion, disability, and reprisal for his prior EEO activity; and that Defendant

discriminated against him on the basis of these prohibited motives when, on or about May 9,

2005, the Agency failed to take action appropriate action regarding an assault on Plaintiff by a

co-worker, Elena Lopez.

29.    Regarding the denial of reasonable accommodation, Ms. Samiy, despite knowing about his disabilities, continuously questioned Plaintiff as to why he took so many bathroom breaks, interfered with Plaintiff's leaving for a doctor's appointment in front of his co-workers, had his medical documents and doctors excuses spread around her office unsecured, and increased his workload.  Ms. Samiy continued this behavior although Plaintiff specifically e-mailed his second-line supervisor, Ms. Dolnick, in November 2003, that he had been feeling blue, had symptoms such as lack of concentration, shortness of breath, heart palpitations, dizziness, headaches, lack of appetite, and sleep.  He also later e-mailed Ms. Dolnick that his Paxil, an anti-depressant, had been increased, that he had been on sleeping pills, and was now on anti-anxiety medication.

30.    Despite Ms. Dolnick and Ms. Samiy knowing about Plaintiff's disabilities, Ms. Samiy continued her hostile behavior towards Plaintiff regarding his disabilities.  She told him on or about March 11, 2004,  that his being on medication was disruptive!  She also told everyone in a staff meeting to be careful around Plaintiff because he had a mental disorder and was on medication!  Plaintiff informed Personnel head Dolph Sand that Ms. Samiy had asked him in front of his co-workers what is wrong with him and why all of a sudden does he need all of these doctors' appointments and sick days off, and that she required Plaintiff to give her a schedule of her doctor appointments.

31.    On or about March 30, 2004, Ms. Samiy informed Plaintiff of an increase in his work duties when he already had a heavy work load, again with no additional compensation.  The increased work exacerbated Plaintiff's panic disorder, anxiety disorder and depression.

32.    Plaintiff also advised his supervisor(s), Jeff Baxter and Acting Associate Director of Exhibits and Outreach, Charles Fillah, of his disabilities in June 2004.  However, Mr. Baxter

assigned Plaintiff to the unsafe, dusty, dirty, cold lower shop, even though Plaintiff informed Mr. Baxter that working in the lower shop aggravated his knees and back problems.

33.     In late December 2004, Plaintiff was admitted to the hospital because of work-related stress.  Two days later, Mr. Baxter told Plaintiff that he (Plaintiff) would have to start scheduling sick leave, even though he (Baxter) knew that Plaintiff had to be flexible with his sick leave because of his disabilities.  Mr. Baxter also continuously questioned Plaintiff about his whereabouts, even though Mr. Baxter knew that Plaintiff had to take short breaks to go to the restroom and get something to eat to take with his medications, and often had to go to the bathroom because of frequent urination and diarrhea.  Mr. Baxter also questioned Plaintiff why he wasn't to work on time when Plaintiff was on time but had to first go to the bathroom.  Mr. Baxter also made Plaintiff place his leave slips in a book located in the hallway, even though Plaintiff was uncomfortable with this procedure because his leave slips contained confidential information.  Plaintiff informed Mr. Sand of this situation.

34.     Plaintiff asked Debbie Burney and Ken Howard of the Employee Assistant Program (EAP) to speak to his supervisors or doctor about his disabilities, but EAP never contacted his supervisors or doctor.

35.     On or about May 9, 2005, Elena Lopez, a Hispanic female, deliberately "rammed" her shoulder into Plaintiff.  Plaintiff reported the assault to his supervisor, Jeff Baxter; Charles Fillah (Plaintiff's second level supervisor); Susan Ades (Elena Lopez's first line supervisor; and the National Zoological Park police.  Mr. Baxter said that there was nothing that he could do about the incident unless he had seen it.

36.     On at least two prior occasions, Ms. Elena Lopez has intentionally assaulted Plaintiff by intentionally and repeatedly bumping against him.  These actions had been reported

to Mr. Baxter.  Mr. Baxter took no action to prevent future assaults on Plaintiff. However, Baxter

did, as described herein, discipline Plaintiff for his alleged comments about Ms. Lopez.

