```
IN THE UNITED STATES DISTRICT COURT
    FOR THE DISTRICT OF COLUMBIA


- - - - - - - - - - - - - - x


ANTHONY BOWDEN,


        Plaintiff,


vs                                    CA No. 05-2202


LAWRENCE M. SMALL, SECRETARY,

SMITHSONIAN INSTITUTION,

        Defendant.
- - - - - - - - - - - - - - x
                Thursday, June 21, 2007
                Washington, D.C.


DEPOSITION OF:
                KATHLEEN ADIB-SAMIY,
called for oral examination by counsel for the
plaintiff, taken at the Department of Justice,
501 Third Street, Northwest, Washington, DC,
beginning at 10:10, a.m. on Thursday, June 21, 2007,
before Maureen Donelson, Court Reporter, Notary
Public in and for the State of Maryland, when were
present on behalf of the respective parties:
```



EXHIBIT 29
CA 05-2202

```
 1     On BEHALF OF THE PLAINTIFF:

 2            STEVEN J. SILVERBERG, ESQUIRE

 3            1819 L Street, Northwest

 4            Washington, D.C.  20036

 5            (202) 785-8499

 6            Sjsilverberg@erols.com

 7

 8     ON BEHALF OF THE DEFENDANT:

 9            DEPARTMENT OF JUSTICE

10            BY:  W. MARK NEBEKER, ESQUIRE

11            555 4th Street, Northwest

12            Washington, DC.  20530

13            (202) 514-7230

14            mark.nebeker@usdoj.gov

15

16            SMITHSONIAN INSTITUTION

17            BY:  MILDRED GLOVER, ESQUIRE

18            ASSOCIATE GENERAL COUNSEL

19            1000 Jefferson Drive, Southwest

20            Washington, DC  20560

21            (202) 633-5097

22

23
```

1         P R O C E E D I N G S

2   Whereupon,

3            KATHLEEN ADIB-SAMIY,

4   called for examination by counsel for the plaintiff,

5   and having been duly sworn by the Notary Public, was

6   examined and testified as follows:

7         EXAMINATION BY COUNSEL FOR THE PLAINTIFF

8   BY MR. SILVERBERG:

9         Q.   Ms. Samiy, I'm Steven Silverberg. I'm

10  plaintiff's attorney, Anthony Bowden's attorney.

11  I'll either call him Mr. Bowden or the plaintiff

12  throughout this.

13            What is it that brought you here

14  today?

15        A.   I received a call from Mark asking me

16  to come talk to you about this complaint that Tony

17  has filed.

18        Q.   Mark Nebeker?

19        A.   Yes.

20        Q.   For the record.

21        A.   I'm sorry, yes.

22        Q.   Are you here pursuant to a subpoena is

23

1           MR. SILVERBERG:  Not a leader.  I mean

2    officially a leader.

3           MR. NEBEKER:  Same objection.

4           THE WITNESS:  I am a little confused.

5      BY MR. SILVERBERG:  (RESUMED)

6      Q.   Did you have a meeting with him or did

7    you meet with him where you showed him that PD

8    exhibit specialist slash project leader?

9      A.   I know there was confusion.  Tony had

10   -- all the staff had job descriptions.  Most average

11   between 10 to 15 years out of date.

12          Of the entire department, Tony's was

13   one of many that were out of date by different

14   ranges.  Many staff no longer had their position

15   descriptions in their hands or knew what they said

16   or had read them in years and years and years.

17          So when I discovered Tony's job

18   description was project leader, I believe that he

19   did have some objections and said that he had never

20   seen that job description, he wasn't aware of it,

21   and there were some issues around him ever having

22   been in receipt.  He felt he had never been in

23

1   receipt of the project leader job description, but

2   they were what I had found in the official files.

3   And it was based on what I had in the file.

4              So I think from that, there was -- it

5   led into some desk audits.

6              MR. NEBEKER:  Can I take a short

7   break?  Just five minutes.

8              MR. SILVERBERG:  Yes.

9              (Thereupon, a brief recess was taken)

10             (Document marked Exhibit No. 1)

11             MR. SILVERBERG:  Back on the record.

12             BY MR. SILVERBERG:  (RESUMED)

13        Q.   Ms. Samiy, I'm going to give you an

14  exhibit which I've had marked as Exhibit No. 1.

15             Do I have to formally move it in, Mr.

16  Nebeker?

17             MR. NEBEKER:  You can hand it to the

18  witness and have her identify it.  That's good

19  enough for me.

20             MR. SILVERBERG:  Thank you, sir.

21             BY MR. SILVERBERG:  (RESUMED)

22        Q.   This is only the front page because I

23

1   in every time.
2           Do you see an e-mail in the middle
3   where it says Kathleen Samiy, 7/22/03 3:55 PM, hello
4   Dan, Lynn and Scarlitt?
5       A.  I'm sorry, I was reading it while you
6   were speaking.  Can you repeat your question?
7       Q.  Do you see right here on the e-mail it
8   has your name and it says 7/22/03 3:55 PM?  Do you
9   see that?
10      A.  Yes, I do.
11      Q.  Did you write this e-mail?
12      A.  Yes.
13      Q.  Who are Dan, Lynn and Scarlitt?
14      A.  I think Dan was the personnel person
15  on staff on the zoo premises.
16      Q.  Dan who?
17      A.  I don't remember the last name.
18      Q.  And Lynn is Lynn Dolnick?
19      A.  Yes.
20      Q.  And Scarlitt is Scarlitt Proctor?
21      A.  Yes.
22      Q.  Now, you say I would like to formally
23

1    request a desk audit for Anthony Bowden.
2              Is that when you requested a desk
3    audit?
4         A.   It looks like it.  It says I'm
5    formally requesting it.
6         Q.   If you look at the second paragraph,
7    through discussions with Tony, blah, blah, blah, it
8    is clear that his job description is very old,
9    outdated and does not include duties, tasks and
10   responsbilities he is fulfilling.
11             Do you know what you meant by that?
12        A.   Just what it says.  The position PD is
13   old and outdated and it doesn't include some duties
14   and tasks that he is fulfilling.
15        Q.   You say our hope is that this audit
16   will clarify his job description, bring clarity to
17   the equal work for equal pay he is entitled.
18        A.   Yes.
19        Q.   What were you saying there?
20        A.   That was a term that I think came
21   through the -- it's not a term I would normally use.
22   I believe it's a legal term, a personnel legal term
23