

**U.S. Department of Justice**

United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St. N.W.*
*Washington, D.C. 20001*

June 29, 1999

Alan Banov, Esq.
Alan Banov and Associates
1899 L Street, N.W., Suite 1250
Washington, D.C. 20036-3805
FAX: 822-6392

Re: <u>Bowden v. Heyman</u>
   C. A. No. 97-0545 (JR) (D.D.C.)

Dear Mr. Banov:

This is in response to your letter dated June 25, 1999, regarding the above-referenced matter. In your letter, you raise certain issues regarding compliance with the provisions of the settlement agreement. Although we believe that the Smithsonian is in compliance with all of its obligations under the settlement, we welcome your letter as the Smithsonian, too, has raised concerns regarding the plaintiff's compliance and this gives us an opportunity to address these concerns.

You raised two issues, relating to leave restoration and reimbursement for three days' pay. First, with regard to the leave restoration, the Smithsonian is waiting documentation that will be sufficient to evaluate the claims. As you know, the Settlement Agreement at paragraph 6 states that the Smithsonian Institution agrees to restore leave taken by Mr. Bowden from July 1994 to the date of the Agreement which

> "...Bowden can show, <u>by objective evidence</u>, was used as a direct result of his medical condition that is the basis for his claim pursuant to the Rehabilitation Act, i.e. panic disorder. Such restoration shall be limited to the extent Bowden is compensated for such leave through a workers' compensation claim, a claim for which he presently has pending. Bowden will provide documentation of the use of

- 1 -



EXHIBIT 41
CA 05-2202

such leave in connection with his medical condition within two pay periods of the Court's approval of this stipulation...
(Underscoring supplied)

As you know, the only information submitted by Mr. Bowden was a list of leave taken with the reasons stated as "depressed" or "Doctor" or "stressed" in addition to a scattering of dates for doctors appointments. Obviously, the objective evidence must be more than such conclusory, passing statements We have on more than one occasion raised the issue of supplying the required documentation with you. The Smithsonian has been awaiting patiently the <u>objective evidence</u> which was to be provided by Mr. Bowden under the Agreement, yet has not been forthcoming. Once the plaintiff complies with this provision and provides the required documentation, the Smithsonian will evaluate the request.

Second, as to the back pay, the paperwork regarding the back pay for the three-day suspension was initiated by the National Museum of Natural History in March, after which staff was informed that a new timecard needed to be submitted, which in turn required tracking down the original timecard. This was done, and the new time card was submitted to the Smithsonian payroll office. The museum is continuing to check on the status of this action.

Finally, and most important, the Smithsonian is concerned about Mr. Bowden's compliance with the provisions regarding his transfer to the National Zoo. We note that Mr. Bowden was reassigned from the National Museum of Natural History to the National Zoological Park (NZP or Zoo) on March 15, 1999. The parties intended to provide Mr. Bowden with a "clean slate" with the only accommodations set forth at paragraph 3 of the Settlement Agreement. These were "(a) to allow Bowden short breaks to go to the bathroom or if he is not feeling well, (b) to permit Bowden to go outside for a breath of fresh air when working in the spray booth, and (c) to allow Bowden to eat snacks when he takes his medication."

Notwithstanding the above Agreement, Mr. Bowden reported to his immediate supervisor at the National Zoo, Mr. Richard Hider, on March 15, 1999, and immediately left, indicating that he was not able to work. Mr. Bowden returned to the Zoo on April 5, 1999, and stated that he could only work from 8 a.m. to 12 noon each day, with the remaining four hours as leave without pay, which has been the situation since. The Smithsonian has no idea how long this situation is expected to last, or if indeed it is medically supportable. There was no indication by you or your client when the Settlement Agreement was being drafted and executed that Mr. Bowden would be incapable of performing a full range of duties in the new organization. This has presented some difficulties for the Zoo in terms of scheduling work assignments, although Mr. Hider has been quite accommodating.

Mr. Bowden's earlier arguments focused on the alleged "stressful" work environment at the Natural History Museum, along with the pending litigation, as the bases for his workers compensation claim. By transferring Mr. Bowden to the National Zoo and in settling the pending litigation, both of these factors have been removed, yet Mr. Bowden continues to pursue anew a workers compensation claim (the latest CA 7 is dated May 12, 1999), and to state that he can only work part time at the Zoo. This, as well as the other issues discussed above, would appear to be inconsistent with the understandings reflected in the Settlement Agreement.

Based on the foregoing, I agree with your suggestion that it is advisable to bring these matters to the attention of the Court for guidance and resolution. We suggest a joint call to chambers to schedule a status conference. Please call me at 202/305-4742 this week to make arrangements.

                      Sincerely,

                      WILMA A. LEWIS
                      United States Attorney

            By:    DARIA J. ZANE
                    Assistant United States Attorney

cc: James D. Douglas, Esq.
    357-4310