# PLAINTIFF'S EXHIBIT 16

Report of Investigation, Case No. 04-16-080604—October 8, 2004 Affidavit of Anthony Bowden, Tab 5, pp. 3, 14, 17, Damage Assessment (unpaginated); Exhibit 5A

## AFFIDAVIT

|                        |   |
|------------------------|---|
| District of Columbia   | ) |
|                        | ) |
|                        | ) |
| City of Washington     | ) |
|                        | ) |

  I, Anthony Bowden, am being first duly sworn on oath make the following statement freely and voluntarily to James S. Gee who has identified himself to me as an investigator assigned by the Smithsonian Institution to perform this investigation, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any party who has an official interest.

  This affidavit is given in relation to the complaint of discrimination filed by me, Anthony Bowden, on August 6, 2004, SI Case No.: 04-16-0080604.

**Q.** **What is the name of the agency for which you worked the organizational unit to which you were assigned and the address of your duty station at the time of the alleged discrimination (October 2003 to May 2004)?**

A. Smithsonian Institution, National Zoological Park ("Agency")
  Exhibits Department
  3001 Connecticut Avenue, N.W.
  Washington, D.C. 20008

  [Please note that the time of the alleged discrimination in this Complaint is not to May 2004, as stated in this question, but to October 1, 2004 (see letter from Era L. Marshall, Director, Office of Equal Employment and Minority Affairs, to Complainant, dated October 6, 2004, re: "Request to Amend Complaint, Attachment 1)].

**Q.** **What were your position title, series and grade at the time of the alleged discrimination? How long did you hold this position?**

Initials _АВ_
Page 1 of 19 Pages

A.    Exhibits Specialist, General, 1999.
      Exhibits Specialist, Leader, 2002. (I was unaware that I was a leader until I
      asked for additional money to compensate me for my doing higher graded
      duties).
      Project Manager, 2002.
      Acting Head of Production, 2002.

      These titles ran concurrently, depending on what management needed at
      the time.  I was a GS-11/1010 in all of these positions although I was
      performing higher graded duties throughout 2002 and should have been
      graded at least a GS-12.


Q.    **During this period, who were your immediate and second-level
      supervisors?**

A.    Kathleen Samly (white, female, Jewish), Immediate
      Lynn Dolnick (white, female, Jewish), Second Level
      Until March 2004.

      Lynn Dolnick, Immediate
      Mary Tanner (white, female, religion unknown), Second Level
      Until June or July 2004.

      Jeff Baxter (white, male, religion unknown), Immediate
      Lynn Dolnick, Second Level
      Until September, 2004.

      Jeff Baxter, Immediate
      Charles Fuller (white, male, religion unknown), Second Level
      September 2004 to present.


Initials _____
Page 2 of 19 Pages

Q.    **Please give a brief history of your employment with the Zoological Park.   Have any of your positions been supervisory?**

A.    I started working at the Zoological Park in April 1999. I was sent there pursuant to an agreement reached with the Agency settling a discrimination complaint filed in federal court.  I was hired as an Exhibits Specialist, General, GS-11.

In 2001, I was asked to take on the responsibilities of my then supervisor, Rick Hyder (white, male, religion unknown), who was a Supervisory Exhibits Specialist, GS-12.  He had stated to me that more money would come to me because of the added responsibilities.  I acted on his behalf in his absence.  I was required to continue to do the job of a supervisor after Mr. Hyder transferred to a different position.  I applied for his position in or about January.  However I was denied the position even though I was still doing the job.  Kathleen Samiy was hired to replace him.  I spoke to Lynn Dolnick and asked why I had not been selected.  Ms. Dolnick replied that it was a desk job and she felt that I would not be happy.  I told her that that decision should have been mine.  Ms. Dolnick said that she was working on something for me and asked that I be patient.  Lynn said that Kathleen is a Designer and that she does not have adequate production skills.  She asked that I work closely with Kathleen and told me that she (Ly)) had wanted me to take on the responsibilities in heading Production and that she was working on a promotion for me.  Lynn had also expressed concerns about selecting Kathleen because Kathleen was abrasive.

In September, 2002, I received a letter from Kathleen Samiy indicating that I was to be Acting Head of Production for 120 days.  This responsibility lasted for over one and a half years.

I asked to be compensated for the added responsibilities that were ongoing. I asked Lynn Dolnick several times about the status of the promotion in which she stated that she was working on for me.  I was never compensated for the added responsibilities or promoted.

Kathleen Samiy insisted that the work that I had been performing fell under the GS-11 guidelines.  Ms. Samiy stated that both she and Ms. Dolnick wanted me to continue to perform the duties that I felt were well above an

Initials  *JB*
Page 3 of 19 Pages

Exhibit Specialist, General, and were at least at the GS-12 level. They insisted that I was a leader instead of a supervisor and tried to have me sign a performance plan that had someone else's name on it and insisted that it belonged to me. After this Kathleen created a new performance plan which included jobs that I had been performing which were above an Exhibit Specialist, General responsibilities. She asked that I sign the performance plan that she had put together. I told her that I did not want to sign it because I was not being compensated for the added responsibilities. She asked me if this meant that I was not going to continue to do the job. I told her that I would continue but we needed to meet with Scarlet Proctor (black, female, religion unknown) the Personnel Specialist.

On or about June 25, 2003, I met with Scarlet Proctor and Kathleen Samiy. Kathleen stated that it did appear that I was working above my job level. Scarlet looked on Kathleen's desk and noticed that she (Kathleen) had my medical documents scattered around. Ms. Proctor informed Kathleen that these kinds of documents should always be under lock and key. I was then asked to leave the meeting while they spoke in private. Once I returned, Kathleen asked if I would continue to do what I had been doing if she gave me an incentive award or a special achievement award. I asked Scarlet whether could this be done. She said yes. I told them that I should be compensated for the work that I am doing and that an award would only be one time. I told them that I wanted equal pay for equal work. Kathleen asked me if that meant that I was not going to continue to do the work. I told her that I will do what I am asked but asked if she could at least promise me a desk audit. She agreed.

On July 23, 2003, Kathleen Samiy requested my desk audit, but she then suggested on October 16, 2003 that it be postponed. Scarlett Proctor said though that it should be continued as scheduled. On October 17, 2003, the desk audit was performed by James Lewis (white, male, religion unknown). He did not review my documents and proof of work, and only asked me a few questions. The audit only took a half an hour instead of the two hours that Scarlett said that it would. Mr. Lewis completed his report only four days later, and he did not find that my grade should be higher. He did not include many of my duties in this report. I believe that Lynn and Kathleen were untruthful and discriminatory when questioned by the auditor about my work and duties.

Initials _MB_

I was told by several of my co-workers that Lynn and Kathleen had illegally been interviewing people for the Exhibit Specialist Supervisor Production job which had not been posted; I approached both of them and asked why they were holding interviews if a job had not been posted. Lynn stated that she was trying to hire this person as a temp. I informed them that I did not feel that what they were doing was right. Lynn asked that I be patient and said that she was working on something for me that she felt that I would be better suited for.

