# PLAINTIFF'S EXHIBIT 17

Report of Investigation, Case No. 04-16-080604--Affidavit of Aaron Ferster, Tab 8, p.3

## AFFIDAVIT

City of:     Washington                )
                                       )
                                       )
                                       )
District of:  Columbia                 )

I, Aaron Ferster, am being first duly sworn on oath make the following statement freely and voluntarily to James S. Gee who has identified himself to me as an investigator assigned by the Smithsonian Institution to perform this investigation, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any party who has an official interest.

This affidavit is given in relation to the complaint of discrimination filed by Anthony Bowden, on August 6, 2004, SI Case NO.: 04-16-0080604.

Q. What is the name of the agency for which you worked the organizational unit to which you were assigned and the address of your duty station at the time of the alleged discrimination (October 2003 to May 2004)?

A. Smithsonian Institution, National Zoological Park, Washington, DC

Q. What were your position title, series and grade at the time of the alleged discrimination? How long did you hold this position?
A. Writer-Editor, 1082, GS-12. I have been in this position for 9 years.

Q. During this period, who were your immediate and second-level supervisors?
A. Supervisors: Kathleen Samiy, Lynn Dolnick, and Susan Ades

Q. How long had you been employed by the Smithsonian Institution? What positions have you held over the past 10 years?
A. 9 years; writer-editor, and lead writer-editor

Q. Do you have a mental or physical disability that substantially impacts a major life activity, if so, what is your disability claim?

A. no

Q. What are your race, color, sex and religion?

A. White, male, Jewish

Initials: AF                                                    Page 1 of 6 Pages

Q       Please indicate whether you have ever been involved in any prior EEO activity and describe the nature of your involvement (e.g., sought counseling, filed formal complaint, participated as witness, identified as responsible official).

A.      Along with Herman Krebs, Ernest Robinson, and Anthony Bowden, I sought counseling for a complaint about office management. During the early part of 2004, we met individually and as a group with the National Zoo's EEO counselor, Mr. Al Biem.

Q.      Did you know Anthony Bowden, the Complainant? If so, for how long and in what capacity did you know him?

A.      Yes, Mr. Bowden and I have worked together in the Office of Exhibits and Outreach since he arrived from the Natural History Museum. As a writer and project manager in the Office of Exhibits, we regularly work together in the planning, installation, and maintenance of exhibits.

Q.      To your knowledge, did Mr. Bowden engage in any formal or informal EEO activity? If so please explain what you understood about his EEO activity, and when and how you became aware of it.

A.      As mentioned above, Mr. Bowden and I were part of a group of males that had been subjected to what we believed were hostile and inappropriate management activities by our mutual supervisor, Kathleen Samiy. During that time, Mr. Bowden explained to me that he had previously been subjected to unlawful behavior when he worked at the National Museum of Natural History, and had knowledge of how we, as a group, could respond in order to protect ourselves.

Q.      To your knowledge did Mr. Bowden have a mental or physical disability that substantially impacts a major life activity, if so, what was his disability?

A.      Mr. Bowden mentioned that he was on medication, and was open with his colleagues about his needing medication and medical support due to stress. He attributed this to the experiences he had been subjected to at the National Museum of Natural History, and how a stressful work environment being cultivated in our office had begun to raise his stress levels. He discussed these matters with me personally, and mentioned them during at least one staff meeting.

1.      **Complainant alleges that he was discriminated against based on race, color, sex, religion and/or disability and/or reprisal, when from October 2003 to the present, he has been subjected to discrimination which created a hostile work environment.**

Q.      Explain what knowledge you have of the circumstances surrounding this allegation, your awareness of what transpired--why and how events unfolded.

A. In general, the Office of Exhibits and Outreach, has been run with a general lack of professionalism for a long period of time. The tone of that changed from what I would characterize as "mismanagement" to "hostile" shortly after Lynn Dolnick, the Associate Director of Exhibits and Outreach and formerly the Chief of Exhibits and Outreach, hired Kathleen Samiy to lead the office as the supervisor. Ms. Samiy cultivated a hostile work environment, in which employees, particularly males, were regularly subjected to threats of official reprimand, hostile and accusatory confrontations, ambiguous work responsibilities for which they would be "held accountable", and threats ranging from withholding of sick and annual leave to outright dismissal. Throughout, Ms. Dolnick openly supported and sided with Mr. Samiy, effectively facilitating and encouraging the hostile atmosphere.

