# PLAINTIFF'S EXHIBIT 21

Report of Investigation, Case No. 05-10-031805—May 19, 2005 Affidavit of Anthony Bowden (Also Defendant's Exhibit 5)

AFFIDAVIT

District of Columbia, to-wit:

I, Anthony Bowden, provide the following statement freely and voluntarily to Herbert L. Jackson who has identified himself to me as a Contract EEO Investigator for the Smithsonian Institution, investigating a complaint of discrimination filed by me against the Smithsonian Institution, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any interested party (those with a legal right to know).

I am alleging discrimination based on my race (African American), color (black), and disability (panic disorder, major depression). I also allege that I am being retaliated against because of my prior EEO activities (I have previously raised issues; I filed a formal EEO complaint on August 6, 2004, which is currently before the EEOC; and I submitted a statement and an affidavit in Ernest Robinson's EEO case). I note that this complaint pertains to the continuous hostile, discriminatory, failure to accommodate and retaliatory environment to which I have been subjected to from June 2004 through the present.

I was discriminated against because, beginning in June 2004, and as recently as January 24, 2005, I was the only employee who was asked (by Mr. Jeff Baxter) to work in the lower shop which is unsafe, dusty and dirty. In addition there is no heat provided and nor is there proper ventilation or an exhaust system that would allow fumes, chemical smells and sawdust to escape. The machines in the lower shop are not properly bolted. My supervisor, Exhibit Specialist Supervisor, Mr. Jeff Baxter (white male) told me that he had a project for Ms. Grace Lopez to do in the lower shop, however he mentioned that the project would be put on hold until the heating problem has been addressed. As of today March 15, 2005), she has not been made to work in the lower shop under unsafe conditions. In addition, my second line Supervisor, Acting Associate Director, Exhibits and Outreach, Mr. Charles Fillah (race unknown) is aware of the unsafe environment of the lower shop, yet I was still asked to work in the lower shop. No white employees were asked to work in the lower shop. I also believe that I was singled out to work in the lower shop as retaliation against me for my prior EEO activity.

I was given a letter "confirming counseling," dated December 17, 2004, by Mr. Baxter. The letter referred to a comment that I had allegedly made that a co-worker, Elena Lopez, (race unknown) supposedly heard me say. Also it stated that I said that my coworker, Ms. Elena Lopez is a "crazy lady". I had requested to speak with Mr. Chuck Fillah regarding the ongoing harassment I was being subjected to by Mr. Baxter, my supervisor. There were signs that I was being discriminated and retaliated against, so I wanted to discuss Mr. Baxter's hostile actions and verbal threats towards me with his supervisor, Mr. Fillah, in the hope that this situation would be resolved. When I spoke to Mr. Fillah, I went to discuss the way in which Ms. Elena Lopez had lied on me for the second time (this time regarding the offensive comment) and how after Mr. Baxter had completed his interviewing, he found that the statement that Ms. Lopez made about me was not true, yet he continued to keep the situation ongoing by threatening me



EXHIBIT
85
BOWDEN
2/20/08

and by indicating he was going to take action against me for something that he had found, through his investigation showed the allegation not to be true. I had stressed to Mr. Baxter that he didn't have anything on me and I asked him where he was going with this. There were many devastating incidents that occurred in the workplace by numerous staff members and no write-ups or threats were ever used against them. I believe that this entire situation was reprisal and harassment for me being a witness in Ernest Robinson's EEO complaints and the complaint that I also filed with the EEO office, and for my other EEO activity, and was also discrimination.

Mr. Baxter told me that I would have to start scheduling my sick leave. I asked Mr. Baxter how can I schedule sick leave as I told him that I can't determine when I am going to be sick. Jeff stated again, that I would have to start scheduling my sick leave. He never mentioned anything regarding doctor's appointments. As a matter of fact, when he said this to me for the second time, I told him that this was nothing but harassment and I told him that I find it mighty funny that he would try to pull something like this right after I was admitted to the hospital in late December 2004, for two days, (work related stress was the cause of me getting sick). Mr. Baxter had nothing to say. I believe that I was being harassed because of my EEO activities. I was being asked to do an impossible task (schedule when I would be sick!). No white employees, to my knowledge were asked to schedule sick leave. Also, Mr. Baxter knows that I suffer from major depression and panic disorder, and that I on occation need to take sick leave. Thus, he continually harasses me inspite of his knowledge of my disabilities.

