# PLAINTIFF'S EXHIBIT 23

Plaintiff's Answers and Responses to Defendant's First Discovery Requests to Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

ANTHONY BOWDEN ) 
) 
    Plaintiff, ) 
) 
        v. )   Civil Action No. 05-2202 (RBW)
) 
CHRISTIAN SAMPER, ACTING SECRETARY, ) 
SMITHSONIAN INSTITUTION, ) 
) 
    Defendant. ) 

## PLAINTIFF'S ANSWERS AND RESPONSES TO
## DEFENDANT'S FIRST DISCOVERY REQUEST TO PLAINTIFF

Plaintiff Anthony Bowden ("Plaintiff"), by and through his attorney, Steven J. Silverberg, hereby responds to <u>Defendant's First Discovery Request to Plaintiff</u> as follows:

## GENERAL OBJECTIONS:

1.    Plaintiff objects to the Defendant Smithsonian Institution's ("Agency," "National Zoological Park" or "NZP") Interrogatories, Document Requests, and Requests for Admission to the extent that they seek documents or information not within Plaintiff's possession, custody, and/or control.

2.    Plaintiff objects to Defendant's Interrogatories, Document Requests, and Requests for Admission to the extent that they seek irrelevant, immaterial, overbroad, and/or unduly burdensome information and documents, and/or information and documents not reasonably calculated to lead to the discovery of admissible evidence.



3.     Answers/responses to certain of Plaintiff's Interrogatories can be ascertained from a review of the Report(s) of Investigation ("ROI") and/or Complaint Files in this matter, specifically SI Case No. 04-16-080604, SI Case No. 05-10-031805, SI Case No. 05-23-071105 no ROI ever issued), SI Case No. 06-04-010306 (no ROI ever issued), and/or SI Case No. 06-13-052606, the burden of ascertaining answers/responses from all of these documents being equal for Plaintiff and Defendant, as both Plaintiff and Defendant have possession, custody and/or control of these documents.

4.     Plaintiff's answers/response to any Interrogatory, Document Request or Request for Admission is not an admission or acknowledgment that the Interrogatory, Document Request or Request for Admission calls for information that is relevant to the subject matter, claims, and/or defenses of this action. Each answer/response is without prejudice to Plaintiff's right to contend at trial, hearing, or in any other proceeding in this action, that such answer/response to the Interrogatory, Document Request or Request for Admissions is inadmissible, irrelevant, immaterial and/or not proper discovery. Each answer/response is without prejudice to, and is not a waiver of, any objection that Plaintiff may make to any future use of such answer/response.

5.     Plaintiff objects to Defendant's Interrogatories, Document Requests, and Requests for Admissions to the extent that they seek information protected by attorney-client privilege, work product immunity, and/or any other applicable privilege or immunity.

6.     Plaintiff reserves the right to revise, correct, add to, supplement, or clarify any of the answers/responses at any time.

7.     The word use and sentence structure used in these answers or responses are in part those of the attorney and do not purport to be the exact language of Plaintiff.

8.    Plaintiff notes that these answers/responses may alternate between the first person and the third person in referring to himself.

9.    Each of the above objections and statements is specifically incorporated into each of Plaintiff's answers/responses and are not waived in any of Plaintiff's answers/responses.

## INTERROGATORY ANSWERS AND RESPONSES

**INTERROGATORY NO. 1.**    Identify, other than for yourself, each person involved in or who has personal knowledge of the factual basis for and evidence relevant to all claims and allegations raised in the "Second Amended Complaint of Employment Discrimination and Breach of Contract," filed in the United States District Court for the District of Columbia on November 30. 2006, and styled Civil Action No. 05-2202, providing a complete and accurate description of the knowledge you believe that each such person has or may have, all oral or written statements or communications by such persons pertaining to the matters. and state the person's relationship, if any, to you.

ANSWER:    Plaintiff objects to this Interrogatory as overbroad and unduly burdensome to the extent that this information can be found in the ROIs and/or Complaint Files for Agency Case Numbers 04-16-080604. 05-10-031805, 05-23-071105 (no ROI ever issued), 06-04-010306 (no ROI ever issued). and 06-13-052606 (hereinafter collectively referred to as "the ROIs and Complaint Files in this case"); the burden of ascertaining answers from these documents being equal for Plaintiff and Defendant as both Plaintiff and Defendant have custody. possession and/or control of these documents. Plaintiff also objects to the extent that he cannot possibly know for certain what persons have what specific knowledge. Subject to and without waiving 'said objections. Plaintiff answers as follows: Please see the ROIs and Complaint Files in this case as to the individuals with personal knowledge of those events, the nature of their knowledge and their written statements or communications as contained in these ROIs. See also attached documents. Plaintiff further answers as follows:

A.    As to individuals with personal knowledge of the events at the NZP and the knowledge
that Plaintiff believes that they, these include, but are not limited to:

1.    <u>Lynn Dolnick</u>, formally Associate Director for Exhibits and Outreach.

Ms. Dolnick played a major part in this discriminatory action against me because she was
my second line supervisor, and later became my first line supervisor after the departure of
Kathleen Samiy. She was aware of and/or involved in the following: See: ROI, case number
04-16-080604, volume I. Exhibit 1, formal complaint that outlines discriminatory actions; ROI,
case number 04-16-080604, volume I, tab 2,; EEO Addendum dated August 1, 2004;
Memorandum for Shadella Davis, dated August 27; ROI, case number 04-16-080604, volume I,
Exhibit 2-A, complaint that outlines that I was being subjected to harassment, retaliation,
discrimination, a hostile work environment, and that Defendant repeatedly perpetrated
discriminatory and/or retaliatory practices and that the Agency failed to promote me on account
of these discriminatory and/or retaliatory motives.

See ROI, case number 04-16-080604, volume II, Exhibit 2-E, conflict with job
description; see also e-mail correspondents that shows discrimination, harassment, failure to
accommodate and that I was treated unfairly, retaliated against, and that the job was tailored for
someone other than me, because of discriminatory/retaliatory motives.

See ROI, case number 04-16-080604, volume II, Exhibit 2P for both job announcements
#02SP-1018 and #03SP-1309.

See ROI, case number 04-16-080604, volume I, Exhibit #24 for job announcement
#04SP-1005. I applied for job announcement # 02SP-1018 in which I was already performing
the duties of Head of Production, due to the fact that my then supervisor, Rick Hyder, asked me
if I would like to take on his responsibilities because he was aware that he would be taking on a
different job within the Zoological Park. Mr. Hyder began training me for the position. Mr.
Hyder included that this would include more money. When Mr. Hyder transferred to a different
department, I began taking on the role of Supervisor of Head of Production. Most of Mr.
Hyder's files and contacts were given to me by Mr. Hyder. I stayed in that capacity from the
time that Mr. Hyder left until Ms. Samiy was hired.

Although Ms. Donick was aware of the added responsibilities that I was undertaking and
kept assuring me that I would receive a promotion, she decided to announce the position after the
job was posted in which I applied. Kathleen Samiy was selected. Shortly after Ms. Samiy was
hired, I met with Ms. Dolnick to discuss why I had not been afforded at least the opportunity to
interview for the job. Ms. Dolnick assured me that she had something else in store for me and
included that I would be happy with her decision. See job Announcement # 02SP-1018
Supervisor Graphic and Production. See ROI case number 04-16-080604 Volume II. tab #2P.

After Ms. Samiy was hired, Ms. Dolnick recognized that Ms. Samiy did not possess the necessary skills that were needed to head the Production side of the Exhibit's Department. Ms. Dolnick, my second line supervisor, asked if I would take on the role of Head of Production and included that I would be compensated for the increase in duties. She recommended that the job be announced on a memo inside of the Exhibit Department and suggested that I start off in the role of acting head of Production for three months so that it would give everyone in Exhibits a chance to act in that capacity. My function of Acting Head of Production lasted over a year and a half, although I was never compensated for the added responsibilities either time. In addition, I was passed over for the job of Head of Production three times, although Ms. Dolnick kept assuring me that I would receive a promotion..

See ROI case number 04-16-080604 Volume II, tab #2P Vacancy Announcement # 03SP-1309 This was the second job that I applied for and was told by Personnel Specialist Scarlett Proctor that I made the "cert" and that someone will be calling me to set up an interview. Several months went by; consequently, I never heard anything. I called Ms. Proctor, in early December, before I was to go on vacation. I was told that I should be hearing something within days.See ROI case number 04-080604, Volume I, tab #24, Vacancy Announcement # 04SP-1005. This was the third time that I had applied for the job. Jeff Baxter was selected by Ms. Dolnick. This position was reposted. It was the same position as the position above 03SP-1309. I feel that they added additional responsibilities to the position to lessen my chances of being qualified for the job. Ms. Dolnick specifically wrote and re-wrote the position description/job announcement to require skills that were not relevant to the position but reduced my ability to compete and/or qualify for the position.

Note that after I applied for the first and second positions. Management then had the chance to review my resume and use it against me by adding ranking factors that they knew I had limited experience in. The two elements that were included in the ranking factors were knowledge of Quark and Filemaker. ⌐Never 🖊

Although management stressed the need for knowledge of these two programs. Rick Hyder, Kathleen Samiy and Jeff Baxter used these programs for the Exhibit part of the department. I feel that these elements should have not had an impact on me Managing Production.

Quark is a computer program that is used strictly by the Designers and Filemaker is a software program that is used to track work. Rick Hyder and Mr. Baxter did not have any knowledge in Quark and have not shown any knowledge thus far. That is why we have a Design Supervisor by the name of Hank who was later hired and 2006 because he has knowledge of Quark. As for the Filemaker program. Lynn Donick and Kathleen Samiy wasted thousands of taxpayer dollars trying to get this program up and running, but they were unsuccessful. It is a computer program that is used for tracking work. No one in Exhibits ever used this program; we have always used work tickets. When Ms. Donick hired Mr. Baxter, she claimed that he was an expert in building the Filemaker program which she said was why Mr. Baxter was selected over

me. See case number 04-16-080604, tab 25, Mr. Baxter's resume, 4th paragraph, where he wrote that he had knowledge of Filemaker.