37.     On or about May 16, 2005, Plaintiff was required to attend a staff meeting with

Elena Lopez, even though he had requested as a reasonable accommodation not to attend the

meeting with her, as he knew that this would aggravate his disabilities, especially because Ms.

Lopez had just assaulted him.

38.     Defendant has taken no action to prevent assaults on Plaintiff and/or to discipline

Elena Lopez for her assaults on Plaintiff. As a direct result of Defendant's failure, Plaintiff has

been required to work in an environment where he is subjected to physical assault, intimidation

and humiliation.

### Factual Allegations Regarding Plaintiff's Fourth Complaint,
### Agency Case Number 06-04-010306

39.     Throughout the time of the events complained of in Plaintiff's Fourth Complaint,

filed on or about January 3, 2006, Jeffrey Baxter (white, male, Christian, no disability) was

Plaintiff's immediate supervisor, holding the position of Supervisory Exhibits Specialist.  Mr.

Baxter engaged in new incidents of discrimination and retaliation against Plaintiff after Plaintiff

filed his Third Complaint on or about July 11, 2005.

40.     Plaintiff alleges here that he was subjected to a hostile working environment on

the basis of his race, color, sex, disability and in reprisal for his previous EEO activity beginning

in August 2005, and continuing to the present when, *inter alia*:

a.     On August 19, 2005, Plaintiff was assigned a work ticket (work

assignment) by Mr. Baxter to hang thee banners leading to the Panda House.  The work ticket

instructed Plaintiff to notify Mr. Baxter when he (Plaintiff) was going to hang the banners.  Later

that day Plaintiff and his co-worker, Sherod Mangum (African-American, male, Christian, no

disability) went to the Panda House as instructed.  However, after the two men reviewed the job,

they had questions regarding how to complete the job.  Plaintiff called Mr. Baxter and left a

voicemail message as instructed.  About ten to fifteen minutes later, Mr. Baxter rushed toward

the two men and in a very unpleasant and loud voice, questioned Plaintiff as to what he was

doing at the Panda House.  Mr. Baxter yelled at Plaintiff in front of many visitors walking by

who were looking to see what was going on.  This incident was very embarrassing to Plaintiff.

      b.    Mr. Baxter also informed Plaintiff in the above incident that the next time

Plaintiff wanted to speak to him about a job that he (Plaintiff) had to first make an appointment.

Plaintiff pointed out to Mr. Baxter that he (Baxter) had an open door policy as to his staff.

      c.    Plaintiff had been speaking to Mr. Baxter for at least three months before

he filed his Fourth Complaint on or about January 3, 2006, about Plaintiff being assigned work

tickets that had impossible work deadlines.  For example, Mr. Baxter would give Plaintiff a work

ticket with a start date of August 8th and with an ending date of August 9th.  However, Plaintiff

would not receive the work ticket until August 11th.

      d.    Plaintiff was also typically assigned approximately 80% of the work

tickets.  Mr. Mangum would typically be assigned the remainder of the work tickets.  A female

co-worker with whom Plaintiff and Mr. Mangum worked, Grace Lopez, was typically assigned

no work tickets.  Thus, Plaintiff is discriminatorily and retaliatory being given a very heavy

workload.

      e.    Mr. Baxter also treats Grace Lopez very differently than Plaintiff in that

Ms. Lopez, who is also, like Plaintiff, an Exhibit Specialist, is allowed to work in a comfortable

office environment while Plaintiff has to do "grunt work" in all types of weather.  Plaintiff is

assigned work by Mr. Baxter involving heavy lifting, but Ms. Lopez does not get any work

assignments that are heavy or physical in nature, even though her job responsibilities include

installations, cleaning of signs and the general upkeep of the Park.  In the month of September

2005, Mr. Baxter assigned Plaintiff to clean a wall in the Giraffe House which was filled with

animal droppings and other hazardous germs.  Plaintiff explained to Mr. Baxter that he feared

that cleaning the wall was hazardous, as the employees didn't have the proper safety equipment

(i.e., chemical suits, gloves and respirators) and they had not been vaccinated against the germs

that might be in this area.  Plaintiff also informed Mr. Baxter that one of the animals housed in

that area had died of tuberculosis.  Plaintiff also reminded Mr. Baxter that he (Plaintiff) suffered

from allergies which could be triggered by cleaning the Giraffe House.  Mr. Baxter, however,

confirmed to Plaintiff on September 19, 2005 that he (Plaintiff) had to clean the wall.