On or about January 13, 2004, I met with Ms. Kathleen Samiy. I told her that I wanted to discuss her having me work alone on large and heavy projects. I told Kathleen that I needed help with this heavy work and that I had injured my back while trying to move large and heavy signs (I clearly believe that I was given this heavy work as part of the harassing pattern of discrimination and retaliation). Kathleen got very angry at me and started yelling at me, and asked me how dare I question her. I asked to be excused as she kept yelling and went to Lynn Dolnick's office to speak with her. Lynn backed Kathleen. Clearly I was being harassed. Kathleen never addressed my having to work with large and heavy projects.

I began to question Lynn, Kathleen, and Deputy Director Mary Tanner (Lynn's supervisor) by e-mail about the illegal interviewing practices that were being held. A meeting was set for me to speak with Mary Tanner and Dolph Sand (white, male, Jewish), who is head of Personnel. The meeting was to be held in January 2004. This meeting was requested several months before the job was posted and several months before January. Mary had requested that Dolph be present. He is an Attorney; I believe that he was included to guide Mary Tanner through the meeting because they knew that they were doing things that were discriminatory and retaliatory.

I told them about the desk audit and improper hiring practices. I told them how Kathleen continually harassed me about what I was wearing, my arrival time, and by her tone of voice and her snapping at me and making threats of discipline; and by her taking my work and taking credit for it. I told them that I believed I was being discriminated and retaliated against. However, things got no better for me. I believe that they got worse because I asserted my rights. The hostile environment continued.

Initials _____

Page 5 of 19 Pages

Several months passed, and a job was posted for Exhibit Specialist Supervisor (GS-12); I applied and was told by Scarlet Proctor that I had made the cert (best qualified list). I asked Scarlet Proctor who was the top candidate on the cert. She told me that there were two certs, and that all she could tell me is that I made one.

Late December 2003, I went on vacation, when I returned Sherod Magnum, a co-worker, informed me that management had posted a job that looked similar to the job for which I applied. I went to speak to Folami Ahota who is the Administrative Assistant for our department. She said that she thought that the job had been reposted.

Lynn Dolnick selected Jeff Baxter for the Supervisory Exhibit Specialist position in or about April 2004.

I continued to keep Mary Tanner abreast of what was going on in the Exhibit shop with the constant harassment, micro-managing, race and sex discrimination, hostile work environment and being harassed about my handicap (anxiety/panic disorder) by Kathleen Samiy and Lynn Dolnick. Kathleen had actually stated in a staff meeting to be careful around me because I have a mental disorder!)

It seemed as though Mary Tanner did not want to be bothered with the ongoing harassment and discrimination because Dolph Sand called me and sent me an e-mail that stated that all future e-mails should go to him and for me not to send Mary Tanner anything else. All future correspondents went to Dolph Sand from then on.

Although I was not told by management that the job had been reposted while I was on vacation, which I also discussed in the meeting that I had with Mary Tanner, I did apply for the position and again I made the cert.

After the meeting with Mary Tanner and Dolph Sand, the harassment only got worse. My supervisor, Jeff Baxter continuously singles me out and asks me what I'm working on. Jeff told me on July 12th, 2004 that I was being reassigned into a small confined office with no window and replaced with independent contractors instead of regular employees. He speaks to me in an unprofessional manner. I also note how blacks in the Exhibit

Initials

Page 6 of 19 Pages

Department are given clean-up duties. I am constantly being put in charge of clean-up duties. Whites are not given these duties. I also am continuing to have to perform work that is supposed to be Jeff's responsibilities, such as managing contractors. Management continues to overload me with work. [Please see attached EEO Addendum dated August 18, 2004 (Attachment 2) and Amended EEO Complaint dated October 5, 2004 (Attachment 3) as to how I've been discriminated and retaliated against and subjected to a hostile environment since early August 2004].

I requested documents that stated how many blacks were in the management position from the EEO Office. Scarlet Proctor forwarded my request to Mildred Glover. I requested notes from Lynn Dolnick and Kathleen Samiy from when they interviewed at least two interested parties for the Supervisory Exhibits Specialist position before it was posted. I also requested that Scarlet, Kathleen and Lynn retain all notes taken as to why the original job announcement had been retracted and I requested that they keep the list of all candidates that made the cert from the original job posting. A similar request was made for the first job announcement as well.

I am still waiting for an accurate position description. My responsibilities continually are above what I'm paid for. I've been given titles such as Exhibit Specialist/General, Exhibit Specialist/Leader, Head of Production and Project Manager, and do the duties of these positions, but I am never promoted.

Q.     **Do you have a mental or physical impairment which substantially impacts a major life activity? If so, did you request an accommodation? If so, what was your request and was it granted?**

A.     I have panic/anxiety disorder and depression. In my previous case, my agreed upon accommodations included being allowed to take short breaks and go outside to get fresh air when needed, and to be allowed to eat when I take my medication. On numerous occasions beginning in 2002, I went to Lynn Dolnick and Kathleen Samiy and informed them that I was not being accommodated as agreed upon by the Smithsonian. I told them that because I am on medication that I would sometimes get sleep and needed to take short breaks to get something to eat with my medication. Also, at times I would

Initials _*AB*_

need to get some fresh air, I also informed them that I needed restroom breaks often because of the illness that I am undergoing makes me urinate frequently. These accommodations were never really granted. [See letter from Surnya Azam, M.D. dated October 2, 2004 (Attachment 4) as to my exact diagnoses, symptoms and treatment, reasonable accommodations that I need and how my condition impacts major life activities].

Q.     What is your race, color, sex and religion?
A.     African-American, Black, Male, Baptist.

Q     Please indicate whether you have ever been involved in any prior EEO activity and describe the nature of your involvement (e.g., sought counseling, filed formal complaint, participated as witness, identified as responsible official).

A.     I filed a discrimination complaint in U.S. District Court, *Anthony Bowden v. Ira Michael Heyman, Secretary, Smithsonian Institution*, in 1999, Civil Action No. 97-0545 JR (D.D.C), which settled in 1999. Prior to filing this complaint in court, I filed it as an administrative EEO formal complaint.

Q     On what bases do you believe you have been discriminated against at this time?

A.     Race, color, religion, sex, handicap, and retaliation because of my prior EEO activity.

Q.     Have you discussed this matter with anyone?  With whom?  When? What was discussed?

A.     Yes.
Kathleen Samiy, 2002 until she left the Zoo.  See EEO formal complaint.
Lynn Dolnick, 2002 until she left the Zoo.  See EEO formal complaint.
Mary Tanner, November 2003 through January 2004.  See EEO formal complaint.

Initials _____

Page 8 of 19 Pages

Dolph Sand, January 2003 through present.  See EEO formal complaint that I submitted

Scarlet Proctor, July 2003.  See EEO formal complaint.

Debbie Bernie, 2004.  We discussed my EEO complaint and how it's affecting me emotionally.