I do believe that the treatment of certain individuals related to their race and gender. Here's why I feel that way: In my opinion, there was a clear distinction between those employees who were subjected to the most hostile behavior: they were male, and African American males in particular. The lack of overall professionalism in which the office had been run prior to Ms. Samiy's arrival was marked by favoritism: those individuals who were able to cultivate a friendly, collegiate relationship with Ms. Dolnick were rewarded professionally. I do not think that African American males could reasonably expect to cultivate the kind of relationship that would lead to advancement opportunities. When the work atmosphere turned hostile, that lack of opportunity and access to the management contributed to Ms. Samiy's ability to threatened and mistreat Mr. Bowden with impunity.

Q. Did you or someone else you know, experience similar treatment? If so, when and what were the circumstances? Please elaborate.

A. Ms. Samiy's treatment of me included threats of official reprimand, threats of withholding sick leave to care for my disabled daughter, changing an official performance appraisal after it had been reviewed and signed, and sending me a reprimand in a holiday card.

2. **Complainant alleges that he was discriminated against based on race, color, sex, religion and/or disability and/or reprisal, when on April 22, 2004 he was informed that he was not selected for the position of Supervisory Exhibits Specialist, Vacancy Announcement No. 04SO-1005l.**

Q. What knowledge do you have of the selection process for the position of Supervisory Exhibits Specialist, Vacancy Announcement No. 04SO-1005l? Please explain if you were involved and what actions you took.

A. I was not involved in the selection process.

Q. What knowledge do you have that bears directly on the nonselection of the Complainant for the position in question? Please elaborate.

A. None.

Q. Do you believe that the Complainant was discriminated against on the basis of race, color, sex, religion and/or disability and/or reprisal when he was not selected for the Supervisory Exhibits Specialist position? Explain.

A. I don't know.

3. **The Complainant alleges that he was discriminated against based on race, color, sex, religion and/or disability and/or reprisal, when in or around May 2004, he received a "Fully Successful" performance rating.**

Q. What knowledge do you have of the process, procedures and outcomes in the official performance evaluation in question?

A. I was not aware of his performance rating.

Q. To the best of your knowledge, were normal operating procedures adhered to in conducting the evaluation?

A. Based on how the office was run and managed, and how people were treated by Ms. Samiy, I sincerely doubt that "normal operating procedures" were adhered to in conducting the evaluation. Ms. Samiy used every opportunity at her disposal to assert her authority, particularly over male employees. I expect that she used the evaluation process inappropriately with Mr. Bowden, as she had with me.



Q. Do you have any information bearing on the fairness of the official performance evaluations of Mr. Bowden, compared to those of similarly situated employees? Explain how they were the same or different.

A. In general, women seemed to enjoy a more professional relationship with Ms. Samiy, and I have the impression through talking with my female coworkers that the appraisal process was an opportunity to openly communicate with Ms. Samiy. In contrast, Ms. Samiy with much more dictatorial and confrontational with male employees. I believe this translated in to the evaluation process, and worked against Mr. Bowden.

Q. What was Mr. Bowden's official rating for the evaluation period in question? To your knowledge, was lowering his performance ratings for the period in question from his ratings of prior periods justified?

A. I don't know what his rating was, so I don't know if it was lowered.

Q. Do you believe that the Complainant was discriminated against on the bases of race, color, sex, religion and/or disability and/or reprisal when he was rated fully successful for the performance evaluation period in question? Please explain.

Initials     Page 4 of 6 Pages

A.  see above.

4.  **The Complainant allege that he was discriminated against based on race, color, sex, religion and/or disability and/or reprisal, because his position description does not accurately reflect the number and level of the duties he performs.**

Q   To your knowledge does the Complainant's position description (PD) accurately reflect the number and level of the duties he performs? If not, please explain when and how you were made aware of the differences between his PD and the duties he performs and if, to your knowledge, this practice conforms to Smithsonian policies and rules.

A.  I have not read the Complainant's PD.

Q.  Is the congruency between the Complainants's PD and the duties he performs unique or do other, similarly situated, employees have duties that are outside of those set forth in their PDs. If so, who are they, what are the differences between their PDs and the duties they perform, their race, color, sex, religion, disability status and whether they have been involved in EEO activities.

A.  I only have experience with my PD, and know that it was a goal of Ms. Samiy's to match my PD to the work that I actually perform.

Q   Is there anything more you wish to add to your statement? If so, please explain.

I have read this statement consisting of ____ pages and I have made all necessary corrections and additions, and have initialed every page.

I hereby declare under penalty of perjury that the forgoing statement is true, correct, and complete to the best of my knowledge and belief.

Signature of Affiant: _____

Date: __12/21/04__

Subscribed and sworn to before me this 21st day of December, 2004:

_____
Signature of EEO Investigator or Notary Public

Initials _____          Page 6 of 6 Pages