I'd spoken to Mr. Baxter about my reasonable accommodations and he was made aware that I, on occasion, need to take short breaks to go to the restroom and to get something to eat so that I may take my medications (note: these reasonable accommodations were agreed to between the agency and myself in a 1999 settlement agreement of a discrimination case that I filed in Federal court). Although the accommodations that were agreed upon in Federal Court have been brought to Mr. Baxter's attention, he continually questions my whereabouts and he noticeably does not question any other Exhibit staff members. Thus, I am being discriminated against because I am treated different from the others because of my handicap and prior EEO activities, (he clearly should not be questioning my whereabouts when taking short breaks is apart of my accommodations). My handicap and accommodations were brought to his attention a few weeks after he arrived at the Smithsonian and yet he refuses to accommodate me. I also told him in late December 2004 that I am on medication. No other employee within the Exhibits department itself that I am aware of has a disability. Thus, I am not only being discriminated against because of my disability by not being reasonably accommodated, I am being subjected to a hostile environment because I am disabled.

Mr. Baxter had requested that I attend an OPS meetings in which only supervisors would be present. I attended the meeting as he requested, however, I feel that my attending a supervisors meeting is above my current job responsibilities. I had previously mentioned to Mr. Baxter that because he is the supervisor of the Exhibits Department, I believe that it would be best if he attend these types of meetings. I am not adequately kept informed of upcoming projects and would have little to contribute in this type of setting. This situation makes me uncomfortable and contributes to the hostile environment.

On March 1, 2005, I was given a copy of my performance appraisal, for the time period of June 04 to December 04. I have always worked above and beyond my job level and received outstanding ratings in my 2001 and 2002 performance appraisals. I feel that Mr. Baxter is not correctly or fairly appraising my level of performance. The rating that I was given, "Fully Successful" is unjustifiable, and by this Mr. Baxter and Mr. Fillah are continuing the harassment, retaliation and discrimination against me. I feel that this appraisal is suspect because of the date in which they both signed the appraisal and the time that it was presented to me. Mr. Fillah signed the appraisal on January 24, 2005 and Mr. Baxter signed the appraisal on January 21, 2005; I had filed my previous formal EEO complaint several months earlier. This appraisal is further discrimination, harassment and reprisal for my ongoing EEO complaint. There was only one other person in the Exhibit Department/Production that received a performance appraisal during this time. I was told by Earnest Robinson and Sherod Mangum that Mr. Baxter had informed them that he could not give them an appraisal because he needed to be their supervisor for at least 120 days more. Herman Krebs said that he has not officially received a performance appraisal either. If this is true that Mr. Baxter told Sherod Mangum and Earnest Robinson that he could not give them a performance appraisal because he had not been employed long enough then how could he justify giving me an appraisal. This shows further evidence that management was out to get me. Did Mr. Baxter legally give me an appraisal due to the lack of time in which he was my supervisor? This is evidence that I was clearly being singled out and treated differently. It is evident that Mr. Baxter was in a hurry to get my appraisal completed, however, because I don't have a clear PD, which PD did he use. Keep in mind that I have three or four PD's none of which has been finalized. On May 5, 2005, I asked Jeff Baxter if everyone in Production or that he supervised had signed off on their performance appraisal and he said yes. I spoke to Herman Krebs, Ernest Robinson, and Sherod Mangum of Mr. Baxter's staff and none of them said that they had signed off on their appraisals.