Then if you look at his response to the selective factors, Mr. Baxter wrote that he is familiar with Quark. Mr. Baxter has not shown anyone in the Exhibits Department any skills in either Filemaker or Quark.

Filemaker is not or has not been used in the Exhibit department. We are still using plain old work tickets that we developed long before his arrival. We now mostly get work orders by e-mail or word of mouth. Mr. Baxter is unable to keep up with what we do daily.

The Exhibits Department at the National Zoological Park has never had a black person in a management position and no black person has never had a grade over the GS-11 level. Ms. Dolnick never promoted any black person to the GS-12 level. See ROI, case number 04-16-080604, volume II, Exhibit 2-L, which shows that the ranking factors were tailored so that I would not meet the position requirements. I obtained an e-mail by Herman Krebs, Designer, National Zoological Park, who said that the e-mail was lying around and that he just wanted to send it to me because management was trying to bump me out of the job in which I had been performing.

See case number 04-16-080604, volume II, Exhibit 2-N, E-mail from Kathleen Samiy to Dan Weinwurm, Lynn Dolnick and Scarlet Proctor where Kathleen states that I should receive equal pay for equal work. See ROI, case number 04-16-080604, See ROI, case number 04-16-080604volume II, Exhibit 2-O, which shows intention to hire Becky Donnell (and not me). At this time, a job announcement for the Production Manager had not been posted, I was acting in that position. Note that Ms. Dolnick told me that she could not make me a GS-12 because Ms. Samiy was a GS-12.

See ROI, case number 04-16-080604 volume II, Exhibit 2-P, which shows that I was discriminated against and that management, including Ms. Dolnick, had no intention of informing me of the position, although I was performing the duties for over a year and receiving Outstanding Performance appraisals.

·See ROI, case number 04-16-080604 volume II, Exhibit 2-Q; which shows a pattern of Ms. Dolnick's discriminatory selection of staff. Those that she placed in her position were harassers and often gave advice to Ms. Dolnick on how she should handle personnel issues when it came to the black staff members.

See ROI, case number 04-16-080604, volume I, Exhibit 17. Management is trying to use the Horticulture department as being a part of Exhibits. In these charts Horticulture was added to try to up their quotas for black staff members to make it look like there were more black staff members in Horticulture than there actually were.

See ROI case number 05-10-03-1805, tab A, E-mail to Dolph Sand shows discrimination, retaliation, failure to accommodate and harassment by Kathleen Samiy directed towards me. Also questioned Mr. Sand and Mary Tanner about the revised desk audit.

See ROI case number 05-10-03-1805, tab B, E-mail to Dolph Sand which shows discrimination, retaliation, failure to accommodate and harassment by Kathleen Samiy directed towards me. Ms. Dolnick was aware, yet she did nothing about the situation.

See ROI, case number 05-10-031805, tab C, E-mail to Dolph Sand showing discrimination, harassment and retaliation by Charles Fillah against me. Mr. Fillah wasn't my supervisor at that time. Ms. Dolnick was present doing this meeting and allowed Mr. Fillah's behavior to continue.

Ms. Dolnick also gave false information about my position and duties to the auditor regarding the desk and done in 2003 so that I would not receive a promotion. She also lowered my May 2004 performance appraisal from "Outstanding" to "Fully Successful." She also knew that I was given dirty and unsafe jobs to do.

See ROI, case number 05-10-031805 tab F. Dates and events of discrimination, retaliation and harassment against me by management, including Ms. Dolnick.

2. Kathleen Samiy   , formally Supervisor, Graphics and Design Management, in the Exhibits Department for the National Zoological Park, and my former immediate supervisor. She was aware of and/or involved in the following:

See ROI, case number 04-16-080604, volume I, Exhibit 2-A, complaint that outlines that I was being subjected to harassment, retaliation, that I was discriminated against because I am handicapped, subjected to a hostile work environment, racial discrimination, that the Agency perpetrated discriminatory and retaliatory practices and that the Agency failed to promote me because of these discriminatory/retaliatory motives. Much of this discrimination and retaliation was perpetrated by Ms. Samiy.

See ROI, case number 04-16-080604, volume II, Exhibit 2-E conflict with job description, also, see e-mail correspondents that shows harassment, that I was treated unfairly, retaliated against, and that the job was tailored for someone other than me because of discriminatory/retaliatory motives. Ms. Samiy was involved in this discrimination and retaliation.

See ROI, case number 04-16-080604, volume II, Exhibit 2-D, 2-K which shows that I was Acting Production and Project Manager, which was not added in the desk audit, nor was I compensated for. Ms. Samiy lied to the auditor about my position and duties. See ROI, case number 04-16-080604, volume II, Exhibit 2-L. See ROI, case number 04-16-080604, volume II, Exhibit 2-N, E-mail from Kathleen Samiy to Dan Weinwurm, Lynn Dolnick and Scarlet Proctor.

See ROI, case number 04-16-080604, volume II, Exhibit 2-O, which shows that I was acting as the Supervisor in Kathleen's absence.

See ROI, case number 04-16-080604 volume II, Exhibit 2-O, which shows intention to hire Becky Donnell. At this time a job announcement for the Production Manager had not been posted. I was acting in that position.

See ROI, case number 04-16-080604 volume II, Exhibit 2-P, which shows that I was discriminated and retaliated against and that Ms. Samiy had no intention of informing me of the position, although I was performing the duties for over a year and receiving Outstanding Performance appraisals. I was not included in this e-mail, dated August 18, 2003 from Kathleen Samiy that was forwarded to the staff regarding a job opening for Supervisor Exhibit Specialist, this is blatant discrimination.

See ROI case number 05-10-03-1805, tab B, E-mail to Dolph Sand shows discrimination, retaliation, failure to accommodate and harassment by Kathleen Samiy directed towards me

3.Jeff Baxter , Supervisory Exhibits Specialist, my immediate supervisor.

Mr. Baxter was aware of and/or was involved in the following:

See ROI, case number 05-10-031805, Description of complaint, section IV. Issue in the complaint, line c, should read January 22, 2005 was when I was told to start scheduling my sick leave. See ROI, case number 05-10-031805, section A-1, complaint of discrimination dated 03/01/2005 that outlines the discrimination to which I was subjected by Mr. Baxter. I was the only employee made to work in the lower shop which is unsafe.

Mr. Baxter gave me a letter of confirming counseling date December 17, 2004 which he said was under the direction of Chuck Fillah. Mr. Baxter fails to reasonably accommodate me as stated in my 1999 settlement agreement and as required by law, and treats me differently from other staff members.

Mr. Baxter put me in meetings with upper management and because I am not adequately informed, this made me uncomfortable and contributed to a hostile work environment.

Mr. Baxter has attacked my performance appraisal rating which is unjustifiable and is discrimination and retaliation. Mr. Baxter said that it was my responsibility to set up the lower shop alone, thus I am being treated differently and I feel that this is harassment, discrimination and retaliation. I was called "you people" by Mr. Baxter which is clearly a racist remark. Also, I was singled out and treated differently from other staff members by Mr. Baxter. I was targeted and threatened.

See ROI, case number 05-10-031805, Exhibit A-1. Meeting with Chuck Fillah, Earnest Robinson, Jeff Baxter and myself to discuss the unfair treatment to which black staff members were being subjected.

See ROI, case number 05-10-031805, Exhibit B-3. Shows Mr. Baxter's harassment, discrimination and retaliation against me by lowering my performance appraisal. I was harassed; singled out; made to work alone on heavy, dirty, and unsafe jobs; and a false report was submitted; all by Mr. Baxter. I was made to work above job level by attending a management (OPS) meeting. My suggestions are not heard and my expertise is being ignored by Mr. Baxter which makes my work load more difficult.

See ROI, case number 05-10-031805, Exhibit B-6. My performance appraisal was lowered by Mr. Baxter, which was discrimination, retaliation and harassment. See ROI, case number 05-10-031805, tab F2, Interrogatories that Mr. Baxter submitted. See ROI, case number 05-10-031805 Exhibit F-9, Rebuttal statement of Interrogatories.

See ROI Case number 05-10-031805, Exhibit F1, tab D, E-mail that outlines one of the ways that I was treated different than other staff members by Mr. Baxter, requesting that I place my leave slips in a common area of the hall way. Leave slips contain personal information that should not be accessible to everyone that walks past in the hall.

See ROI, case number 05-10-031805, Exhibit F1, tab E., dates of events that transpired in which I was being subjected to discrimination, retaliation and harassment by management, including Mr. Baxter, and also shows specifically how I was treated differently than other staff members.

See ROI, case number 05-10-031805, Exhibit F1, tab H, amended complaint that outlines that black staff members were treated differently than non black staff members. Also included that Mr. Baxter continues to say racial slurs to his black staff by saying in a meeting "you people."

We questioned Mr. Fillah on management integrating the Horticulture department with Exhibits. See confirmation of counseling letter that will confirm that I was being singled out because in the meeting that was held with Earnest Robinson, Chuck Fillah, Jeff Baxter and myself, it was bought to management's attention that Miles Simons called Mr. Robinson a "bum" in an open setting and nothing was done by Mr. Baxter or anyone else. Jeff Baxter was able to address his staff members as "you people," yet nothing was done. However, in a closed setting with only managers present, I am unable to voice my opinion without receiving a letter of counseling.