### Damages

41.     As a direct result of the events complained of, Plaintiff suffered economic,

emotional and physical damage, including, *inter alia*:

a.     Failing to receive the proper pay and pay grade due to the Agency's

discriminatory failure to properly classify and grade the actual duties performed by

Plaintiff;

b.      Failing to select Plaintiff for the position of Supervisory Exhibit Specialist GS-12

under Vacancy Announcement No. 04SP-1005, and thus denying him a promotion from a

GS-11 and the increase in pay that would have resulted.

c.     Due to the discriminatory and retaliatory hostile environment to which it has

subjected Plaintiff, causing Plaintiff to suffer great emotional pain and suffering,

including exacerbating his anxiety disorder, panic disorder and depression; distress, humiliation and work related stress; physical pain and suffering such as shortness of breath, heart palpitations, dizziness, headaches, lack of appetite and lack of sleep; economic damages, including loss of past, present and future income and loss of pay and benefits.  Plaintiff has been forced to seek medical treatment for his work-caused symptoms and has been prescribed anti-depressants and anti-anxiety medications and has even been hospitalized because of the work-induced stress.

d.    Being subjected to physical assault and intimidation.

## COUNT ONE

### DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII: HOSTILE ENVIRONMENT

42.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 41, above.

43.    Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his race, African American, by creating, maintaining and subjecting Plaintiff to harassment and a continuous hostile work environment as described, *inter alia*, in ¶¶ 22 through 40, above.

44.    As a direct result of these actions by Defendant, Plaintiff suffered the damages as described in ¶ 41 above.

## COUNT TWO

### DISCRIMINATION ON THE BASIS OF COLOR IN VIOLATION OF TITLE VII:  HOSTILE ENVIRONMENT)

45.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 44, above.

46.    Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his color, black, by creating, maintaining and subjecting Plaintiff to harassment and a continuous hostile work environment as described, *inter alia*, in ¶¶ 22 through 40, above.

47.    As a direct result of these actions by Defendant, Plaintiff suffered the damages as described in ¶ 41 above.

## COUNT THREE

### DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII:  HOSTILE ENVIRONMENT

48.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 47, above.

49.    Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his sex, male, by creating, maintaining and subjecting Plaintiff to harassment and a continuous hostile work environment as described, *inter alia*, in ¶¶ 22 through 40, above.

50.    As a direct result of these actions by Defendant, Plaintiff suffered the damages as described in the ¶ 41 above.

## COUNT FOUR

### DISCRIMINATION ON THE BASIS OF RELIGION IN VIOLATION OF TITLE VII:  HOSTILE ENVIRONMENT

51.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 50, above.

52.    Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his religion, Baptist/non-Jewish, by creating,

maintaining and subjecting Plaintiff to harassment and a continuous hostile work environment as described, *inter alia*, in ¶¶ 22 through 40, above.

53.     Plaintiff notes that some of his supervisors clearly favored Jews over non-Jews for positive treatment.

54.     As a direct result of these actions by Defendant, Plaintiff suffered the damages as described in ¶ 41 above.

## COUNT FIVE

### DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE REHABILITATION ACT:  HOSTILE ENVIRONMENT

55.     Plaintiff adopts and incorporates by reference Paragraphs 1 through 54, above.

56.      Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his disabilities:  panic disorder, anxiety disorder, and depression, by creating, maintaining and subjecting Plaintiff to harassment and a continuous hostile work environment as described, *inter alia*, in ¶¶ 22 through 40, above.