Karen Howard, 2004.  We discussed my EEO complaint and how it's affecting me emotionally.

Chandra Helman, 2004.  We discussed my EEO complaint and how it's affecting me emotionally.

Shadella Davis, 2004.  We discussed my EEO complaint and how it's affecting me emotionally.

Surriya Azam, (my psychiatrist), March 2003 - present.

Steven Silverberg (my attorney), July 2004 - present.


1.    You allege that you were discriminated against based on race, color, sex, religion and/or disability and/or reprisal, when from October 2003 to the present, you have been subjected to discrimination which created a hostile work environment.

Q.    Have you discussed this matter with anyone?  With whom?  When?  What was discussed?

      A.    Yes.


Kathleen Samiy, 2002 until she left the Zoo.  See EEO formal complaint.

Lynn Dolnick, 2002 until she left the Zoo.  See EEO formal complaint.

Mary Tanner, November 2003 through Jan 2004.  See EEO formal complaint.

Dolph Sand, January 2003 through present.  See EEO formal complaint.

Scarlet Proctor, July 2003.  See EEO formal complaint.

Debbie Bernie, 2004.  We discussed my EEO complaint and how it's affecting me emotionally.

Karen Howard, 2004.  We discussed my EEO complaint and how it's affecting me emotionally.

Chandra Helman, 2004.  We discussed my EEO complaint and how it's affecting me emotionally.


Initials  _____

Page 9 of 19 Pages

Shadella Davis, 2004. We discussed my EEO complaint and how it's affecting me emotionally.

Surriya Azam, (my psychiatrist), March 2003 - present.

Steven Silverberg (my attorney), July 2004 - present.

Q.    **Explain in what way you were discriminated against, by whom, when from October 2003 to the present, you have been subjected to discrimination which created a hostile work environment.**

A.    From October 2003 through the present, I have been subjected to continuous and severe harassment which has consisted of many hostile actions against me. Lynn Dolnick and Kathleen Samiy both treated me disparately because I am black, male, not Jewish, have a mental handicap, and because I had participated in prior EEO activity. The Agency, specifically Lynn Dolnick, has failed to promote me even though I perform higher graded duties. Lynn stated how can she give me a promotion if Kathleen Samiy is only a GS-12. She never stated that I was not doing the work. Lynn Dolnick promoted several of my co-workers none, of them are black, and none of them were made to have a desk audit performed. One of my co-workers, Grace Lopez, was promoted to a GS-11. Her job title is also Exhibit Specialist, General. However she is not required to perform the same duties as I am. All of my co-workers who have been promoted to a GS-12 are of Jewish descent and/or are white. They are not made to work above their job duties without compensation as am I. Lynn Dolnick did not tell the Auditor the truth about the duties that I perform. Lynn threatened my job for speaking to her supervisor. Lynn said that she didn't appreciate me going to speak with her supervisor and if it continued there would be severe consequences. Lynn would always side with Kathleen although Lynn knew that Kathleen was wrong. Lynn would say things like I had misunderstood or I had misinterpreted things. Lynn forced me into a meeting despite the fact that I told her that I was not feeling well and that I was under an enormous amount of stress. This took place in front of a staff member, Herman Krebs. In the meeting all she wanted to tell me is that I was not selected for the position. Lynn said to me, and I quote, "You may get a 12 but

Initials _____

Page 10 of 19 Pages

you'll never be a supervisor." I found this to be very upsetting.
Lynn continuously harassed me about what I wear and my arrival
time. She would speak to me in a harsh tone of voice, snap at me,
and threaten me with discipline. She would take my work and take
credit for it. Lynn also gave me a performance appraisal in April
2004 in which she rated me "Fully Successful", which was lower
than my previous rating of "Outstanding."

Kathleen Samiy, micromanaged me after I requested a desk audit,
failed to grant me vacation, discriminated against me because of my
handicap, discriminated against regarding desk audit (no one else
had to go through a desk audit to receive a promotion and I didn't
even receive the promotion), did not tell the Auditor the truth about
the duties that I perform, harassed me about requesting a promotion,
asked only me to clean up and sweep, threatened my job for
speaking to her supervisor, never threatened anyone who was not
black and made me work above my job duties without
compensation. She made me lift furniture (no non-blacks were
asked to do this). She asked me to send an e-mail or leave a
message as to when I arrived to work, no one else was asked to do
this. I was made to work alone on heavy projects even though there
was other Exhibit Specialists there that could have assisted me. She
hollered and screamed at me on more than one occasion. She
harassed me about doctor's appointment in front of co-workers. She
asked me why all of the sudden I have all of these appointments. I
was told by co-workers that Kathleen told them in a staff meeting to
be careful how they speak to me because I'm on medication and/or
because I have a mental disorder.

Jeff Baxter singles me out and asks me what I am working on,
reassigned me into a small confined office with no window that was
away from regular employees and with independent contractors,
gave me extra work right after I went to EEO (he gave me 12 work
tickets), speaks to me inappropriately and constantly demands
(instead of asking) that I do things, overloads me with work, gives
me assignments without splitting them up with my co-workers,
changes work assignments that he gives me, gives my conflicting
information regarding my responsibilities, (e.g., whether I should

Initials _____

work with the contractors), forces me to leave my leave slips in public even though they contain confidential information, has me do his job duties (e.g., repairing the panels in the Panda House), goes behind my back to question employees that I am supervising (such as the welders), communicates with me mainly by e-mail, has not spoken to Debbie Burnee from EAP about my condition as I requested, demands that he know my whereabouts at all times, and has shifted my duties to "grunt" work (sweeping, cleaning signs, repairing work done by an outside contractor, moving furniture, drilling holes in the wall, etc.) from my more substantive duties. I am also still waiting for an accurate position description. (Please see formal EEO Complaint of Discrimination, EEO Addendum dated August 18, 2004 (Attachment 2), and Amended EEO Complaint dated October 5, 2004 (Attachment 3), which set forth the exact details and dates of all of the above incidents of harassment by Jeff Baxter).

Q.    Please provide copies of any written communication, and the names of any witnesses to any oral communication relevant to this issue.

A.    Kathleen Samiy
      Lynn Dolnick
      Mary Tanner
      Dolph Sand
      Scarlet Proctor
      Debbie Burnie
      Karen Howard
      Chandra Helman
      Shadella Davis
      Surriya Azam, (my psychiatrist)
      Steven Silverberg, (my Attorney)
      Aaron Foster
      Ernie Robinson
      Folami Ahota
      Grace Lopez
      Herman Krebs
      Jessie Cohen

Initials _____

Judy Tasse
Kate Headline
Lisa Holmes
Levi Murrell
Melissa Gaulding
Rick Hyder
Stacy Tabllario
Sherod Mangum
Patrice _____
Kimberly Newton

See formal complaint, EEO Addendum and Amended EEO Complaint).