On March 9, 2005, Earnest Robinson, Sherod Mangum, Mr. Baxter and I were in the lower production shop. Mr. Baxter was discussing the condition of the shop with me. He indicated that it was my responsibility to set the shop up as it should be. I told him that I did not feel it was fair that the shop should be my sole responsibility. He said that it was my responsibility and that it needed to be set up. After going back-and-forth regarding this matter, I asked him why he was placing the sole responsibility on me. He said because "you are the senior person." I told him that setting-up a shop that is mainly a warehouse takes more than just me alone. I told him that there were machines in there that weighed up to 500 pounds or better and I can't move those by myself. He insisted that it was my responsibility to get them moved in place and setup. I asked if he thought this was a form of harassment and why did he say that it was just my responsibility to setup the shop? I told him I felt this is something that he should be discussing with all of us because Earnest Robinson and Sherod Mangum were standing less than 20 feet away from us. He said "well I'm telling you that I want you to set the shop up and it's your responsibility". I asked him if he wanted me to set the shop up by myself, if that was what he was saying. That is when he told me "the thing is, Tony, if you feel as though you can't set the shop up yourself you should be able to supervise Sherod Mangum to get the shop set up." I told him that first of all I can't tell Sherod anything about getting the shop set up because I am not his supervisor. I explained to him that he was hired as the Exhibit supervisor and supervisor is not part of my title. He then said "you are a team leader aren't you?" I told him I

don't know what I am. He said that from what he could remember that we had reviewed my position description some time back in August that showed that I was the team leader. I told him that he had never reviewed a position description with me that showed I was a team leader so I didn't know where that was coming from. He asked me "what is your title?" I told him that my title was Exhibit Specialist and I didn't know where he was getting this team lead "thing" from. I told him that I did see a PD with "Team Lead" on it when Ms. Kathleen Samiy and Ms. Lynn Donick were here that they tried to present to me but at that time the PD had the name "Long" on it so it didn't appear to be mine. I told Mr. Baxter that from my understanding my PD was supposed to be based on the results of the desk audit. Ms. Samiy and Ms. Donick said whatever duties came up as a result of the desk audit would determine what my PD is. When the desk audit was completed, although many of the responsibilities that I was taking on had been omitted on the desk audit they came back with a title of Exhibit Specialist General.

Mr. Baxter went back to say that it was my responsibility to supervise Sherod Mangum, and to show him and work with him on what needed to be done to setup the shop. I told him at this time I feel like he was harassing me. I also told him that I was really confused about what my responsibilities are and that I'm not telling him that I would not set up the shop but at the same time he needed to see it from my standpoint because I had 3 or 4 different PDs. That if I could remember, one of them had draft written on it. I told him that all of that had been a part of my ongoing EEO complaint. I also told him that it seems they (supervisors) use whatever title they want when it is convenient for them and that in that one conversation he said that I was the senior person, a supervisor and a team leader. That is when I asked him which is it?

After Ernie and Sherod left, Mr. Baxter and I continued to discuss the workload. He continued to insist that setting up the shop was my responsibility. I told him that was an impossible task for one person and I felt as though I was being set up to fail. He still insisted that I was the senior person then he used the term team lead and that I was to supervise Sherod and together the two of us were to get the shop setup. This was a problem for me because no one has clearly defined my job responsibilities. It seems that the responsibilities shifts at will and at times it makes me feel that there is no clear direction and I worry how this will affect my performance appraisals. I have also told Mr. Baxter and it is a matter of record that I have problems with my back and knees as a result I am unable to lift extremely heavy objects. I am concerned that the types of task I am assigned will affect my health. I feel that being assigned tasks that require heavy lifting to do alone is a form of retaliation for my ongoing EEO complaint. Please note that I am not in the position to administer task to any other employee, because I am not a supervisor, nor am I, to my knowledge, a team leader.

I tried to get Mr. Baxter to see that setting up the lower shop was not a task but a major project because of the amount of planning and time it would take. Even though he insisted that I am the team lead/senior person and that I should supervise Sherod Mangum, to show him what needed to be done to get the shop set up; Mr. Baxter has not yet sat down with Ernest Robinson, Sherod Mangum, Grace Lopez or I to inform us that I have the authority to supervise or lead them in any capacity. As such, I was simply trying to get him to see how this could be problematic with regards to completing the project. As the conversation went on we started discussing the meeting that was held with Ernie Robison, Chuck Fillah, he and I about the way

that blacks were being mistreated. I told Mr. Baxter that I didn't like the fact that during that meeting he had said "I don't trust you people". That is when Mr. Baxter said that we didn't give him a chance to finish explaining what he was saying. I told him that by that time when Ernie and I had stood up to leave it was because we felt the meeting had become hostile. He told me "the thing is I feel as though you all don't trust me." I told him after he made that comment using "I don't trust you people" no I don't trust you. He said "the thing is you people, I mean". I said "hold up Jeff, you are using those words again". He said let me explain and I told him there was no need to explain. He said just let me explain and I said Jeff it's ok, it's all right."