See ROI, case number 05-10-031805, Exhibit F1, tab K, amended complaint that includes my Performance Appraisal being unjustifiably lowered.

See ROI, case number 05-10-031805, Exhibit F1, tab M, requested to work above job level, assigning task tome that clearly requires more than one person, incorrectly submitted injury statement, treated different from other staff members. Outline of the conduct meeting which exemplifies a hostile work environment.

See ROI, case number 05-10-031805, Exhibit F1, tab O. E-mail to Jeff Baxter, management failed to take action against Elena Lopez for her assault and battery against me.

See ROI, case number 06-13-052606, Exhibit F1, tab B4. My Performance Appraisal dated 02/03/06 with a rating of Improvement Needed.

See ROI, case number 06-13-052606, tab F2. Statement/Response to Interrogatories of Jeff Baxter.

See ROI, case number 06-13-052606, tab F10. Supplemental Response to Interrogatories of Jeff Baxter.

See ROI, case number 06-13-052606, tab F11. My Rebuttal to initial complaint to Jeff Baxter's response dated 09/13/06.

See ROI, case number 06-13-052606, tab F12. My Rebuttal to Jeff Baxter's supplemental response dated 09/13/06.

See ROI, case number 06-13-052606, tab G8. My Performance Appraisal lowered.

4.    Charles Fillah, Acting Associate Director, Smithsonian Institute, National Zoological Park.

Mr. Fillah was aware of and/or involved in the following:

See ROI, case number 05-10-031805, tab A-1. Complaint of discrimination dated 03/01/2005 that outlines the discrimination to which I was subjected by Mr. Baxter which Mr. Fillah was aware. I was the only employee made to work in the lower shop which is unsafe. Mr. Baxter gave me a letter of confirming counseling which he said that was under the direction of Chuck Fillah. Mr. Baxter has attacked my performance appraisal which was signed by Mr. Fillah. This was discrimination and retaliation.

See ROI, case number 05-10-031805, tab A-1. Meeting with Chuck Fillah, Earnest Robinson, Jeff Baxter and myself to discuss the unfair treatment to which black staff members were being subjected. Also, that I was singled out and treated differently from other staff members. I was targeted and threatened.

See ROI, case number 05-10-031805, tab B-3. Shows harassment, discrimination and retaliation by lowering my performance appraisal, of which Mr. Fillah was aware.

See ROI, case number 05-10-031805, tab B-6.  My performance appraisal was lowered which I feel is harassment, discrimination and reprisal, of which Mr. Fiddah was aware.

See ROI, case number 05-10-031805, tab F3.  Statement and Response to Interrogatories.

See ROI, case number 05-10-031805, tab C.  E-mail to Dolph Sand showing discrimination, harassment and retaliation by Charles Fillah against me.  Mr. Fillah wasn't my supervisor at that time.

See ROI, case number 05-10-031805, Exhibit F1, tab H, amended complaint that outlines that black staff members were treated differently than non black staff members.  Also included that Mr. Baxter continues to say racial slurs to his black staff by saying in a meeting: "you people."  See confirmation of counseling letter that will confirm that I was being singled out because in the meeting that was held with Earnest Robinson, Chuck Fillah, Jeff Baxter and myself, it was bought to management's attention that Miles Simons called Mr. Robinson a "bum" in an open setting and nothing was done.  Jeff Baxter was able to address his staff members as "you people", yet nothing was done.  However, in a closed setting with only managers present, I am unable to voice my opinion without receiving a letter of counseling.

We questioned Mr. Fillah on management integrating the Horticulture department with Exhibits.

See ROI, case number 05-10-031805, Exhibit F1, tab K, amended complaint that includes my Performance Appraisal being unjustifiably lowered.

See ROI, case number 50-10-031805, Exhibit F1, tab O.  E-mail to Jeff Baxter, management fail to take action against Elena Lopez for her assault and battery against me.  Chuck Fillah was aware of the incident.

See ROI, case number 04-16-080604, volume I, Exhibit 17.  Management was trying to use the Horticulture department as being a part of Exhibits.  In these charts Horticulture was added to try to up their quotas for black staff members.

See ROI, case number 06-13-052606, tab B4.  My Performance Appraisal dated 02/03/06 with a rating of "Improvement Needed," of which Mr. Fillah was aware.

See ROI, case number 06-13-052606, tab F3, Statement/Response to Interrogatories of Charles Fillah.

See ROI, case number 06-13-052606, tab G8.  My Performance Appraisal lowered, of which Mr. Fillah was aware..

5.    Susan Ades, Manager/Supervisor over the Exhibits Department.

See ROI, case number 50-10-031805 tab O.  E-mail to Jeff Baxter, management failed to take action against Elena Lopez for her assault and battery against me.  Ms. Ades was Elena Lopez's supervisor at that time.  I asked her if she was going to take action against Ms. Lopez for the assault and battery against me and she responded no, in an angry tone and asked me "now what?"

6.    Mary Tanner, Deputy Director of NZP and my second line supervisor.  Ms. Tanner was aware of and/or involved in the following:

See ROI, case number 04-16-080604, volume I, Exhibit 2-A.  Complaint that outlines that I was being subjected to harassment, retaliation and discrimination against by management, including Ms. Tanner, and that the Agency failed to promote me.

See ROI, case number 05-10-031805, Exhibit A-1.  Mr. Baxter gave me a letter of confirming counseling which he said that was under the direction of Chuck Fillah.  Mr. Baxter has attacked my performance appraisal which was signed by Mr. Fillah.  This was discrimination and retaliatory.  Also Mr. Baxter told me and Sherod Mangum that Ms. Tanner approved the appraisal.

See ROI case number 05-10-03-1805, tab A.  E-mail to Dolph Sand shows discrimination, retaliation, failure to accommodate and harassment by Kathleen Samiy directed towards me.  Also questioned Mr. Sand and Mary Tanner about the revised desk audit.

See ROI, case number 04-16-080604, volume I, tab 5-A, rebuttal to Ms. Tanner's affidavit.

See ROI, case number 04-16-080604, volume I, tab 7.  Personal notes of meeting held 01/16/04.

See ROI, case number 04-16-080604, volume II, Exhibit 2-G.  E-mail that requests a meeting in which to outline concerns in the workplace.  Ms. Tanner informed me that if I was to drop this particular issue that she would see to it that my leave would be restored.  Mr. Sand is a witness that this conversation took place.

See ROI, case number 04-16-080604, volume I, Exhibit 17.  Management is trying to use the Horticulture department as being a part of Exhibits.  In these charts Horticulture was added to try to up their quotas for black staff members.

See ROI, case number 04-16-080604, volume II, Exhibit 2-Q.  Meeting that Mary Tanner headed to inform staff members that Chuck Fillah would be taking on the title of Acting Associate Director and questions that were not answered.

See ROI, case number 06-13-052606, tab F4. Statement/Response to Interrogatories of Mary Tanner.

See ROI, case number 06-13-052606, tab F13. My Rebuttal to Mary Tanner's response, dated 09/13/06.

See ROI, case number 06-13-052606, tab G8. My Performance Appraisal lowered.

7.    Dolph Sand, Personnel Chief. Mr. Sand was aware of and/or involved in the following:

See ROI, case number 04-16-080604, volume II, tab 2-H. Mr. Sand discriminated against me because he ignored my concerns. He suggested that I file a formal complaint because he understood that I had exhausted all other avenues.

See ROI case number 05-10-03-1805. tab A. E-mail to Dolph Sand shows discrimination, retaliation, failure to accommodate and harassment by Kathleen Samiy directed towards me.

See ROI case number 05-10-03-1805, tab B, E-mail to Dolph Sand shows discrimination, retaliation, failure to accommodate and harassment by Kathleen Samiy directed towards me. I also questioned Mr. Sand about the revised desk audit that was supposed to have taken place.

See ROI Case number 05-10-031805 tab C. E-mail to Dolph Sand showing discrimination and harassment by Charles Fillah against me. Mr. Fillah wasn't my supervisor at this time. I was instructed by Mr. Sand to not send Ms. Tanner any more e-mails, that they should go through him.

See ROI Case number 05-10-031805 tab D. E-mail that outlines one of the ways that I was treated differently than other staff members by Mr. Baxter requesting that I place my leave slips in a common area of the hall way. Leave slips has personal information that should not be assessable to everyone that walks pass in the hall. Mr. Sand was aware of this.

8. Al Beim

See ROI, case number 04-16-080604. volume I. tab 17. Management is trying to use the Horticulture department as being a part of Exhibits. In these charts Horticulture was added to try to up their quotas for black staff members. This is a smoke screen.

9. Scarlett Proctor   . Personnel Specialist. Ms. Protor was aware of and/or involved in the following:

See ROI, case number 04-16-080604. volume II. Exhibit 2-E. conflict with job description.

See ROI, case number 04-16-080604, volume II, Exhibits 2- J, 2-L, which shows that Ms. Proctor had knowledge of the ranking factors being modified in the hopes that I would not qualify after I made the first cert in which this job announcement was withdrawn. (Discrimination and retaliation).

See ROI, case number 04-16-080604, volume II, Exhibit 2-M. Information and notes that I requested from the desk audit were never furnished to me as I requested. Although the points that were given were included in the desk audit, I requested a copy of the scale that was used. I never received the scale.

10. Debbie Burnie, EAP Counselor, Smithsonian Institute.

See ROI, case number 05-10-031805 tab E. Failure to accommodate, see letter authorizing Ms. Burnie to speak with my supervisors regarding my illness.

See ROI, case number 05-10-031805 tab G, see September 13, 2004 note. Failure to accommodate.

11. Julie Mason, Associate Director for Public Affairs and Communications, NZP,

See ROI, case number 04-16-080604, volume II, Exhibit 2-I. The information that I requested from her was never received after two separate attempts.