57.     As a direct result of these actions by Defendant, Plaintiff suffered the damages as described in ¶ 41 above.

## COUNT SIX

### DISCRIMINATION ON THE BASIS OF REPRISAL IN VIOLATION OF TITLE VII AND THE REHABILITATION ACT:  HOSTILE ENVIRONMENT

58.     Plaintiff adopts and incorporates by reference Paragraphs 1 through 57, above.

59.    Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his prior EEO activity, including his filing of a civil action in federal court, filing administrative EEO complaints with the Agency, and raising EEO issues with the Agency, by creating, maintaining and subjecting Plaintiff to harassment and a continuous hostile work environment as described, *inter alia*, in ¶¶ 22 through 40, above.

60.    As a direct result, Plaintiff suffered the damages as described in ¶ 41 above.

## COUNT SEVEN

### DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII:  NON-SELECTION

61.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 60, above.

62.    Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his race, African American, by failing to select him as a Supervisory Exhibits Specialist, GS-1010-12, under Vacancy Announcement No. 04SP-1005, of which Plaintiff was informed on or about April 22, 2004, as described, *inter alia*, in ¶ 23 above.

63.    The Agency selected a lesser-qualified individual who was not African American for the position in question.

64.    As a direct result of this non-selection, Plaintiff suffered the damages as described in ¶ 41 above.

## COUNT EIGHT

### DISCRIMINATION ON THE BASIS OF COLOR IN VIOLATION OF TITLE VII:  NON-SELECTION

65.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 64, above.

66.     Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his color, black, by failing to select him as a Supervisory Exhibits Specialist, GS-1010-12, under Vacancy Announcement No. 04SP-1005, of which he was informed on or about April 22, 2004, as described, *inter alia*, in ¶ 23 above.

67.    The Agency selected a lesser-qualified white individual for the position in question.

68.    As a direct result of this non-selection, Plaintiff suffered the damages as described in ¶ 41 above.

## COUNT NINE

### DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE REHABILITATION ACT:  NON-SELECTION

69.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 68, above.

70.    Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his disabilities:  panic disorder, anxiety disorder, and depression, by failing to select him as a Supervisory Exhibits Specialist under Vacancy Announcement No. 04SP-1005, of which he was informed on or about April 22, 2004, as described, *inter alia*, in ¶ 23 above.

71.    The Agency selected a lesser-qualified individual who was not disabled.

72.    As a direct result of this non-selection, Plaintiff suffered the damages as described

in ¶ 41 above.

## COUNT TEN

### DISCRIMINATION ON THE BASIS OF REPRISAL
### IN VIOLATION OF TITLE VII AND THE
### REHABILITATION ACT:  NON-SELECTION

73.     Plaintiff adopts and incorporates by reference Paragraphs 1 through 72, above.

74.      Plaintiff alleges that Defendant willfully, intentionally, maliciously and
unlawfully discriminated against him on account of his prior EEO activity, including his filing of
a civil action in federal court, filing administrative EEO complaints with the Agency and raising
EEO issues with the Agency, by failing to select him as a Supervisory Exhibits Specialist, GS-
1010-12, under Vacancy Announcement No. 04SP-1005, of which he was informed on or about
April 22, 2004 as described, *inter alia*, in ¶ 23 above.

75.     The Agency selected a lesser-qualified individual with no prior EEO activity for
the position in question.

76.     As a direct result of this non-selection, Plaintiff suffered the damages as described
in ¶ 41 above.

## COUNT ELEVEN

### DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF
### TITLE VII:  FAILURE TO PROPERLY COMPENSATE PLAINTIFF

77.     Plaintiff adopts and incorporates by reference Paragraphs 1 through 76 above.

78.     Plaintiff is a GS-11, but has been performing higher graded duties since 2001 so
that he is actually performing at a GS-12 level.

79.     Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his race, African American, by failing to properly grade and compensate him for the duties that he was actually performing in various ways, including by making sure that the desk audit of October 17, 2003 was not done based on correct information and otherwise was not properly performed, and by classifying his Exhibits Supervisor position as a GS-1001-11 Exhibit Specialist on March 19, 2004.

80.     Other similarly situated individuals who are not African American had their positions properly graded and were compensated for the work that they actually performed.