2.    **You allege that you were discriminated against based on race, color, sex, religion and/or disability and/or reprisal, when on April 22, 2004 you were was informed that you were not selected for the position of Supervisory Exhibits Specialist, Vacancy Announcement No. 04SO-1005.**

Q.    **Explain in what way you were discriminated against when you were informed that you were not selected for the position of Supervisory Exhibits Specialist, Vacancy Announcement No. 04SO-1005.**

A.    I was discriminated because Lynn Dolnick selected Jeff Baxter, a white male, who was much less qualified than me for the position. Jeff was brought in from outside the federal government supposedly because he had experience with design tools. However, this did not seem to be the case. Lynn's actions and statements evidenced discriminatory and retaliatory animus against me. She had previously stated that I would never become a supervisor and she did the interviewing for the position. My interview only lasted 15 minutes because it was said that they already knew everything about me. I had been performing the job for over a year and a half, received Outstanding on my performance appraisal and still was not selected. Lynn has not promoted one black to the GS-12 level. Lynn had previously said that how could she make me a GS-12 if Kathleen Samiy, who is white, female, and Jewish, is a GS-12. She has consistently favored other whites, Jews, and women. I also

Initials _____
Page 13 of 19 Pages

believe that my prior EEO activity was held against me so that I could not progress.

Q.    **Explain and present any additional evidence you have to support your allegation that your race, color, sex religion and disability were factors when you were not selected for the position in question.**

A.    See answer immediately above and because of the continuing hostile environment to which I was subjected, which can only be explained by discrimination and retaliation.

3.    **You allege that you were discriminated against based on race, color, sex, religion and/or disability and/or reprisal, when in or around May 2004, you received a "Fully Successful" performance rating.**

Q.    **Explain in what way you were discriminated against, when in or around May 2004, you received a "Fully Successful" performance rating.**

A.    Since I've been employed at the Zoo, I have never received any rating that was less than "Outstanding." I can't understand with all of the added responsibilities that I was undertaking that were above my job description how I could not have received an Outstanding. I was staying late to perform emergency jobs, coming in on week-ends and coming in early because of my complaining and speaking to upper management about the discrimination and the hostile work environment to which I was constantly being subjected. This performance appraisal was Lynn Dolnick and Mary Tanner's way of retaliating (I was being punished for prior EEO activity) and discriminating against me. I had even told Mary Tanner is the meeting that we had with Dolph Sand that they were going to attack my performance rating next. At the time she didn't believe that they would, and then she had the nerve to sign off on it. Mary may not even have read it. At the time that Lynn Dolnick gave me my appraisal, she was only my immediate supervisor for only two months after Kathleen was asked to leave in March. The fact that I performed so well and only received a "Fully Successful" shows me

Initials  *AB*

Page 14 of 19 Pages

that the rating was discriminatory and retaljatory.

Q.   **Explain and present any additional evidence you have to support your allegation that your race, color, sex, religion and/or disability and/or reprisal were factors when in or around May 2004, you received a "Fully Successful" performance rating.**

A.   See Answer immediately above and because of the continuing hostile environment to which I was subjected, which can only be explained by discrimination and retaliation.

Q.   Were you notified that your rating would be lowered or that you needed to improve your performance? If so, explain what happened.

A.   Not at any time.

Q.   **Please provide copies of any written communication, and the names of any witnesses to any oral communication relevant to this issue.**

A.   See EEO complaint file.
     Kathleen Samiy
     Lynn Dolnick
     Mary Tanner
     Dolph Sand
     Scarlet Proctor
     Debbie Burnie
     Karen Howard
     Chandra Helman
     Shadella Davis
     Surriya Azam, (my psychiatrist)
     Steven Silverberg, (my Attorney)
     Aaron Foster
     Ernie Robinson
     Folami Ahota
     Grace Lopez
     Herman Krebs
     Jessie Cohen

Initials _____

Page 15 of 19 Pages

Judy Tasse
Kate Headline
Lisa Holmes
Levi Murrell
Melissa Gaulding
Rick Hyder
Stacy Tabllario
Sherod Mangum
Patrice _____
Kimberly Newton

4.    You allege that you were discriminated against based on race, color, sex, religion and/or disability and/or reprisal, because your position description does not accurately reflect the number and level of the duties you perform.

Q.    What is the basis for your claim that you were discriminated against because your position description does not accurately reflect the number and level of the duties you perform?

A.    I was clearly performing duties that went beyond my position description, in number and level, yet I was not promoted. I am not aware of any whites or Jewish people or women in this situation. Whites and Jews that were leading their side of the department were promoted to level GS-12. I was also not allowed to progress and receive higher pay because of my prior EEO activity. Although I led my side of the department, I was not promoted. Also, I received a discriminatory and retaliatory desk audit. A fair desk audit would have shown that I was performing higher graded duties and should be promoted. I do not know any white or Jewish person or woman who had to be audited in order to receive a promotion, and I was not even promoted!

Q.    What duties do you perform that are not under the purview of your position description? Is the assignment of these duties discretionary or non-discretionary?

A.    I have been unclear as to what my position description is. I have

Initials _____
Page 16 of 19 Pages

**Q**    **Please state what you seek in resolution of this complaint.**

**A.**    1.    Promotion to Grade 12, retroactive with back pay and benefits to the date that I started working in a supervisory capacity and performing higher graded duties, and in the alternative, retroactive to mid-April 2004 (the date that I found out that I was not selected for the GS-12 Exhibits Special Supervisor position).

2.    Restoration of leave that I had to take because of work-related stress.

3.    Restoration of leave that I did not receive as required to pursuant to the settlement agreement in my prior discrimination case, *Anthony Bowden v. Ira Mich Heyman, Secretary, Smithsonian Institution*, Civil Action No. 97-0505, JR (D.D.C. 1999).

4.    Administrative leave be granted for time that I had to take for work-related stress.

5.    Last performance appraisal, given in 2004, raised from "Satisfactory" to "Outstanding".

6.    Transfer.

7.    All reasonable accommodations requests be granted.

8.    $300,000.00 in compensatory damages for pain and suffering caused by the Agency's discriminatory/retaliatory treatment of me.

9.    All expenses incurred in this matter, including attorney's fees and costs.

10.    All other relief as required in the interest of justice.

**Q.**  **Is there anything more you wish to add to your statement? If so, please explain**.

**A.**  Ernie Robinson, Aaron Ferster, Herman Krebs and I asked to speak with Mary Tanner about how Kathleen Samiy and Lynn Dolnick created a hostile and discriminatory work environment for males. They started harassing Aaron and Herman only to cover up the way that they were treating Ernie and myself. Both of us are black. Herman and Aaron are white. We requested to speak with Mary Tanner but met with Al Bain instead. We had drafted a letter to May Tanner which clearly outlined sex discrimination and harassment.

I have read this statement consisting of _19_ pages and I have made all necessary corrections and additions, and have initialed every page.

I hereby declare under penalty of perjury that the forgoing statement is true, correct, and complete to the best of my knowledge and belief.