I told him you said that you are a man of God and you go to church. I don't know what you may have told Ms. Shadella Davis and others in the EEO counseling interview about the meeting that we had where you used the words "you people" and how you said you didn't trust us, but here we go again you just used the same words "you people". Then Mr. Baxter kept saying let me explain and I told him there is no need for you to explain it's all right I understand. I told him that it wasn't worth it and that I wasn't going to write it up. I let him know that I was scheduled to meet with Ms. Debbie Burnie and Ms. Karen Howard from the EAP office. He said it was ok.

When I met with Ms. Burnie and Ms. Howard I told them what had transpired between Mr. Baxter and I. I explained how I felt that I was being harassed, that he (Mr. Baxter) had used the words "you people" in one meeting and he had used the same words again. They asked me how that made me feel. I told them that it was hard to explain but I felt as though I was being put into another category separate from the human race. I let them know that really made me feel bad and I explained that I had told Mr. Baxter that I wasn't going to write this up but they told me that they felt it was something I should write up and not take lightly. They said if he used those words one time it could be looked on as a mistake, but for him to use them a second time could indicate that there is a problem and that there had been other issues that I had discussed with them that plays a major factor in them asking me to write it up to make it a part of the official record.

Ordinarily if I tell someone that I'm going to do something I keep my word. I had told Mr. Baxter that I would not write this up and therefore did not consider making this a part of the record. The only reason that I'm doing so is that I am following the advice of the EAP office.

03/02/04, Discrimination against the handicap/failure to accommodate

04/16/05, Failure to accommodate

06/03/04, Letter showing harassment by Chuck Fillah/included in original complaint
08/10/04, Letter showing failure to accommodate/included in original complaint

07/21/04, Failure to accommodate, never spoke to supervisors as requested regarding handicap. I have signed a total of three consent forms.

**08/20/04, Amend Complaint**, harassment, working above job level, failure to accommodate, treated differently

**10/05/04, Amend complaint,** discrimination, failure to accommodate, retaliation

12/01/04, Hostile work environment (shows pattern)

12/17/04, **Amend my complaint**; I received a letter of confirmation of counseling. (See attached)

03/01/05, **Amend my complaint**, Retaliation and harassment

03/05/05. **Amend Complaint**, Unfair Performance Appraisal. (See attached)
02/28/05, Letter of Ernest Robinson/Position Description/Performance Appraisal

03/02/03, **Amend Complaint**,

03/15/05, **Amend Complaint,** Harassment/racial slurs

05/07/05, **Amend Complaint**, assault and battery by Elena Lopez towards me. (See attached)
05/11/05, Failure to protect/accommodate. (See attached)

05/17/05, Request for counseling

05/17/05, Failure to accommodate, Jeff Baxter insisted that I attend a meeting. (See attached)


The remedies I seek are the following:

- Promotion to GS- 12, retroactive with back pay and benefits to the date that I started performing higher grade duties.

- Restoration of leave that I had to take due to work related stress.

- Restoration of leave that I did not receive as required to pursuant to the settlement agreement in my previous discrimination case, Bowden vs. Heyman, Secretary, Smithsonian Institution, Civil Action NO. 97-0505 JR (D.D.C. 1999).

- Administrative leave be granted for time that I had to take for work related stress.

- Last performance appraisal June 04 to December 04, given in 2005, raised from Fully Successful to Outstanding.

- Rescission of 12/17/04 "confirming of Counseling letter" and purging it and all references to it from all Agency files.

- $300,000.00 in compensatory damages for pain and suffering caused by the Agency's discriminatory/retaliatory treatment of me.

- All expenses 'incurred in this matter, including attorney's fees and costs.

- All other relief as required in the interest of justice

- immediate cessation of hostile environment against me, including stopping of asking that I work in the lower shop or any other unsafe work environment, not being constantly asked my whereabouts, and not being asked to schedule sick leave.

- Reasonable accommodation of my disabilities.

- Transfer

I solemnly swear or affirm under the penalty of perjury that the above statement, being provided by me, is true to the best of my knowledge and belief.

_[signature]_
Anthony Bowden

Date: 5/19/05

_[signature]_
EEO Investigator