B.      As to individuals with personal knowledge of the 1999 settlement agreement between myself and the Agency, these include, but are not limited to:

1. Alan Banov   , Attorney for Anthony Bowden at that time, who negotiated the 1999 settlement agreement.

2. Wilma Lewis   , States Attorney, Signed the 1999 settlement agreement.

3. Mark Nagleand   , United States Assistant Attorney. Signed the 1999 settlement agreement.

4. Daria Zane   , United States Assistant Attorney. Signed the 1999 settlement agreement.

5. James Douglas   , Attorney for the Smithsonian Institution. Signed the 1999 settlement agreement.

6. Mary Tanner   , Assistant Director for the Smithsonian Institute. Ms. Tanner, Dolph Sand and I met on January 16, 2004 to discuss the discrimination and harassment to which I was being

subjected by Kathleen Samiy and Lynn Dolnick. During this meeting, I bought to Ms. Tanner's attention that I had still not received part of my settlement agreement from the 1999 case which was the restoration of my leave. Ms. Tanner informed me that if I was to drop this particular issue that she would see to it that my leave would be restored.

7. Dolph Sand  , Attorney, Chief of the Personnel Department, Smithsonian Institution. Ms. Tanner, Dolph Sand and I met on January 16, 2004 to discussed the discrimination and harassment that I was being subjected to by Kathleen Samiy and Lynn Dolnick. During this meeting I bought to Ms. Tanner's attention that I had still not received part of my settlement agreement from the 1999 case which was the restoration of my leave.

8.- 11.    Current attorneys working on the case:   For Plaintiff, Steven J. Silverberg, Bruce Stein (an attorney who does work for Mr. Silverberg).  For Defendant, Mark Nebeker (United States Attorney), and Mildred Glover (Agency attorney).


**INTERROGATORY NO. 2.**          Identify each and every Smithsonian Institution employee whom you contend engaged in intentional discrimination or retaliation against you, as alleged in your Complaint and describe in detail the evidence of his or her intent in taking the action which you claim was discriminatory or retaliatory.

        ANSWER:    Plaintiff objects to this Interrogatory as overbroad and unduly burdensome to the extent that this information can be found in the ROIs and Complaint Files for Agency Case Numbers 04-16-080604, 05-10-031805, 05-23-071105, 06-04-010306, and 06-13-052606; the burden of ascertaining answers from these documents being equal for Plaintiff and Defendant as both Plaintiff and Defendant have custody, possession and/or control of these documents. Subject to and without waiving said objections, Plaintiff answers as follows: Please see the ROIs and Case Files in this case, and attached documents. Plaintiff further answers as follows: See paragraphs A(1)-(11) in my response to Interrogatory Number 1.


**INTERROGATORY NO. 3.**          Identify each and every individual (including you and others) who has made a written or oral statement, including, but not limited to, any statements captured on audio tapes in your possession, referring or relating to the subject of your EEO complaint(s) or the allegations in your Complaint in this civil action, describing each such statement in accordance with Definition E above, including the basis for your knowledge of such statement.

ANSWER:    Plaintiff objects to this Interrogatory as overbroad and unduly burdensome to the extent that this information can be found in the ROIs and Complainant Files for Agency Case Numbers 04-16-080604, 05-10-031805, 05-23-071105, 06-04-010306, and 06-13-052606; the burden of ascertaining answers from these documents being equal for Plaintiff and Defendant as both Plaintiff and Defendant have custody, possession and/or control of these documents. Plaintiff also objects in that it is impossible for him to know every statement and every person who made statements referring to the subject and allegations of the complaints. Subject to and without waiving said objections, Plaintiff answers as follows: Please see the ROIs and Case Files in this case and attached documents. The basis for Plaintiff's knowledge of these statements are his possession of the ROIs and of materials in the Case Files and of materials being provided as part of Plaintiff's Discovery Responses, and/or conversations with the identified individuals. Plaintiff further responds as follows:

1. Dr. Surriya P Azam   , Psychiatrist for Anthony Bowden.

See ROI case number 05-10-031805 tab P, letter from Doctor Azam.

2. Ernest Robinson   , Designer, Exhibits Department, National Zoological Park.

See ROI case number 05-10-031805, tab 1-A, Chuck Fillah, Earnest Robinson, Jeff Baxter and I met to discuss the unfair treatment to which black staff members were being subjected. See also ROI, case number 05-10-031805 tab H, amended complaint that outlines that black staff members were treated different than non-black staff members. Also, Mr. Baxter continues to say racial slurs to his black staff by saying in a meeting that "you people." See confirmation of counseling letter that will confirm that I was being singled out because in the meeting that was held with Earnest Robinson, Chuck Fillah, Jeff Baxter and myself, it was bought to management's attention that Miles Simons called Mr. Robinson a "bum" in an open setting and nothing was done. Jeff Baxter was able to address his staff members as "you people," yet nothing was done. However, in a closed setting with only managers present, I am unable to voice my opinion without receiving a letter of counseling. We questioned Mr. Fillah on management integrating the Horticulture department with Exhibits. See ROI, case number 04-16-080604, volume I, tab 10, Affidavit that shows discriminatory practices, hostile work environment, sex discrimination, race discrimination. See ROI case number 05-10-031805 tab P, second page, Statement and Response of Interrogatories for Mr. Robinson. See ROI, case number 06-13-052606, tab F7, Statement/Response to Interrogatories of Earnest Robinson.

3. Grace Lopez  , formally Exhibit Specialist, Exhibits Department, National Zoological Park.

See ROI, case number 04-16-080604, volume I, Exhibit 12, affidavit that shows discriminatory practices, hostile work environment, sex discrimination, race discrimination.

4.Sherod Mangum  , Exhibit Specialist, National Zoological Park.

See ROl, case number 05-10-031805, tab A-1. Mr. Baxter gave me a letter of confirming counseling which he said was under the direction of Chuck Fillah. Mr. Baxter has attacked my performance appraisal which was signed by Mr. Fillah. Also Mr. Baxter told me and Sherod Mangum that Mr. Tanner approved the appraisal. Mr. Mangum can testify to the fact that Mr. Baxter said that it was my responsibility to set up the lower shop alone, thus I am being treated different.

See ROI, case number 05-10-031805, tab G10. In the memorandum to the file from Herbert Jackson, Mr. Jackson states that Sherod Mangum indicated that he was a temporary employee and was currently seeking permanent employment status. Mr. Mangum stated that accordingly, he preferred not to respond to questions pertaining to the allegation in this complaint.

See ROI, case number 06-13-052606, tab F6, Statement/Response to Interrogatories of Sherod Mangum.

5.Herman Krebs  , Designer, National Zoological Park.

See ROI, case number 04-16-080604, volume I, Exhibit 9. Affidavit that shows discriminatory practices. hostile work environment. sex discrimination. and race discrimination.

See ROI. case number 04-16-080604, volume II, Exhibit 2-L. Mr. Kreb's said that this E-mail was lying around and that he just wanted to give me the "ups" because management was trying to bump me out of the job.

6.Melissa Gaulding  , formally Assistant of Interpretations (not sure of title). National Zoological Park, Smithsonian Institute,

See ROI. case number 04-16-080604, volume I, Exhibit 14, Affidavit that shows discriminatory practices, hostile work environment, sex discrimination. race discrimination.

See ROI. case number 04-16-080604, volume II, Exhibit 2-O. shows intention to hire Becky Donnely. At this time a job announcement for the Production Manager had not been posted. I was acting in that capacity at the time.

7.Stacy Tabellario  , formally worked in Photography, National Zoological Park.

See ROI, case number 05-10-031805, tab B-3. Ms. Tabellario got upset in a meeting because she said that the meetings were a cover up and stated that she had been threatened several times for speaking out about things to make the situation better.

See ROI, case number 04-16-080604, volume I, Exhibit 13, Affidavit that shows discriminatory practices, hostile work environment, sex discrimination, race discrimination, retaliation.

8. Judy Tasse , Writer/Editor, National Zoological Park, Smithsonian Institute.

See ROI, case number 04-16-080604, volume I, Exhibit 11, Affidavit that shows discriminatory practices, hostile work environment, sex discrimination, race discrimination, retaliation.

9. Aaron Foster , former Writer/Editor, National Zoological Park, Exhibits Department.

See ROI, case number 04-16-080604, volume I, Exhibit 8, affidavit that shows discriminatory practices, hostile work environment, sex discrimination, race discrimination, retaliation.

10. Janine Scott, formally Assistant Administrator, National Zoological Park.

Verbal conversations with Ms. Scott about the unfair treatment to which black staff members were/are being subjected.

11. Lisa Holmes, National Zoological Park.

Verbal conversations with Lisa about the unfair treatment to which black staff members were/are being subjected.

12. Patrice Payne, Administrative Assistant, Exhibits Department, National Zoological Park.

Verbal conversations with Ms. Payne about the unfair treatment to which black staff members were/are being subjected.

13. Kate Headline, Writer, Exhibits Department. National Zoological Park.

Verbal conversations with Ms. Headline about the unfair treatment to which black staff members were/are being subjected. She asked to be called as a witness if my case ever went to court.

14. Tina Samuels, former Administrative Assistant, Exhibits Department. National Zoological Park.

Verbal conversations with Ms. Samuels about the unfair treatment to which Black staff members were/are being subjected.

15. Shane Potts, former employee of the National Zoological Park.

See ROI, case number 05-10-031805, section B-3, in a meeting Shane stated that if staff members' talk to management about the unfair treatment, they end up getting shafted. Shane has since been fired/forced to resign. Shane was mentally handicapped.