81.     As a direct result of these actions by Defendant, Plaintiff suffered the damages as described in ¶ 41 above.


## COUNT TWELVE

### DISCRIMINATION ON THE BASIS OF COLOR IN VIOLATION OF TITLE VII: FAILURE TO PROPERLY COMPENSATE PLAINTIFF

82.     Plaintiff adopts and incorporates by reference Paragraphs 1 through 81, above.

83.     Plaintiff is a GS-11, but has been performing higher graded duties since 2001 so that he has been actually performing at a GS-12 level since then.

84.     Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his color, black, by failing to properly grade and compensate Plaintiff for the duties that he was actually performing in various ways, including by making sure that the desk audit of October 17, 2003 was not done based on correct information and otherwise was not properly performed, and by classifying his Exhibits Supervisor position as a GS-1001-11 Exhibit Specialist on March 19, 2004.

85.    Other similarly situated individuals who are not black had their positions properly graded and were compensated for the work that they actually performed.

86.    As a direct result of these actions by Defendant, Plaintiff suffered the damages as described in ¶ 41 above.

## COUNT THIRTEEN

### DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII:  FAILURE TO PROPERLY COMPENSATE PLAINTIFF

87.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 86, above.

88.    Plaintiff is a GS-11, but has been performing higher graded duties since 2001 so that he has actually been performing at a GS-12 level since then.

89.    Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his sex, male, by failing to properly grade and compensate Plaintiff for the duties that he was actually performing in various ways, including by making sure that the desk audit of October 17, 2003 was not done based on correct information and otherwise was not properly performed, and by classifying his Exhibits Supervisor position as a GS-1001-11 Exhibit Specialist on March 19, 2004.

90.    Other similarly situated females had their positions properly graded and were compensated for the work that they actually performed.

91.    As a direct result of these actions by Defendant, Plaintiff suffered the damages as described in ¶ 41 above.

## COUNT FOURTEEN

### DISCRIMINATION ON THE BASIS OF RELIGION IN VIOLATION OF TITLE VII:  FAILURE TO PROPERLY COMPENSATE PLAINTIFF

92.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 91, above.

93.     Plaintiff is a GS-11, but has been performing higher graded duties since 2001 so that he has actually been performing at a GS-12 level since then.

94.     Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of religion, Baptist/non-Jewish, by failing to properly grade and compensate Plaintiff for the duties that he was actually performing in various ways, including by making sure that the desk audit of October 17, 2003, was not done based on correct information and otherwise was not properly performed, and by classifying his Exhibits Supervisor position as a GS-1001-11 Exhibit Specialist on March 19, 2004.

95.    Other similarly situated individuals not in Plaintiff's protected religious group(s), particularly Jewish people, had their positions properly graded and were compensated for the work that they actually performed.

96.    As a direct result, Plaintiff suffered the damages as described in ¶ 41 above.


## COUNT FIFTEEN

### DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE REHABILITATION ACT: FAILURE TO PROPERLY COMPENSATE PLAINTIFF

97.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 96 above.

98.     Plaintiff is a GS-11, but has been performing higher graded duties since 2001 so that he has actually been performing at a GS-12 level since then.

99.     Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his disabilities, panic disorder, anxiety disorder and depression, by failing to properly grade and compensate Plaintiff for the duties that he was actually performing in various ways, including by making sure that the desk audit of October 17, 2003 was not done based on correct information and otherwise was not properly performed, and by classifying his Exhibits Supervisor position as a GS-1001-11 Exhibit Specialist on March 19, 2004.

100.    Other similarly situated non-disabled individuals not in Plaintiff's protected disability group(s) had their positions properly graded and were compensated for the work they actually performed.

101.    As a direct result, Plaintiff suffered the damages as described in ¶ 41 above.

## COUNT SIXTEEN

### DISCRIMINATION ON THE BASIS OF REPRISAL IN VIOLATION OF TITLE VII AND THE REHABILITATION ACT: FAILURE TO PROPERLY COMPENSATE PLAINTIFF

102.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 101, above.

103.    Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully discriminated against him on account of his prior EEO activity, including his filing of a civil action in federal court, filing administrative EEO complaints with the Agency, and raising EEO issues with the Agency, by failing to properly grade and compensate Plaintiff for the duties that he was actually performing in various ways, including by making sure that the desk audit of October 17, 2003 was not done based on correct information and otherwise was not properly performed, and by classifying his Exhibits Supervisor position as a GS-1001-11 Exhibit Specialist on March 19, 2004.