Signature of Affiant: _Anthony Bowden_

Date: _10 - 8 - 04_

Subscribed and sworn to before me this ___8ᵗʰ___ day of November, 2004:

DONALD W. HENSHAW
Notary Public District Of Columbia
My Commission Expires August 14, 2007

_Notary Public_

My commission expires:

Initials _AB_
Page 19 of 19 Pages

## COMPENSATORY DAMAGES

### *KIND*

1.    **Have you sustained any physical or mental injury as a result of actions taken by the Agency?**


Yes.

2.    **Describe the injuries you have sustained?**
      **Agitated Mental Illness.**

3.    **What kind of physical manifestations of emotional distress have you exhibited?**

        Examples:    Panic/anxiety attacks, sensations of choking, racing thoughts, depression, weight loss or gain, insomnia, nightmares, heart palpitations, headaches, stomach problems, difficulty concentrating, irritability, panic/anxiety attacks, numbness in the hands, problems with sex drive, muscle tension, shortness of breath, dry mouth, fatigue, hot and cold sweats, feeling of worthlessness and from time to time thoughts of suicide.

4.    **Describe in detail the emotional distress, stress, anxiety, etc. Have you sought medical attention?**
            **The names and addresses of each health care provider?**
            **Dates of treatment?**
            **Type of treatment?**

I am under an enormous amount of stress in the workplace. In many instances I am discriminated against due to my race, color, sex, religion, and handicap. I've been threatened by supervisors that challenged my job security. I have been yelled at and talked about by my supervisor. I was laughed at by my supervisors and co-workers. My ideas have been stolen form me. I worked in the capacity of Head of Production for well over a year without appropriate compensation. I've been passed over for a promotion. I was misrepresented when my supervisors were questioned regarding my desk audit. I have been harassed because of my condition and a supervisor stated at a staff meeting that I have a mental disorder, so people should be careful around me. See No. 3 as to the details of this emotional distress, anxiety, etc.

My psychiatrist is Surriya Azam, M.D.  I've sought and am presently under a doctor's care.

March 2003 - currently.

Psychotherapy and medication.

5. **Are you currently taking any medication(s)?**
   **What is the name of the medication(s)?**
   **How long have you been taking it?**
   **What is the dosage?**
   **Are you suffering from any side effects of any medication(s)?**

Xanax, over ten years, however I've had an increase in dosage since 2003.
.05mg/twice per day
Paxil, about ten years, however the dosage had been increased since 2003.
.25mg/two tablets = .50mg
Ambien, about six months. One at bed time.
Clonazepam, Two weeks. One at bed time.

My side effects from the medication include dry mouth, low sex drive, sleepiness, muscles pain, headaches, dizziness, blurred vision, loss of appetite, drowsiness, sore gums, cough, increase in saliva, loss of coordination, slowed breathing, fatigue, fast heart palpitations, trouble urinating and slurred speech.

6. **Were you hospitalized because of the injury/illness/condition?**
   **When?**
   **Diagnosis on admission?**
   **For how long?**
   **Tests done in hospital?**
   **Diagnosis on release?**
   **Instructions on release?**

No.

7.    **Were you confined to bed as a result of the injury?**
              **When?**
              **Under Doctors orders?**
              **Witnesses?**

       ~~Yes. Some days it is difficult to get~~ up.
       No.
       Yes, ~~Kimberly Newton, Margaret Jamison, Helen McKinney, Philip Holman,~~
       ~~Kenneth Moore, Anthony McKinney, Deborah McDaniel and Anthony Bowden,~~
       ~~Jr.~~

8.    **Have you recovered from the injury?**
              **If not, what is your current condition?**
              **When are you expected to recover?**

       No.
       See above.
       Unknown.

9.    **Are you permanently disabled by the injury?**

       Unknown, but ~~I suspect so.~~

-3-

## *CAUSATION*

1. **What did the Agency do to cause your injury?**
   **How did these actions cause your injury?**
   **How is the injury related to the Agency's actions?**

Discriminated against, harassed, treated differently from others, retaliated against, disrespected, publicly humiliated, overworked, made to do demeaning work, harassed and yelled at.

These actions caused me to have a relapse in my emotional stability.

It was because of the undo stress that I was under and the hostile work environment that caused me to relapse.

2. **Has any health care professional told you that your injury was caused by the Agency's actions?**
   **Identify the health care professional?**
   **When was this told to you?**
   **Describe what was told to you?**
   **What was the basis for this opinion?**

Yes.

Dr. Surriya Azam, Psychiatrist (See Dr. Azam's letter dated October 2004, Attachment 4)

March 2003,

She said that I was having a relapse because of the stress that I was currently undertaking at work. She asked if I could find work elsewhere or find a way to remove myself from that particular work place. She asked if I could possibly retire.

Her opinion was based on my emotional health and her treatment of me.

3.    **Have you ever been treated by this health care professional before?**
            **When?**
            **For what were you treated?**
            **Diagnosis?**
            **Medication?**
            **How long have you known this doctor?**

        Yes.
        July 1997.
        Panic Disorder without agoraphobia.
        Xanax and Imipramine.
        Since July 1997

4.    **Have you ever had this condition before?**
            **When?**
            **For how long?**
            **Caused by?**
            **Who treated you for it?**
            **Medication?**

        Yes.
        Late 1990 or early 1991.
        Until about 2000.
        Smithsonian Institute.
        Dr. Freda Louis Hall, Dr. William Richie, Dr. Henry Williams and Dr. Surriya
        Azam.
        Xanax and Imipramine.

5.    **Have you ever had treatment for any psychological problem?**
            **When?**
            **By whom?**
            **Diagnosis?**
            **Medication?**
            **For how long?**

        Yes, see above.

6.    **Have you ever been hospitalized prior to the hospitalization discussed in response to the prior question?**

        **When?**

        **Why?**

Around 1998)

Thoughts of suicide.

7.    **During the period of time (give date(s)), were there:**

        **Any deaths in your family?**

        **Marital or family problems?**

        **Financial problems?**

        **Serious illness in family?**

        **Auto accidents?**

        **Any other non-job factors contributing to emotional distress?**

My brother died June 27, 2004.  This happened after I contacted EEO.

No,

No.

No.

Steering wheel locked in my car. 2002

No

8.    **Have you ever been unemployed before?**

        **When?**

        **Why?**

        **For how long?**

Yes.

1984

6 months

### *AMOUNT*

1.  **With respect to your claims of injury/ illness/condition, state specifically the cost of treatment.   (Get itemized bills, etc.)**

    To be submitted at a later date.

2.  **Are you making a claim for medical expenses as part of this lawsuit?**

    Yes. 

3.  **Are you still receiving medical or psychological treatment?**

    Yes. 

4.  **Do you anticipate further treatment?**
    **On what basis do you so anticipate?**
    **For how long?**
    **What type of treatment?**
    **Expense of further treatment?**

    Yes. 

    I am still in need of therapy because my condition or the conditions in the workplace have not changed.

    Unknown.

    Psychotherapy.

    Unknown.