16. Tyrone Savoy, Animal Keeper, National Zoological Park.

See ROI, case number 06-13-052606, tab F9, Statement/Response to Interrogatories of Tyrone Savoy.

17. Kimberly Newton, fiancé.

See ROI, case number 04-16-080604, volume I, tab 15, Affidavit that shows discriminatory practices, hostile work environment, sex discrimination, race discrimination, retaliation.

18. Margaret Jamison, Aunt of Anthony Bowden.

Verbal conversations with Ms. Jamison about the unfair treatment to which black staff members were/are being subjected.

19. Anthony Bowden's son.

Verbal conversations with Mr. Bowden, Jr. about the unfair treatment to which black staff members were/are being subjected.

**INTERROGATORY NO. 4.**     Identify each employee of the Defendant who you claim was similarly situated to you, but is not of your race, color, sex, or religion and/or who is not disabled and/or who was not allegedly subjected to reprisal and who you contend was treated differently than you with regard to the claims as set forth in the instant Complaint, describing the factual basis for your claim for each such person you claim is similarly situated to you, the race, color, sex, religion, national origin and/or race of the individual and/or who was not disabled, how each such person was treated differently, and the bases for your contention that the alleged incident(s) of disparate treatment constituted evidence of discrimination.

ANSWER:    Plaintiff objects to this Interrogatory as overbroad and unduly
burdensome to the extent that this information can be found in the ROIs and/or Complaint Files
for Agency Case Numbers 04-16-080604, 05-10-031805, 05-23-071105 (no ROI ever issued),
06-04-010306 (no ROI ever issued), and 06-13-052606 (hereinafter collectively referred to as
"the ROIs and Complainant Files in this case"); the burden of ascertaining answers from these
documents being equal for Plaintiff and Defendant as both Plaintiff and Defendant have
custody, possession and/or control of these documents. Plaintiff also objects to the extent that
he cannot possibly know or sure what persons have what specific knowledge. Subject to and
without waiving said objections, Plaintiff answers as follows: Please see the ROIs and
Complaint Files in this case, and the attached documents. Plaintiff also states the following:

1.Grace Lopez   , Asian, female, Atheist, no known disabilities. Allowed to stay in a
    comfortable work area; not made to lift heavy objects or made to do anything physical; not
    made to work in the lower shop; not questioned about her whereabouts; not micromanaged;
    not made to complete assignments in her Zone; not questioned about her doctors'
    appointments; not requested to schedule sick leave; although her job description, title and
    grade level is the same as mine, she is not required to do Scopes of Work. She is not made to
    supervise contractors; she is not harassed, assaulted or otherwise mistreated. Her
    performance evaluation has not been lowered to "Satisfactory or Improvement Needed". She
    is permitted to only work a menial job which is picking vinyl all day. Most of the work that
    she does is FONZ (Friends of the National Zoo) which is not a part of the Federal
    Government, although she is an employee of the Federal Government. Her opinion is valued
    and used regarding projects. She was given a Promotion to a GS-11 after being told by
    Kathleen Samiy and Lynn Dolnick that if she withdrew her application for the Designer job
    in which Elaina Lopez applied, that she would be given a GS-11 and she would be able to
    maintain her current job duties. Not made to place leave slips in the hallway. Not made to
    call her supervisor when she is leaving for the day. Not harassed for being less that five
    minutes late for a meeting. Not criticized in the Park in from of visitors and staff members
    by their supervisors. Not made to inspect her Zone of the Park. Not made to clean signs, not
    made to use power and hand tools. Not made to set up the lower shop. She was not given
    work tickets that included anything other than making paper signs. Not separated by the
    statement of "you people." She is allowed to work freely and independently without being
    harassed. Not made to work in the lower shop. Her opinion and suggestions were valued by
    management.

2.Elaina Lopez,    Hispanic, female, religion unknown, no known disabilities. Allowed to
    physically assault staff members, allowed to come and go as she pleases without being
    questioned, allowed to make false allegations, she is not harassed, not discriminated against,
    allowed not to clean up after herself, was hired in the position of a Designer, although she
    was not the most qualified candidate. I was not afforded an increase or a promotion although
    I was working above my job description and was taking on many tasks of a supervisor. Not
    made to place leave slips in the hallway. Not made to call her supervisor when she is leaving
    for the day. Not harassed for being less that five minutes late for a meeting. Not criticized in

the Park in from of visitors and staff members by their supervisors; not discriminated because of her sex, color, disabilities if any; not separated by the statement of "you people." She is allowed to work freely and independently without being harassed. Her opinion and suggestions were valued by management.

3. Herman Krebs , White, male, Congregationalist/Protestant, no known disabilities, no EEO complaints, Allowed to work on one project for five years or more which is the sign system. The sign system has been completed for over a year, yet he is not made to work on other projects. He is not bombarded with excessive work tickets. Allowed to leave the work area without being questioned, allowed to take extended lunch hours and numerous coffee breaks which consist of walking to Starbucks, not made to place leave slips in the hallway, not made to schedule sick leave, not made to call his supervisor when he leaves for the day. Not made to stand at attention for individual morning meetings. Not harassed for being less that five minutes late for a meeting. Not criticized in the park in front of visitors and staff members by his supervisor. Not separated by the statement of "you people." He is allowed to work freely and independent without being harassed. His performance evaluation has not been lowered to "Satisfactory or Improvement Needed," not criticized in the Park in front of visitors and staff members, not separated by the statement of "you people." His opinion and suggestions are valued by management.

4. Judy Tasse , White female, Jewish, no known disabilities, no EEO complaints. Allowed to work freely and independently without being harassed, promoted to the GS-12 grade level without having a desk audit performed, did not have to apply for the promotion, not harassed about her whereabouts in the work place, not criticized in the park in front of visitors and staff members, not separated by the statement "You people." Her opinion and suggestions are valued by management.

5. Kate Headline.    White female, Jewish, no known disabilities, no EEO complaints. Allowed to work freely and independently without being harassed; not separated by the statement "you people." Her opinion and suggestions were valued by management.

6. Ann Batdorf , White female, Jewish, no known disabilities, no EEO complaints, allowed to work freely and independently without being harassed; not separated by the statement "you people." Her opinion and suggestions were valued by management.

7. Amanda Perez , White female, religion unknown, no known disabilities, no EEO complaints, allowed to work freely and independently without being harassed; not separated by the statement "you people." Her opinion and suggestions are valued by management.

8. Aaron Foster,    White male, Jewish, no known disabilities.  No EEO complaints, He is not bombarded with excessive work tickets. Allowed to leave the work area without being questioned, allowed to take extended lunch hours and numerous coffee breaks which consist of walking to Starbucks, not made to place leave slips in the hallway, not made to schedule

sick leave, not made to call his supervisor when he leaves at the end of the day. Not made to stand at attention for individual morning meetings. Not harassed for being less that five minutes late for a meeting. Not criticized in the park in front of visitors and staff members by his supervisor. Not separated by the statement "you people." He is allowed to work freely and independently without being harassed. His performance evaluation has not been lowered to "Satisfactory or Improvement Needed," not criticized in the park in front of visitors and staff members. Promoted to a GS-12 without having to get a desk audit performed. His opinion and suggestions were valued by management.

9. Stacy Tabellario.   White female, religion unknown, no known disabilities, no EEO complaints. Allowed to work freely and independently without being harassed, not separated by the statement "you people." Her opinion and suggestions were valued by management.

10. Melissa Gaulding, White female, religion unknown, no known disabilities, no EEO complaints. Allowed to work freely and independently without being harassed, not separated by the statement "you people." Her opinion and suggestions were valued by management.

**INTERROGATORY NO. 5.**    Describe in detail each instance that the Plaintiff sought a specific accommodation for medical purposes, including but not limited to each effort to secure leave for doctor's or health care provider's appointments, that the Defendant allegedly refused to grant, and identify as to each instance the documentation regarding: (a) the specific date(s) for each request and each instance of denial; (b) the stated basis for the denial; and (c) identify for each instance of denial the evidence presented to substantiate the need for the accommodation or leave request, such as that contemplated as "objective evidence" in the settlement agreement in *Bowden v. Heyman*. Your response to this interrogatory should include, without limitation, a description of any efforts made to present objective evidence to the Smithsonian Institution in support of any claim that the Plaintiff should receive restored leave as suggested in the Stipulation of Settlement and allegations set forth in paragraphs 14-16 of the Complaint, including but not limited to the specific information submitted, the date(s) it was submitted, by whom it was submitted, to whom it was submitted, the substance of any response from the Agency, the identity of the person making any such response and the date any response was received as a result of the submission.

ANSWER:

See ROI, case # 05-10-031805, opening statement from the investigator, page 8, paragraph 4.

See ROI, case # 04-16080604, tab 2B, an e-mail for Kathleen Samiy, as discussed to work out with doctor requesting a more regular doctor's appointment. E-mail dated 03/16/04 (Accommodations for Doctor's Appointment)

See ROI, case # 04-16080604, tab 2E, e-mail dated 04/26/04 that requested that I not attend a meeting due to my stress level being elevated. This request was not granted.

See ROI, case # 05-10-031805, tab G. See section dated September 13, 2004, request for reasonable accommodations.

See ROI, case # 04-16080604, Volume I, tab 2, 03/16/2004. Ms Samiy questioned me about appointment with doctor in front of co-workers.

See ROI, case # 04-16080604, Volume II, tab 2-H, harassed about needing to go to my doctor's office. See E-Mail to Dolph Sand dated 03/11/04, date of event March 2, 2004. Also see E-Mail to Dolph Sand, dated 03/16/2004, where Ms. Samiy harassed me about a doctor's appointment.