104.    As a direct result, Plaintiff suffered the damages as described in ¶ 41 above.

## COUNT SEVENTEEN

## VIOLATION OF SETTLEMENT AGREEMENT/BREACH OF CONTRACT

105.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 101, above.

106.    Plaintiff alleges that Defendant willfully, intentionally, maliciously and unlawfully violated and breached its settlement agreement under *Bowden v. Heyman*, Civil Action No. 97-0545 JR (D.D.C.), with Plaintiff when it failed to provide the reasonable accommodations it was required to under the terms of that agreement as described in ¶ 14, and when it failed to restore his leave, as described in ¶ 15 above.

107.    As a direct result, Plaintiff suffered the damages as described in the ¶ 41 above.

## COUNT EIGHTEEN

## VIOLATION OF THE REHABILITATION ACT:
## FAILURE TO REASONABLY ACCOMMODATE

108.    Plaintiff adopts and incorporates by reference Paragraphs 1 through 107, above.

109.    At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability pursuant to the Rehabilitation Act and the Americans With Disabilities Act.

110.    In addition to the Settlement Agreement referred to in ¶ 106, Plaintiff requested reasonable accommodation for his disabilities from the Agency numerous times, but the Agency never reasonably accommodated him.

111.    As a direct results of the Defendant not accommodating him, Plaintiff suffered damages as described in ¶ 41 above.

WHEREFORE, Plaintiff Anthony Bowden, respectfully prays for the following relief:

a.      Enter a declaratory judgment that Defendant's actions violated the rights of the Plaintiff by discriminating and retaliating against him in violation of Title VII and the Rehabilitation Act of 1973, and by violating the Rehabilitation Act of 1973 by not reasonably accommodating his disabilities.

b.      Order that Defendant immediately cease and desist from discriminating and retaliating against Plaintiff.

c.      Order that Defendant immediately reasonably accommodate Plaintiff's disabilities.

d.      Order that Defendant immediately promote Plaintiff to a GS-12 Supervisory Exhibits Specialist, or to a similar position retroactive to the date that he would have been promoted but for Defendant's discriminatory and retaliatory acts, with retroactive pay and benefits.

e.      Order that Defendant retroactively pay Plaintiff all of the monies and benefits that he should have received because he was performing higher graded duties, but did not receive, because of Defendant's discriminatory and retaliatory treatment of him.

f.      Order that Defendant pay Plaintiff the sum of Three Hundred Thousand Dollars ($300,000.00) that will compensate him for his pain and suffering, and for the other non-pecuniary losses that it caused him by discriminating and retaliating against him, and for not reasonably accommodating his disabilities.

g.      Order that Defendant pay Plaintiff an appropriate amount of consequential damages that will compensate him for the future opportunities that he lost due to Defendant's discriminatory and retaliatory treatment of him.

h.      Order that Defendant pay all of Plaintiff's expenses of litigation, including

reasonable attorney's fees and costs for this action including such attorney's fees and costs that Plaintiff incurred in the processing and litigating of Plaintiff's administrative complaints and breach of contract  in this matter.

      i.     Enter a declaratory judgment that Defendant breached the settlement agreement as reached in *Anthony Bowden v. Ira Michael Heyman, Secretary, Smithsonian Institution*, Civil Action No. 97-0505, JR (D.D.C .), in regard to reasonable accommodation of Plaintiff's disabilities and restoration of leave, and order that Defendant immediately abide by these terms of the settlement agreement.

      j.     Order any other relief that it deems just and proper.

### Jury Demand

The Plaintiff respectfully requests a jury trial on all matters raised herein.

                            Respectfully submitted,

April 24, 2006

                                _____/s/_____

                                Steven J. Silverberg
                                District of Columbia Bar #377376
                                Attorney for Plaintiff
                                1819 L Street, N.W., Suite 700
                                Washington, D.C. 20036
                                Tel: (202) 785-8499
                                Fax: (202) 785-8470
                                E-mail: sjsilverberg@erols.com