5.  **What is your medical/psychological condition presently?**

    Major Depression Disorder, Panic Disorder without Agoraphobia

-7-

6.   Are any of your medical expenses covered by health insurance?
         Have you submitted claims?
         By whom are you insured?
         Type of coverage?

   Yes.

        Yes.

         Aetna

         HMO

7.   During the period of time (give dates), how much sick/annual leave did you use?
         Current leave balance?
         LWOP?  AWOL?

     Unknown at this time.  I will gather and submit this information at a later date.

8.   Have you incurred expenses in traveling to obtain medical treatment?

   Yes.

9.   Have you incurred expenses in attempting to find other employment?
         Travel expenses?
         Resume expenses?
     No.
     No.
     Yes.

10.  What expenses do you anticipate in the future regarding your job search?

     Unknown.

11.   Other than the loss of wages, are you claiming any other financial losses?
          Loss of credit?
          Loss of property, i.e., car or home?
          Child care?
          Loss of professional reputation?

      No
      No
      No
      Yes
      Also, attorney's fees and costs.


12.   Has your earning capacity been impaired due to the Agency's actions?
          How?

      Yes.

      I should have been compensated for the work that I was performing.  My grade
      level should have gone to a GS-12.

## *MITIGATION*

1.  **Have you filed any claims for workers' compensation benefits since (date)?**
    **When?**
    **Nature of claim?**
    **Amount received on claim?**
    **Still receiving compensation?**
    **If declined, when?**
    **Reason for OWCP not accepting claim?**

    Yes, during the first case filed.
    Hostile Work Environment, Discrimination, Retaliation and Reprisal.
    Unknown.
    No.

    Yes, around 1997.
    Injury to knee
    Unknown
    No.

    Yes, can't remember the date
    Injury to shoulder
    Unknown
    No

    Yes, around late 1980's
    Injury to foot
    Unknown
    No

2.  **Have you filed any claims for unemployment benefits since (date)?**
    **When?**
    **Was the claim accepted?**
    **Amount received on claim?**
    **Still receiving benefits?**

    Yes.
    1984
    Yes

-10-

6.    **What difficulties, if any, have you had in finding another job?**

Although I was doing the jobs tin which I applied for, I was not selected.


7.    **Have you received any income from any source since (date)?**
            **Describe.**

No.

Unknown
No

3.    Have you filed a claim for disability retirement since (date)?
            When?
            Was the claim approved?
            Amount received on claim?
            Who assisted you in filing the claim?

    No.

4.    Have you claimed any other benefits since (date)?
      (i.e., V.A. benefits, other disability)?

            No.

5.    Since (date), have you attempted to find other employment?
            Type of Job(s)?
            Where?
            Name(s) and Address(es)?
            Result?
            Reason(s) given for not hiring you?
            If no attempt, why?

Yes.
Supervisory Exhibits Specialist.
National Zoological Park
Not Selected
Not given.

Yes.
Head of Design and Production
National Zoological Park
Not Selected
Supervisor said that she had something better suited for me that she was working on.

## **LIST OF WITNESSES**

Below you will find a list of witnesses, their contact number and how they pertain to the case.

Herman Krebs (202) 673-4994,

Aaron Ferster (202) 673-4892,

Ernie Robinson (202) 673-4985

Grace Lopez (202) 673-4652

Sherod Mangum (202) 673-4868

Stacie Tabellario (202) 673-0097

Melissa Gaulding (703) 768-2525

Lisa Holmes (240) 296-3670

Judy Tasse (202) 673-2579

Folami Ahota (202) 673-4927

Kimberly Newton (202) 829-1630

All or some of these witnesses are aware of the following:

- Aware of me being the only one that Kathleen Samiy made to call her voice mail, e-mail her or sign in as to when I arrived to work.
- Aware that I was harassed for needing to go to the Doctors.
- Aware that I was the only one made to clean up.
- Aware that only the black staff was made to move furniture.
- Aware that I was Acting Head of Production for over 1 year and a half.
- Aware that the Desk Audit that was performed on me was not done fairly.

- Aware that I had applied for two jobs and was denied.

- Aware that I was COTR and that Lynn Dolnick and Kathleen Samiy said that I wasn't, that I was not given credit when the desk Audit was performed.

- Aware that I was made to work alone in the park.

- Aware that black staff members were being harassed by white management.

- Aware that the male staff held a meeting to discuss the unfair fair and harassing treatment that was given by the female managers.

- Aware that the male staff requested to speak with Mary Tanner but spoke with Al Beim instead.

- Aware that in the meeting with Al Beim we discussed the unfair treatment of blacks in the workplace.

- Aware that a letter was presented to Mary Tanner via Al Beim that outlined ways in which males were treated unfairly and discriminated against.

- Aware that we informed Al Beim that if the harassment didn't cease that we would file a Class Action against the Smithsonian Institute.

- Aware that Lynn Dolnick and Kathleen Samiy held illegal interviews for jobs that had not yet been posted. (Supervisory Exhibit Specialist).

- Aware that Lynn Dolnick threatened my job security because I went to speak with Mary Tanner about unfair treatment.

- Aware that Lynn Dolnick and upper management split up the division and placed all staff members that had a complaint in the Park and Maintenance division.

- Aware that the Park and Maintenance division is treated differently.

- Aware that I was harassed about the clothes that I wore by Kathleen Samiy.

- Aware that Kathleen Samiy harassed me because she didn't see my car on the roof.

- Aware that I was forced to have a meeting with Lynn Dolnick although I informed her that I was not feeling well. In these meeting I was being harassed.

- Aware that I was questioned as to why I had doctor appointments.

- Aware that I was asked to sign a performance plan that had Ernie Long's name on it.

- Aware that in a staff meeting that I didn't attend, Kathleen Samiy announced that the staff needs to be careful around me because I have a mental illness and that I'm on medication.

- Aware that when I spoke to Lynn Dolnick about the way in which I was being harassed by Kathleen Samiy, Lynn would always side with Kathleen and tell me that I misunderstood or misinterpreted what she said.

- Aaron Ferster is aware that Kathleen said that she couldn't allow him to do certain things because Tony and Ernie are complaining that they are being treated differently.

- Aware that I was the only one who was not able to have a flexible lunch hour.

Amanda Perez (202) 673-4881

Ann Batdorf (202) 673-7993

Jessie Cohen (202) 673-4930

Patrice Payne (301) 252-0126

Kate Headline (202)

Janine Scott (202) 673-4668

Tina Samuel (301) 907-8030 / (301) 946-9757

All or some of these witnesses are aware of the following:

- Aware that there was discrimination in the workplace that focused on blacks.

- Aware that I was being harassed by Kathleen Samiy and Lynn Dolnick.

- Aware that I am working in a hostile work environment.

-3-

been presented with about five different position descriptions none of which have been final. Therefore, it is difficult to say exactly which duties were not under the purview of my position description. However, these duties include being the COTR (contracting officer), managing contractors, and supervising other Exhibits Specialists.

You will find a list of duties that were omitted form the desk audit that was included in the original EEO complaint that I filed.