Plaintiff's first attorney, Alan Banov, attempted to get the Agency to restore Plaintiff's leave in 1999. His present attorney, Steven J. Silverberg, attempted to get the Agency to restore Plaintiff's leave in 2004. Plaintiff objects to providing information regarding the details of these efforts as unduly burdensome as the Agency has or should have this information.

**INTERROGATORY NO. 6.**    Describe in detail each instance where the Plaintiff sought a specific reasonable accommodation for medical purposes, identify the "objective evidence" presented to substantiate that the Plaintiff's leave was in fact as a direct result of the Plaintiff's medical condition and/or the medical condition was an outgrowth of the injuries sustained on the job by the Plaintiff.

ANSWER:    See answer to the above Interrogatory No. 5. Also, Plaintiff objects to identifying "objective evidence" as unduly burdensome as the Agency has or should have this information.

**INTERROGATORY NO. 7.**   Describe in detail the additional duties assigned to and performed by the Plaintiff, including but not limited to the duration for which plaintiff performed the duties both in: 2001 in the absence of the Supervisory Exhibits Specialist (Mr. Hyder) when plaintiff's complains his duties were beyond the Plaintiff's position description as "Exhibit Specialist"; beginning in August 2002 as Acting Head of Production; and at any other time that Plaintiff asserts he assumed responsibilities of his supervisor.

ANSWER:    I did not have a position description in 2001, 2002, 2003 or 2004. Kathleen Samiy, Lynn Dolnick and Scarlett Proctor told me that my position description was to be determined after the desk audit was performed, however, after the desk audit was performed there were many duties that I performed that were omitted. The Agency was to do a revised desk audit which was never performed. See ROI, case # 04-16080604, Volume II, tab 2-P, General Questionnaire, pages 6 and 7, for the duties that I performed in 2001 in the absence of a Supervisory Exhibit Specialist. All of the duties lasted over two years and I am still performing many of the duties.

**INTERROGATORY NO. 8.**   Describe in detail any errors or omissions in the information provided in, and results of, the desk audit conducted on or about October 17, 2003, explaining with specificity the recommendations of the audit and the alleged deficiencies in the audit's assessment of the duties that plaintiff asserts he was performing, the person who made any such error or omission and any facts indicating why the error or omission was made.

ANSWER:    Please see the ROI for Agency Case No. 04-16-080604, Exhibit 5. Plaintiff further answers as follows:

See ROI, case # 05-10-031805, tab A, e-mail to Dolph Sand dated 03/11/04, asking Mr. Sand what happened to the revised desk audit that he and Mary Tanner spoke about in our meeting. See ROI, case # 04-16080604, Volume II, tab 2-E, letter dated Nov. 6, 2003 to Lynn Dolnick. The persons responsible that made the omissions were Kathleen Samiy and Lynn Dolnick.

**INTERROGATORY NO. 9.**   Describe in detail any efforts or documents used to report plaintiff's alleged back injury to anyone at the Smithsonian, the National Park Service, the National Zoological Park ("NZP") administrator, any health care

providers, and/or the Department of Labor's Office of
Workers Compensation.

ANSWER:    See ROI, case # 05-10-031805, tab L, e-mail to Jeff Baxter that informs
him that I was having back pains. See ROI, case # 05-10-031805, tab M, letter to Jeff Baxter
dated March 2, 2005, second page, last couple of paragraphs. see also Occupational Injury
Report dated 1/22/2004. See Dr. Henry W. Williams, Jr. diagnosis report 03/08/2000.

**INTERROGATORY NO. 10.**    Identify any and all reports made by the Plaintiff to the
Smithsonian Institution Office of Environmental
Management and Safety as to the requirement that he work
alone on large and heavy projects, and the response to such
reports.

ANSWER:    See ROI, case # 05-10-031805, tab M, Occupational Injury Report dated
1/22/2004.

**INTERROGATORY NO. 11.**    Describe in detail all claims (written or otherwise) made
and approvals or denials of all claims made by Plaintiff
under the Federal Employees' Compensation Act
("FECA") for the alleged injuries to his back while doing
heavy lifting at the NZP as a part of his duties.

ANSWER:    See ROI, case # 05-10-031805, tab M, Occupational Injury Report dated
1/22/2004. I have no knowledge if it was approved or denied.

**INTERROGATORY NO. 12.**    Describe in detail any consultation or communication by
Plaintiff with the Smithsonian Institution Office of Human
Resources or the nursing staff of the Smithsonian
Institution Office of Environmental Management and
Safety regarding the alleged injuries arising from heavy
lifting at the NZP as a part of Plaintiff's duties and provide
copies of any reports received from such claim(s).

ANSWER:    See ROI, case # 05-10-031805, tab M, Letter to Jeff Baxter dated March
2, 2005, second page, last couple of paragraphs. See also Occupational Injury Report dated
1/22/2004. See Dr. Henry W. Williams, Jr. diagnosis report dated 03/08/2000.

**INTERROGATORY NO. 13.**    Identify, as required in Paragraph G of the above
definitions, all of the federal government personnel policies

that you rely upon to support your contention in paragraph 11 of the Complaint that the defendant "failed to follow federal government personnel polices while conducting the activities described in paragraphs 5-10 [of the Complaint]."

ANSWER:    Plaintiff objects to this interrogatory in that it is vague and unclear because paragraph 11 of Plaintiff's Second Amended Complaint does not make the referenced statement, and the referenced paragraphs 5-10 identify parties to the matter and describe the procedural history of this matter, and Plaintiff is unable to locate any such quoted allegation in the Second Amended Complaint.

**INTERROGATORY NO. 14.**    Describe in detail all of the facts and circumstances surrounding your reassignment and change in position title that you allege in paragraph 17 of the Complaint support an inference of unlawful discrimination based on your race.

ANSWER:    Plaintiff objects to this interrogatory in that it is vague and unclear because paragraph 17 of Plaintiff's Second Amended Complaint does not make the referenced allegation, but rather refers to Ms. Samiy as being Plaintiff's immediate supervisor. Nor is Plaintiff alleging reassignment and change in position title as discriminatory acts.

**INTERROGATORY NO. 15.**    Describe in detail the basis(es) for your claim in paragraph 18 of the Complaint that you did not enjoy the same privileges and benefits or terms and conditions of employment as did other similarly situated persons outside your protected class.

ANSWER:    Plaintiff objects to this interrogatory in that it is vague and unclear because paragraph 18 of Plaintiff's Second Amended Complaint does not make the referenced allegation, but rather refers to Jeffrey Baxter as becoming Plaintiff's supervisor in or about June, 2004. Further, Plaintiff is unable to locate the use of any phrase such as "did not enjoy the same privileges and benefits or terms and conditions of employment as did other similarly situated persons outside your protected class" in the Second Amended Complaint. Further, Plaintiff objects to this interrogatory as redundant as he has already been asked and answered this Interrogatory in Interrogatory No. 4.

**INTERROGATORY NO. 16.**    Describe in detail all of the facts upon which you rely to support your assertions that anyone employed with the Defendant intentionally discriminated and/or retaliated against you.

ANSWER:    Plaintiff objects to this Interrogatory as overbroad and unduly burdensome to the extent that this information can be found in the ROIs and Complaint Files for Agency Case Numbers 04-16-080604, 05-10-031805, 05-23-071105, 06-04-010306, and 06-13-052606; the burden of ascertaining answers from these documents being equal for Plaintiff and Defendant as both Plaintiff and Defendant have custody, possession and/or control of these documents. Further, Plaintiff objects to this Interrogatory as redundant as he has already been asked and answered this interrogatory in Interrogatories Numbers 1 and 2.

**INTERROGATORY NO. 17.**    Describe in detail the basis(es) for your assertion that you suffered severe damages as a result of the allegations in the Complaint, identifying all of the damages referenced therein.

ANSWER:    Plaintiff objects to this Interrogatory as overbroad and unduly burdensome to the extent that this information can be found in the ROIs and Complaint Files for Agency Case Numbers 04-16-080604, 05-10-031805, 05-23-071105, 06-04-010306, and 06-13-052606; the burden of ascertaining answers from these documents being equal for Plaintiff and Defendant as both Plaintiff and Defendant have custody, possession and/or control of these documents. Subject to and without waiving said objections, Plaintiff answers as follows: Please see the ROIs and Complaint Files in this case and attached documents. Plaintiff further answers as follows: see Plaintiff's answer to Interrogatory No. 22 as to pain and suffering. Also note that Plaintiff experienced monetary damages from not being promoted to Supervisory Exhibits Specialist, GS-1010-12, on or about April 22, 2004, and from not being properly compensated for the higher graded duties that he has performed since 2001 (he has actually been performing at the GS-12 level since 2001)

**INTERROGATORY NO. 18.**    Except as already stated in your Answers to these Interrogatories, state and describe in full and complete detail each and every other act and/or omission on the part of the defendant, or any of its employees, which you contend constitutes the basis of your complaint, and for each alleged act and/or omission, identify when and where it occurred; all individuals involved in, responsible for or with personal knowledge of the alleged employment practice, and the specific nature of each such person's

actions and/or responsibility in connection with the alleged act and/or omission; and why you contend the alleged act and/or omission constituted unlawful discrimination. For each allegedly unlawful act and/or omission, identify each and every person with personal knowledge of these facts and for each person describe the specific facts within his or her knowledge and how he or she came to possess such knowledge. Identify each and every document which supports or relates to these contentions.

ANSWER:    Please see the ROIs and Complaint Files in this case and attached documents, and Plaintiff's answers and responses to the discovery requests elsewhere herein.

**INTERROGATORY NO. 19.**    Other than the charges of failure to promote in the present action, state whether you have ever filed a formal or informal grievance or complaint alleging failure to promote against any employer or any other entity or individual; and if so, identify the employer, entity or individual against whom you filed such grievance or complaint and the forum in which such grievance or complaint was filed; the basis of the grievance or complaint: provide the charge number, civil action number or other identifying code of such grievance or complaint, and provide the date, nature and disposition of each such grievance.