Q. **How is your race, color, sex, religion and/or disability and/or reprisal factors in determining the number and level of the duties you perform?**

A. Because I am black, I was made to perform tasks that whites were not asked to do. I was also not compensated for working at a higher level as were they. Everyone that was promoted to a GS-12 was white and/or Jewish. Women were not made to work in this situation. I believe that my prior EEO activity was held against me so that I would not be compensated fairly. Management apparently had doubts about my mental stability because of my condition. I received a letter that stated that I was to be Acting Head of Production for 120 days, which actually lasted for over a year and a half. This clearly raises an inference of discrimination

Q. **Are there other employees in your organizational unit whose position descriptions do not accurately reflect the number and level of the duties they perform? If so, who are they and what are their race, color, sex, religion and/or disability and I involvement in EEO activity?**

A. Not that I'm aware of.

Initials _____
Page 17 of 19 Pages



**Smithsonian Institution**

Office of Equal Employment and Minority Affairs

October 6, 2004

Mr. Anthony Bowden
c/o Steven J. Silverberg, Esquire
1819 L Street, NW, Suite 700
Washington, DC. 20036

### REQUEST TO AMEND COMPLAINT

RE:    Anthony Bowden
Case No. 04-16-080604

Dear Mr. Bowden:

On October 6, 2004, the Office of Equal Employment and Minority Affairs received your hand carried request to amend your complaint to include additional incidents as evidence of discrimination and/or retaliation in connection with the above-referenced complaint.

Your October 6, 2004, request attached a document entitled "Amended EEO Complaint," dated October 5, 2004, which chronicles additional events – from August 24, 2004, to October 1, 2004 – alleged to be discriminatory or retaliatory in nature. As these incidents do not raise new claims, they will be incorporated into the investigation as further examples of your hostile work environment claim. A copy of your document will be transmitted to the investigator for his use in the administrative investigation.

Should you have any further concerns regarding this matter, please notify Ms. Karen Margensey of my staff at the following address: Smithsonian Institution, P.O. Box 37012, Victor Building, Suite 8100, MRC 921,Washington, D.C. 20013-7012, or call (202) 275-0145.

Sincerely,

*Era L. Marshall*

Era L. Marshall, Director
Office of Equal Employment
and Minority Affairs

cc:    Mr. Anthony Bowden
1415 D Street, N.E.
Washington, DC  20002

Mr. James Gee

750 Ninth Street, N.W., Suite 8100
Washington, D.C. 20560-0921
202.275.0145 Telephone

Att. 1

R.    It was written by Ms. Tanner, in one of the above statements, that Ms.
Samiy is no longer employed by the Zoo. Now the statement
indicated that she has been reassigned. Which is it? I had
previously informed Ms. Tanner that my performance appraisal
would be attacked as I've stated above. Ms. Tanner's answer here
shows that she was aware of the mistreatment that I was going
through, as she had reviewed the Performance Appraisal prior to her
signing off on it, I believe that she should have ensured that all the
added responsibilities that I was performing should have been a
factor, thus, I should have received an Outstanding. The fact that I
was Acting Head of Production, Exhibit Specialist, COTR, and Exhibit
Specialist Leader all at the same time and received awards should
have been a major factor in me receiving an "Outstanding" appraisal.
In addition, I wonder if before Ms. Tanner signed off on the appraisal
in which Ms. Dolnick evaluated me, did Ms. Tanner consider the fact
that I told her that I knew that they would attack my appraisal as part
of retaliation for me complaining about the unfair treatment that I
was receiving. Lynn Dolnick stated that she had used Kathleen
**Samiy's** notes that Ms. Samiy left to evaluate me. At one point Ms.
Samiy was offering me an incentive award. She requested that I
keep performing the duties and she would grant me a desk audit
(equal pay for equal work). Now all of the sudden my performance is

not Outstanding. This is clear cut discrimination and retaliation. I believe that they used Kathleen Samiy's name to justify lowering my **performance** appraisal. Ms. Samiy was terminated because of her unfair treatment, discrimination and harassment in the work place now. How could they have used any portion of her notes to rank a performance appraisal? Ms. Tanner signed off on Ms. **Dolnick** appraisal of me when Ms. Tanner knew that Kathleen Samiy and Lynn Dolnick was acting inappropriately.

**Q.**    To the best of your knowledge, were normal operating procedures adhered to in conducting the evaluation? Explain what procedures were followed and whether the required timeframes were met.

**A.**    Ideal timeframes for a majority of Zoo staff appraisals were not met, however, most were completed by a deadline set by the Under Secretary of June 2004.

**Q.**    Were these same procedures and time frames applicable to the official performance evaluations of similarly situated employees? Explain how they were the same or different.

**A.**    All staff (non Seniors) is expected to be appraised at the beginning of the calendar year for the past calendar year. This has not been the practice at

the Zoo; appraisals have not been regularly carried out in a timely manner. By June 2004, however, all but a few individuals employed by the Zoo had received 2003 appraisals.

Q.    What was the Complainant's official rating for the evaluation period in question? What justified lowering his performance rating for the period in question from his ratings of prior periods?

A.    I have no knowledge of his past performance ratings, as I was not the second line supervisor for the previous performance period. However, my understanding of the performance system is that Fully Successful indicates an employee is carrying out his expected duties in satisfactory manner. Highly Successful and Outstanding require extraordinary performance in 50 percent or more critical elements. Thus, there is no guarantee or should be no expectation that an individual will receive the same rating from one year to the next.

R.    Mary Tanner, Dolph Sand and I had a meeting in January 2004. Ms. Tanner asked me about my Performance Appraisals. I informed her that I had received only two Appraisals while working at the Zoo and they were both Outstanding, so she was aware of my past performance ratings. Due to the fact that I complained to her about the mistreatment, harassment and discrimination in the work place

is why my performance appraisal was lowered. Keep in mind that I had previously reported to her that Lynn Dolnick told me that if I complained to her supervisor that there could be severe consequences. When my appraisal was done by Lynn Dolnick, she did not consider the fact that I was performing the jobs of Acting Head of Production, COTR, Leader and Exhibit Specialist. I was also made to work alone. I **believe** that my appraisal was retaliatory and discriminatory. Ms. Tanner states that "there is no guarantee or should be no expectations that an individual will receive the same rating from one year to the next." But clearly having my appraisal lowered to "Satisfactory" after two Outstanding Appraisals shows something **is** improper and raises an inference of discrimination.

Q.    Was there a requirement to notify the Complainant that his rating would be lowered or that he needed to improve his performance? If so, explain how and when the requirement was met.

A.    There is no requirement to notify an employee of what his rating is expected to be unless the rating is expected to be Unsatisfactory. In that case, documentation of counseling should be made during the performance period. It is, of course, appropriate to provide employees feedback throughout the year on their performance. Fully Satisfactory means that an employee is successfully carrying out his or her duties.

Higher ratings indicate an individual is carrying out their duties in an extraordinary manner.