ANSWER:    I have not done so.

**INTERROGATORY NO. 20.**    Describe in detail any instances in the past 10 years in which you have made a claim that you were injured physically or mentally, and identify any person to whom you made or submitted such a claim as well as the results of your claim; and if your claim involved any attempt to secure a monetary recovery, please indicate the amount of the recovery requested and received.

ANSWER:    Plaintiff objects to this Interrogatory asking what amount of recovery was requested to the extent that it violates attorney-client privilege and is inadmissable as it concerns settlement negotiations. Subject to and without waiving said objections, Plaintiff answers as follows:

1999-injured physically- State Farm Insurance-recovered about $10,000.00-case was settled. Not sure of what my lawyer had requested.

2002-injured physically-Geico Insurance Agency-recovered about $4,000.00-case was settled. Not sure of what my lawyer had requested.

**INTERROGATORY NO. 21.**      Notwithstanding any information provided at any earlier time, itemize in detail all damages and/or other relief, both monetary and non-monetary, which you are seeking in this action, and for each type of damage and/or other relief, describe the factual and legal bases, if any, that support the claim for such damage and/or other relief, the basis for your contention that it was the result of unlawful discrimination, all persons with personal knowledge of such damages and/or other relief, and all documents that relate to or support such damages and/or other relief.

ANSWER:    Plaintiff demands past and future income and benefits based on his denial of promotion calculated from the date he would have been selected for the Supervisory Exhibits Specialist, GS-1010-12, position (on or about April 22, 2004), and based on his performing higher graded duties at the GS-12 level since 2001 and not being properly compensated for performing at the GS-12 level. Plaintiff also demands compensatory damages in the amount of three hundred thousand dollars for pain and suffering; restoration of sick leave; medical fees and costs; consequential damages for future lost opportunities due to the Agency's discriminatory and retaliatory treatment of him, and attorney's fees and costs.

**INTERROGATORY NO. 22.**      State whether you contend you have experienced any physical, emotional, or mental injuries as a result of the actions alleged in the Complaint, and if your answer to this Interrogatory is yes, identify all the bases for your contention, identify all physicians, psychiatrists, psychologists, and/or other persons who have diagnosed or treated you in connection with the allegations in the Complaint, describe any such diagnosis or treatment, describe all efforts you have made to mitigate your alleged injuries, and state the amount of damages you seek to recover for your alleged injuries and the factual and legal bases for such amount.

ANSWER:    Yes. See below a copy of a letter from my doctor that describes my diagnosis and treatment:

March 19, 2007

Re: Anthony Bowden.
12/14/1959
From: Surriya Azam, M.D.

To whom it may concern:

I am writing this letter on Mr. Anthony Bowden's request to document his psychiatric care with me. I started seeing him on 3/23/2003 as a private patient. His initial symptoms included depression, poor energy, motivation, decreased interest, poor concentration, poor sleep and appetite loss.

In addition to this, he reported excessive anxiety and frequent panic attacks. After the initial evaluation, he was diagnosed with major depressive disorder and panic disorder. Mr. Bowden has reported ongoing job related stress, discrimination and harassment, in addition to many issues with his supervisors. He was refused his due promotion which caused added symptoms of depression, anxiety and physical symptoms.

He was treated with a combination of anti-depressant and anti-anxiety medications. Due to frequent sleep problems, other medication was added to help him sleep. His job related stress affected his daily life. He stayed tensed and anxious even during week-ends. Mr. Bowden has restricted his leisure activities and relationships due to this ongoing stress.

In additional to his emotional problems, he also complained of many physical symptoms which were caused by his job related issues. These physical symptoms include but not limited to headaches, body aches and pains, numbness, tingling of hands, dizzy spells, light headedness, chest tightness, shortness of breath and memory problems.

In December of 2004, his depression got worse and he was hospitalized for suicidal thoughts. This ongoing job related stress has caused significant impairment in all different spheres of his life.

Though depression and anxiety disorders are caused by an imbalance of neurotransmitters, psychosocial stresses play a significant role in causation and maintenance of the symptoms.

In my opinion the medications and therapy would have been more effective if he was not under constant job related stress.

I am board certified Adult Psychiatrist, working full time in acute care hospital setting. In addition, I treat clinic patients and have my own private practice.

In case of additional questions, do not hesitate to contact me at (301)275- 7513.

Sincerely,

Surriya Azam, MD

---

Also, I was sent to see a Psychiatrist that was hired by the Smithsonian although I have not received a report from that meeting.

I was also under the care of Dr. Henry Williams who is my regular doctor, and have been treated at the Washington Hospital Center, Emergency Department; Employment Assistance Program, Smithsonian; and Nurses Station at the National Zoological Park.

I try to mitigate the effects of these conditions by seeking treatment from appropriate medical professionals, complying with their treatment suggestions/recommendations and by opposing, via the appropriate administrative and legal means, the discriminatory conditions and treatment that cause these conditions.

**INTERROGATORY NO. 23.**     Describe in detail any criminal charges that have been brought and convictions obtained against plaintiff or against any witness upon whose testimony or statements plaintiff may rely in any hearing, trial or filing in this action.

ANSWER:    Plaintiff objects to this Interrogatory to the extent that it is irrelevant and immaterial. Subject to and without waiving said objection, Plaintiff answer as follows: I have no knowledge of any criminal charges or convictions against any witnesses. As for myself, I have never been convicted of a felony or of a crime involving moral turpitude.

**INTERROGATORY NO. 24.**     Identify each person who has knowledge or information relevant to allegations in the Complaint, and describe in detail the facts that each such persons is expected to have.

ANSWER:    Plaintiff objects to this interrogatory as redundant as he has already been asked and answered this Interrogatory in Interrogatory No. 1.

**INTERROGATORY NO. 25.**     Identify all documents, reproductions, photographs, video and audio recordings, and oral communications not identified elsewhere in your Answers to Interrogatories that you believe are relevant or relate to any of the allegations of your Complaint, the foregoing Interrogatories, or your Answers to them.

    ANSWER: None at this time

**INTERROGATORY NO. 26.**     For each response to the requests for admission set forth below in which you provide anything other than a full and unconditional admission, please describe in detail the factual basis for your refusal to provide a full and unconditional admission.

    ANSWER:     For requests 1 through 5, inclusive, see the objection(s) stated in response to the specific request. For request 9, see the statement included in the response to that request.

**INTERROGATORY NO. 27.**     Identify each person who participated in any way in the preparation of these discovery responses and the specific Answer(s) with regard to which each person participated.

    ANSWER:     In addition to myself, my attorney Steven J. Silverberg and an attorney in his employ, Bruce W. Stein, assisted in the preparation of these discovery responses.

    **I, Anthony Bowden, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.**

    **Executed on this _25th_ day of September, 2007.**

                                  *Anthony Bowden*
                                  Anthony Bowden

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST No. 1.:**          Please provide a copy of all documents which relate to, or which were consulted or relied upon in preparing, your responses to these discovery requests.

RESPONSE:  Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that these documents are contained in the ROIs and/or Complaint Files for Agency Case Numbers 04-16-080604, 05-10-031805, 05-23- 071105, 06-04-010306, and 06-13-052606 (hereinafter collectively referred to as "the ROI and Complaint Files in this case"); the burden of producing these documents being equal for Plaintiff and Defendant as both Plaintiff and Defendant have possession, custody, and/or control of these documents.  Subject to and without waiving said objections, Plaintiff responds as follows: Please see the ROIs and Complaint Files in this case. Plaintiff also consulted and relied on documents from various medical providers, which have been previously provided to Defendant and/or which are now being provided as a part of Plaintiff's Discovery responses (e.g., see Answer to Interrogatory No. 23). Also see the documents provided herein.

**REQUEST No. 2.:**          Please provide a copy of all documents, including but not limited to electronic mail, drawings, floor plans, and spreadsheets or tables, that provide the factual basis for, or otherwise refer or relate to, each and every allegation in your Complaint.

RESPONSE:    Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that these documents are contained in the ROIs and/or Complaint Files in this case; the burden of producing these documents being equal for Plaintiff and Defendant as both Plaintiff and Defendant have possession, custody, and/or control of these documents.  Subject to and without waiving said objections, Plaintiff responds as follows: Please see the ROIs and Complaint Files in this case. Plaintiff has also previously relied on documents from various medical providers to Defendant and/or which are now being provided as a part of Plaintiff's Discovery responses which relate to the allegations in his Complaint. Also see the documents provided herein.

**REQUEST No. 3.:**          Please provide a copy of all photographs, video recordings, audio tapes or other non-documentary evidence that provide the factual basis for, or otherwise refer or relate to, each and every allegation in your Complaint.

RESPONSE:  None at this time

**REQUEST No. 4.:**    Please provide a copy of any and all documents which support, refer or relate to any claim raised in the Complaint or to any defense raise in response to your claims.

RESPONSE:  Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that these documents are contained in the ROIs and/or Complaint Files in this case; the burden of producing these documents being equal for Plaintiff and Defendant as both Plaintiff and Defendant have possession. custody, and/or control of these documents. Subject to and without waiving said objections. Plaintiff responds as follows: Please see the ROIs and Complaint Files in this case.  Plaintiff also has previously provided documents from various medical providers to Defendant and/or which are now being provided as a part of Plaintiff's Discovery responses. all of which relate to his claims and/or defenses.  Also see the documents provided herein.

**REQUEST No. 5.:**    Provide a copy of any and all documents which would demonstrate: (a) each type of claimed damage and (b) the extent to which you were damaged.