R.  There may be no requirement to notify an employee that he/she needs to improve his/her performance, but clearly that is the right thing to do. If I had known that my appraisal was probably going to be lowered, maybe I could have done something. I suspect that management did not know that my appraisal would be lowered until after I complained, and it was then done in retaliation. That is why I was not warned.

Ms. Tanner also answers as if nothing is suspect about having your rating lowered from (2) Outstanding to Satisfactory. She knows that is not the case.

Q.  Were any similarly situated employees notified that their rating would be lowered or that they needed to improve their performance? if so, who were they and why were they notified of their performance status?

A.  I have no knowledge of what counseling **and/or** feedback staff was given.

Q.  Were employees' race, color, sex, religion **and/or** disability status **and/or** involvement in E EO activity among the evaluation criteria? If so, what

criterion was applied?

A.    I have no evidence to suggest that these were factors in staff evaluations.

R.    The evidence that was presented throughout this **affidavit** shows that
      I was discriminated against because of my race, color and **religion.**
      These were major factors in how I was rated. Ms. Tanner states that
      she has no evidence to suggest that my race, color, sex, religion
      **and/or** disability statue **and/or** involvement in EEO activity were
      among the evaluation criteria. I informed her based on a previous
      incident in which a fellow coworker, Ernest Robinson, who is a black
      male, filed an **EEO** complaint about the unfair treatment that he was
      being subjected to by management, his performance appraisal was
      lowered. I knew that management would attack my performance
      appraisal like they attacked Ernest Robinson.

      Do you believe that the Complainant was discriminated against on the
      bases of race, color, sex, religion **and/or** disability **and/or** reprisal when he
      was rated fully successful for the performance evaluation period in
      question? Please explain.

A.    Fully Satisfactory means that an employee is successfully carrying out his
      or her duties. Higher ratings indicate an individual is carrying out their

duties in an extraordinary manner. I have no evidence to suggest whether or not the complainant was carrying out his duties in an extraordinary fashion. In reviewing performance ratings for other staff in the Department of Exhibits and Outreach, the ratings at each level are spread across race and sex. Five other employees received Fully Successful, including staff of other races and sex (including two white females). An equivalent number of minority males and white females received Highly Successful ratings. Two more white males, and 2 minority females received Highly Successful ratings. Five minorities (male and **female**) and four white females received Outstanding ratings.

R.    Ms. Tanner stated that she has no evidence to suggest whether or not I was carrying out my duties in an extraordinary fashion. This is not accurate. I spoke with her and explained the many extra responsibilities in which I was performing in the meeting that was held in January 2004. If she did not have any knowledge of what my performance was then why would she have signed off on it? When she signed off on my performance appraisal this would indicate that she had knowledge of my work and that she agreed to the findings included in the performance appraisal. In **the** Exhibit office we have Elena Lopez, Ernie Robinson and Herman **Krebs** as Designers, Grace Lopez, **Sherod Mangum** and myself in Production, Jessie Cohen and two other staff members in Photography, and two Writer and Editors

and three Administrative staff members, for a total of 14 staff members, in the Exhibit **Office.** When you take a look at what someone wrote for Ms. Tanner she states about 45 employees. It doesn't make sense. Also, Ms. Tanner doesn't address whether any of the other employees had participated in EEO activity. Clearly my appraisal was lowered because of discrimination and retaliation.

4.   The Complainant allege that he was discriminated against based on race, color, sex, religion and/or disability **and/or** reprisal, because his position description does not accurately reflect the number and level of the duties he performs.

Q   To your knowledge does the Complainant's position description (PD) accurately reflect the number and level of the duties he performs? If not, please explain the **reason(s)** for the differences between his PD and the duties he performs and if these reasons conform to Smithsonian policies and rules.

A.   I understand that management and the complainant were reviewing the position description to determine what, if any, changes needed to be made. However, I believe one change the **complainant** was requesting was to add a duty he had been asked to do on a temporary basis. Temporary assignments are not incorporated into a permanent position

description if the duties are not expected to be on-going.

R.    The temporary assignment that I had asked to be included into my PD
      lasted for two years.  I had been working without a PD since I first
      arrived at the Zoo.  In a meeting held with Kathleen Samiy, she tried
      to suggest that a PD with Long's name on it belonged to me.  There
      were many things that they tried to include in my **PD** that were the
      responsibilities of a supervisor.  I was presented with at least three
      different **PD's.**  This was part of the reason that I requested a desk
      audit  To this day I still do not have a **PD.**  I clearly was performing
      higher rating duties but this was not incorporated in my Desk Audit
      due to discrimination and retaliation.  Kathleen Samiy tried to add
      these additional duties to my PD.  so that I would continue **to** do the
      work and not get compensated.

Q.    Is the congruency between the Complainant's PD and the duties he
      performs unique or do other, similarly situated, employees have duties
      that are outside of those set forth in their **PDs.** If so, who are they, what
      are the differences between their **PDs** and the duties they perform, their
      race, **color**, sex, religion, disability status and whether they have been
      involved in EEO activities.

A.    Staff across the organization (Zoo and SI) are often asked ( or offer) to

take on temporary or ancillary duties in addition to or in place of their regularly assigned **duties.** This is why most, if not all, position descriptions carry the statement "and other duties as assigned."

R.    From my understanding, you may work a person down but not up without compensation.  Other duties as assigned would not last for over two years.  This has become at that time a permanent responsibility.  If **I** had not challenged it, **I** would still be required to do the job of a supervisory.  **I** also understand that those who worked as Acting, were compensated for their work.  **I** would like to know if Chuck **Fillah** and Susan **Adis** are being compensated for Acting Supervisors over the Exhibit department.  Once again **I'd** like to stress that **I** was Acting Head of Production for two years.  This was not a situation where **I** was performing **"temporary" duties.**  The duties had become permanent and I was discriminatorily not being compensated for these duties.

Q    is there anything more you wish to add to your statement? If so, please explain.

A.    Because of my past knowledge of the complainant, **I** have intentionally tried to remain neutral in any actions in which he was involved, such as asking my Associate Director for Administration and Technology to

interview E/O staff about possible discriminatory activities. I felt he would
be neutral, and as a male would have more credibility in a complaint that
inferred sexual discrimination.

R.    I would like to say that although Ms. Tanner states that she had tried
to be neutral, there is clear evidence that she made a substantial
impact on many issues that I've mentioned. If she was neutral then
she would not have signed the **performance** appraisal without clear
knowledge of what my performance was like. If she was neutral, she
would not have known anything about the selection process. If she
was neutral, she would not have had an opinion on my PD which is
still not final. As of today the workplace is still a hostile environment
for me. I am still being harassed by management.

Please keep in mind that I also complained to Ms Tanner about how I
was threatened by Lynn Dolnick for requesting to speak with Mary
Tanner. I informed Ms. Tanner about the harassment, retaliation and
discrimination in the workplace. Nothing was done however.

I believe that management is currently holding back jobs that should
be permanent positions but are still of a temporary status. I believe
that this is taking place so that the temporary employees will feel as
though they can't be honest and answer the questions that you