RESPONSE:  Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that these documents are contained in the ROIs and/or Complaint Files in this case: the burden of producing these documents being equal for Plaintiff and Defendant as both Plaintiff and Defendant have possession. custody, and/or control of these documents.  Subject to and without waiving said objections. Plaintiff responds as follows: Please see the ROIs and Complaint Files in this case.  Plaintiff also has previously provided documents from various medical providers, which have been previously provided to Defendant and/or which are now being provided as a part of Plaintiff's Discovery responses, all of which relate to his claimed damages.  Also see the documents provided herein.

**REQUEST No. 6.:**    Notwithstanding the production of documents pursuant to any of these requests, provide any medical reports or treatment notes, or mental/emotional health counseling reports or treatment notes, which a) relate to any damage which you allege was caused or aggravated by Agency action or b) which relate to any injury or medical condition from which you have suffered within the seven years preceding the filing of this action.

RESPONSE:   Please see the medical documents (reports, bills, etc.) previously provided to Defendant and/or which are now being provided as part of Plaintiff's Discovery Responses.

**REQUEST NO. 7.:**                  For each manner in which you have been damaged and have incurred monetary damages, please provide documentary evidence of the extent of the monetary damages.

RESPONSE:   Plaintiff objects to this Request as overbroad and unduly burdensome to the extent that these documents are contained in the ROIs and/or Complaint Files in this case; the burden of producing these documents being equal for Plaintiff and Defendant as both Plaintiff and Defendant have possession, custody, and/or control of these documents.  Subject to and without waiving said objections, Plaintiff responds as follows: Please see the ROIs and Complaint Files in this case.  Plaintiff has also previously relied on documents from various medical providers to Defendant and/or which are now being provided as a part of Plaintiff's Discovery responses which relate to the allegations in his Complaint.  Also see the documents provided herein.

**REQUEST No. 8:**                  Please identify or provide copies of any documents related to any prior EEO counseling or complaints that occurred prior to the initiation of counseling by you in this matter.

RESPONSE:   Plaintiff objects to this document request as overbroad and unduly burdensome as the Defendant has or should have possession, custody, and/or control of these documents, and the burden of obtaining these documents is the same for Defendant as for Plaintiff.

## RESPONSES TO REQUESTS FOR ADMISSIONS

**REQUEST No. 1:**    The factual assertions set forth in the affidavits, declarations and statements that are part of the Reports of Investigation in SI Case No. 04-16-080604 are true and accurate.

RESPONSE: Plaintiff objects to this request as vague, overbroad, unduly burdensome and contradictory as each of the "affidavits, declarations and statements" that are part of the ROI contain numerous allegations of facts, some which may or not be true or false, and some which may contradict another allegation of fact elsewhere in the ROI. Plaintiff cannot possibly admit or deny "all" of the assertions of fact in *all* of the "affidavits, declarations and statements" as a single group. Federal Rule of Civil Procedure 36 requires that "[e]ach matter of which an admission is requested shall be separately set forth." This request improperly requires Plaintiff to respond to large numbers of vague and contradictory allegations.

Plaintiff also objects to this Request for Admission as impossible to respond to as to other person's affidavits, declarations and statements because he cannot possibly always know for certain if other persons' assertions are true and accurate.

**REQUEST No. 2:**    The factual assertions set forth in the affidavits, declarations and statements that are part of the Reports of Investigation in SI Case No. 05-10-031805 are true and accurate.

RESPONSE: Plaintiff objects to this request as vague, overbroad, unduly burdensome and contradictory as each of the "affidavits, declarations and statements" that are part of the ROI contain numerous allegations of facts, some which may or not be true or false, and some which may contradict another allegation of fact elsewhere in the ROI. Plaintiff cannot possibly admit or deny "all" of the assertions of fact in *all* of the "affidavits, declarations and statements" as a single group. Federal Rule of Civil Procedure 36 requires that "[e]ach matter of which an admission is requested shall be separately set forth." This request improperly requires Plaintiff to respond to large numbers of vague and contradictory allegations.

Plaintiff also objects to this Request for Admissions as impossible to respond to as to other person's affidavits, declarations and statements because he cannot possibly always know for certain if other persons' assertions are true and accurate.

**REQUEST No. 3:**    The factual assertions set forth in the affidavits, declarations and statements that are part of the Reports of Investigation in SI Case No. 05-23-071106 [sic][1] are true and accurate.

RESPONSE:  Plaintiff objects to this request as it is impossible for Plaintiff to respond to as Plaintiff is not in possession of any such ROI for the cited case and to the best of Plaintiff's knowledge, information and belief there is no ROI for the cited case as Defendant did not investigate this particular complaint. Plaintiff further objects to this interrogatory request as vague, overbroad, unduly burdensome and contradictory as each of the "affidavits, declarations and statements" that are part of any ROI contain numerous allegations of facts, some which may or not be true or false, and some which may contradict another allegation of fact elsewhere in the ROI. Plaintiff cannot possibly admit or deny "all" of the assertions of fact in *all* of the "affidavits, declarations and statements" as a single group. Federal Rule of Civil Procedure 36 requires that "[e]ach matter of which an admission is requested shall be separately set forth." This request improperly requires Plaintiff to respond to large numbers of vague and contradictory allegations.

Plaintiff also objects to this Request for Admissions as impossible to respond to as to other person's affidavits, declarations and statements because he cannot possibly always know for certain if other persons' assertions are true and accurate.

**REQUEST No. 4:**    The factual assertions set forth in the affidavits, declarations and statements that are part of the Reports of Investigation in SI Case No. 06-04-010306 are true and accurate.

RESPONSE:  Plaintiff objects to this request as it is impossible for Plaintiff to respond to as Plaintiff is not in possession of any such ROI for the cited case and to the best of Plaintiff's knowledge, information and belief there is no ROI for the cited case as the Defendant failed to investigate this particular complaint. Plaintiff further objects to this interrogatory request as vague, overbroad, unduly burdensome and contradictory as each of the "affidavits, declarations and statements" that are part of any ROI contain numerous allegations of facts, some which may or not be true or false, and some which may contradict another allegation of fact elsewhere in the ROI. Plaintiff cannot possibly admit or deny "all" of the assertions of fact in *all* of the "affidavits, declarations and statements" as a single group. Federal Rule of Civil Procedure 36 requires that "[e]ach matter of which an admission is requested shall be separately set forth." This request improperly requires Plaintiff to respond to large numbers of vague and contradictory allegations.

---

[1]The correct case number is 05-23-071105.

Plaintiff also objects to this Request for Admissions as impossible to respond to as to other person's affidavits, declarations and statements because he cannot possibly always know for certain if other persons' assertions are true and accurate.

**REQUEST No. 5:**   The factual assertions set forth in the affidavits, declarations and statements that are part of the Reports of Investigation in SI Case No. 06-13-052606 are true and accurate.

RESPONSE:  Plaintiff objects to this request as vague, overbroad, unduly burdensome and contradictory as each of the "affidavits, declarations and statements" that are part of the ROI contain numerous allegations of facts, some which may or not be true or false, and some which may contradict another allegation of fact elsewhere in the ROI. Plaintiff cannot possibly admit or deny "all" of the assertions of fact in *all* of the "affidavits, declarations and statements" as a single group. Federal Rule of Civil Procedure 36 requires that "[e]ach matter of which an admission is requested shall be separately set forth." This request improperly requires Plaintiff to respond to large numbers of vague and contradictory allegations.

**REQUEST No. 6.:**   A true and correct copy of the Stipulation of Settlement And Dismissal agreed to by plaintiff in Bowden v. Heyman, Civil Action No. 97-0545 JR, is attached hereto as Exhibit A.

RESPONSE:  Admit.

**REQUEST No. 7.:**   Plaintiff was not present at, or able to hear, the discussions between his supervisors and the person performing the desk audit described in the Complaint.

RESPONSE:  Admit

**REQUEST No. 8.:**   Plaintiff was transferred to his present position at the Smithsonian Institution's National Zoological Park pursuant to the terms of the settlement agreement on March 14, 1999.

RESPONSE:  Admit as to being transferred to the NZP pursuant to the terms of the settlement agreement. Plaintiff also notes that he believes that the transfer date of March 14, 1999 is accurate, but he cannot definitively admit to this because he cannot remember for certain..

**REQUEST No. 9.:**   Plaintiff did not show by objective evidence within two pay periods of the Court's approval of the Stipulation of Settlement And Dismissal in Bowden v. Heyman, Civil Action No. 97-0545 JR, that any leave he used while at the agency was used as a direct result of his medical condition that was the basis for his claim pursuant to the Rehabilitation Act.

RESPONSE:   Plaintiff objects to this request as vague as the term "objective evidence" is not defined, and virtually any form of evidence could be considered "objective evidence." Notwithstanding and without waiving said objection, Plaintiff responds as follows: Deny. Plaintiff and/or his attorney provided the Agency with the required documentation prior to or within the required time period.

Respectfully submitted,

Steven J. Silverberg, D.C. Bar #377376
Attorney for Plaintiff
900 17th Street N.W.
Suite 1250
Washington, D.C. 20006
Tel: (202) 785-8499
Fax: (202) 785-8470
E-Mail: sjsilverberg@erols.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of September, 2007, a copy of the above and foregoing Plaintiff's Answers and Responses to Defendant's First Discovery Request to Plaintiff was served by hand delivery to:[2]

> W. Mark Nebeker
> Assistant United States Attorney
> Civil Division
> 555 4th Street, N.W.
> Washington, DC  20530

_____
Steven J. Silverberg

---

[2] A copy of Plaintiff's Answers and Responses to Defendant's First Discovery Requests to Plaintiff without the attached documents was also delivered through e-mail to Defendant's attorneys at mark.nebeker@usdoj.gov and gloverm@si.edu. on September 24, 2007.