# PLAINTIFF'S EXHIBIT 14

Report of Investigation, Case No. 05-10-031805—Statement of Jeff Baxter, Tab F-2

STATEMENT
and
RESPONSE TO INTERROGATORIES

District of Columbia, to-wit:

I, Jeff Baxter, provide the following statement and responses to interrogatories freely and voluntarily to Herbert L. Jackson who has identified himself to me as a Contract EEO Investigator for the Smithsonian Institution, investigating a complaint of discrimination filed by Anthony Bowden ("Complainant") against the Smithsonian Institution, knowing that this statement and responses to interrogatories may be used in evidence. I understand that this statement and responses to interrogatories is not confidential and may be shown to any interested party (those with a legal right to know).

I understand that the Complainant alleges that he was subjected to reprisal and/or discriminated against on the basis of his race (African American), color (Black), and/or disability (mental) when, during the period from June 2004 through March 18, 2005, he was harassed which created a hostile work environment. Specifically, the Complainant alleges the following incidents, among others, as evidence of hostilities:

(a)  Beginning approximately June 2004 Complainant was directed to work with unsafe workshop equipment and an unsafe (lower workshop) area;
(b)  On December 22, 2004, Complainant received a "Confirmation of Counseling" memo;
(c)  On January 22, 2004, Complainant was told to begin scheduling his sick leave;
(d)  Complainant was continually questioned about his whereabouts; and
(e)  On March 1, 2005, Complainant received a "Fully Successful" performance appraisal.

INTERROGATORIES:

1.  Please provide your current position title; length of time in current position; your race, color disability status, whether or not you have participated in previous EEO activity (as a complainant, respondent, or witness), your phone number, and your supervisor's name, title and phone number.

Response:

Supervisory Exhibits Specialist and I started in this position June 1, 04, and I am white with no disabilities I responded to a complaint filed by Anthony Bowden on August 6, 04. SI Case NO.: 04-16-0080604

2.  What is your business relationship to the Complainant, and how long has this relationship been effective?

Response:

1

I am his supervisor, and this relationship has been in effect since June 1, 2004.

3.    In June 2004, was the Complainant directed to work in the lower shop area? If so, who gave him that directive? Additionally, what was the Complainant asked to perform in that workshop?

Response:

As the Complainant's supervisor I did direct my staff to work on projects that were and are related to the Park's maintenance. This would require some prep work in the Exhibits storage / shop area, this was an area that was set up as a shop before I started to work at the Zoo, and if the work could not be preformed in the Exhibits shop then to coordinate the work with the OFEO shop setup near by.

3(a)    When you state that you "directed your staff to work on projects that ... require some prep work in the Exhibits storage / shop area", please provide the names of those so directed that I might confirm this statement.

Response:
With in my staff structure I have 2 Visual Information Specialists who are Ernie Robinson and Herman Krebs and 3 Exhibits Specialists who are Anthony Bowden, Arlene Grace Lopez and Sherod Mangum.

4.    Complainant alleges that when he was directed to work in the lower shop area, there was no heating provided, there was improper ventilation/exhaust for fumes, chemicals and sawdust, and machinery improperly bolted down when he was asked to work there. Please comment on this allegation?

Response:

First, I would like to say that I do want my staff to be safe. I have told my staff that if they do not feel safe about doing specific jobs a certain way, not to do it. But suggest other ways in which the job could be completed. We did have the Safety officer review the shop area and it was determined that we could do work in the space to the extent that we would do work in the field. Also please look at the response for number 3.

4(a).    Please provide the Safety Officer's name and phone number.

Response:
James Hilton 202 / 633 - 4411

5.    Did you have plans, and/or mention to the Complainant about a project for Grace Lopez to perform in the lower shop, but stated that the project would be put on-hold until the heating problem had been addressed? If true, when did you make this statement and assessment?

2

Response:

> Yes, Ms, Lopez was working on the way-finding project and yes I suggested that an area could be set up in the lower shop to work on, which was done before as I understand it. For the most part my staff is familiar with other staff projects, not to the last detail but the general scope and direction. When I was asked if the project could be put on hold, we looked at the schedule and saw that there was some flexibility in it. The Project that Ms Lopez was working on would take some time to do. And as I try to do with all of my staff I wanted them to set up and do the project the way they felt most comfortable and still get the project completed. This was and is the same for the Complainant or any of my staff that if they have another way to complete a task I have no problem changing to an alternate method or schedule if it works with the overall project. In the end Ms Lopez pulled the supplies from the lower shop and was able to work on the project in the Graphic Production / office area.
>
> In an e-mail to the complainant dated 2/7/05 I stated -To your question are you the only person being requested to work in the lower shop – No, you are not. On 1/25 I reviewed a project with you so that you had the information that you needed to do it. I did agree that the temp was low. But at its coldest the shop was 52 degrees. I had been trying to get the heat improved and in fact I had seen improvement in the temperature the next day. Also the project (I believe was the shoot box for the Visitor Center graphics unit) that I was reviewing with you was one that would not have taken a long time to complete, it was a project that could have been done in the other wood shop, or taken breaks as needed, and it was a project that could have been completed by 1 or 2 people.
>
> Also I do not require my staff to work in the shop for a prolonged period of time, if a project needs to get done we should be able to do the work or to find alternate ways of doing the work, and I also told my staff to take breaks from an area or project as needed. I told my staff that I was trying to get the heat improved and when asked if a project or work could wait until the shop was warmer I said yes or looked into other ways of getting a project completed. There were also times when I would meet with staff in the shop area to review a project; some of these projects were a short duration project or a project that could be worked on by more then one person.

5(a).    Please provide the names of the "staff" you are referring to.

Response:

> Again, I am referring to all of my staff. With in my staff structure I have 2 Visual Information Specialists who are Ernie Robinson and Herman Krebs and 3 Exhibits Specialists who are Anthony Bowden, Arlene Grace Lopez and Sherod Mangum.

6.    Did you, on March 9, 2005, direct the Complainant to set-up the lower shop as it should be (because it was his responsibility to do so)?

Response:

3

>I have spoken to all of my staff about my desire to see the exhibit shop become the best that it can be. I specifically spoke to Ernie Robinson, Sherod Mangum and the Complainant about my desire to improve the exhibits shop, and I did speak to the complainant about taking the lead on this project. I supervise 5 staff, but Ernie Robinson, Sherod Mangum and the complainant use the exhibits shop the most and of these 3 the complainant and Sherod Mangun are the Exhibit Specialists and do must of the exhibit maintenance, repair and installation, it seemed logical to have the senior Exhibit Specialist coordinating how best to set up the shop. In addition it is listed in the Performance Plan that I reviewed with the complainant under Production Shop Functions "Coordinates activities involving equipment, materials and supplies" and is listed in the Position Description under Major Duties " "and set up Production Shop areas".
>
>The improvement of the Exhibit Production Shop is and will be an on going project until we get the shop to be the best that it can be.

6(a).   Please provide a copy of this Performance Plan.

Response:

7.   The Complainant alleges that you told him that it was his responsibility to direct Sherod Mangum (and Ernest Robinson) to assist in getting the shop set-up because the Complaint has supervisory authority as a Team Leader. Is this allegation true? Is the Complainant's job title that of Team Leader?

Response:

>I directed the complainant to take the lead on this project of setting up the exhibits shop. I wanted the staff who would be using the exhibit shop the most to be involved in the planning and layout of the shop.
>
>With in the complainant's Performance Plan that I reviewed with him in July, of 2004 under item 2 Production Shop Functions: Leads projects activities in the Production Shop, also Coordinates activities involving equipment, materials and supplies, and is listed in the Position Description under Major Duties "Incumbent must possess working knowledge to direct, train, oversee, coordinate and evaluate the work of exhibit production personnel (of a lower grade)"

8.   The Complainant alleges that you and he have never reviewed his job duties or his position description. Is this allegation true? Please provide a copy of the Complainant's current position description(s) and any other he may have had for the past five years.

Response:

I did review the complainant's Performance Plan with him in July of 2004. When I started, I stated that the Position Descriptions and the Performance Plans would remain the same. I reviewed the Performance Plan with the complainant and gave the complainant a copy, (the complainant declined to sign the Performance Plan).

9. Which of your other subordinates (by race, color, EEO status, and date of assignment) have been directed to perform their duties in the lower shop?

Response:

The lower shop is storage space, staging area and workshop. At different times all of the staff under my supervision has needed to work in the lower shop area. Some of the projects were to supervise and coordinate the work of outside contractors, some were to pulling supplies from stock, and some were to work on repairs to exhibit units or graphics. With in my staff structure I have 2 Visual Information Specialists and 3 Exhibits Specialists. Of the 3 Exhibit Specialists one is focused on the production of Vinyl signage and 2 are focused in exhibit production, installation and repair. This is the same structure that was in place when I started. As to my staff's race, color and EEO status please speak with OEEMA.

10. Did you present the Complainant with a "letter confirming counseling," dated December 17, 2004? If so, what was the letter for?

Response:

Yes. The letter of Confirmation of Counseling was for an incident in the G.S.B. 2nd level hallway out side the conference room in which you stated Ms Lopez is a "crazy lady". This outburst in an open area was witnessed by several staff including Chuck Fillah and another supervisor

11. Complainant alleges that you investigated certain allegations raised by Ms. Elena Lopez that proved to be baseless, yet you still gave him the letter confirming counseling. Please state what the allegation prompting your investigation was, and what your finding was at conclusion of your investigation of Ms. Lopez's allegation.

Response:

Yes, it was reported by Ms Elena Lopez that she overheard an inappropriate conversation in an open office environment. I did investigate this incident and found no supporting evidence. The Letter of Counseling was not for this incident but for the incident in the 2nd level hallway in the G.S.B. in which you called Ms Elena Lopez a "crazy lady" (see response to # 10)

12. Please provide the names of your other subordinates (by race, color, EEO status, and date of action) whom you have presented either with a letter confirming counseling or any other disciplinary action via memorandum within the past three years.

5

Response:

>I have been back at the Smithsonian only since June 1, 2004. The last 7 years I worked at the Cleveland Museum of Art in Cleveland Ohio. In all the years of supervising I have written only 2 letters of disciplinary action and 1 was when I was working at the C.M.A. and the 1 for the complainant is the other.

13. Did you (during a meeting that included Ernest Robinson, Chuck Fillah, the Complainant and you) make the statement to the Complainant that you "don't trust you people?" If so, what did you mean by that statement?

Response:

>No, but during a meeting that included Ernie Robinson the Complainant, Chuck Fillah I started to say that you don't just automatically give someone your trust but that trust is developed over time. During the meeting people were interrupting each other so I am not sure what the complainant heard. Also the complainant had asked me about this point sometime after the meeting and I repeated with out interruption that I feel I have to earn my staffs trust, that its not just given.

14. Did you at some point direct the Complainant to start "scheduling" his sick leave? If so, for how long did the Complainant use sick leave before he was asked to start scheduling it?

Response:

>I asked all of my staff that if they know that they have a Doctors appointment or need to be off for any reason to give me a leave slip as early as possible so that I could better plan out the projects.

15. Please provide the names of other subordinates (by race, color, and EEO status) whom you have also directed to start scheduling their sick leave.

Response:

>I asked all of my staff (this would include Herman Kreps, Ernie Robinson, Grace Lopez, the complainant and Sherod Mangum) that if they know that they have a Doctors appointment or need to be off for any reason to give me a leave slip as early as possible so that I could better plan out the projects. As to my staff's race, color and EEO status please speak with OEEMA.

16. What is the Agency's policy on requesting/taking sick leave? Does it require an employee to schedule sick leave in advance? Please provide a copy of that sick leave policy.

6

Response:

    The leave police for the Graphics and Exhibits Management Team is in compliance with that of the Smithsonian, I will send you a copy of our policy for you to review if you wish.

16(a)   Please provide a copy of sick leave policy.

Response:
    See Attachment

17.    The Complainant alleges that you continually inquire into his whereabouts, even though you have been made aware of his need for certain workplace accommodations. Was there ever a time when the Complainant spoke with you about his medical conditions and a need for a reasonable accommodation (e. g, to take short breaks to go to the rest room and to get food for taking with medication, etc.)? If so, what was the nature and content of the discussion(s) and information conveyed to you?

Response:

    I have asked all of my staff to let me know when they will be going out of the Park during working hours, or if they are going to be out in the Park for a length of time, in general to communicate the projects that they are working on, where they would be working , and an estimate of how long. I also want to know if my staff is starting before or working pasted their schedule work time, these are times that I 1) -- would need to sign off on and 2) -- I want them to get the credit for the work that they are doing. I do not need to track when somebody takes a break. But there are times that I may look for staff and they may be on a break. Yes the complainant did speak to me about it being agreed upon that he would have some work place accommodations and for the most part it is what you have listed. I have no problem with reasonable accommodation as in the examples that you gave above. But it is my responsibility to know the whereabouts of my staff and the projects that they are working on.
    I have tried to made it a practice to let one of my staff know when I am going out into the park or away from my office for any length of time and I have asked my staff to do the same, so that if someone is looking for them at least one of the staff will have an idea of when they will be back.

18.    Were you ever made aware of Complainant's 1999 discrimination case settlement that allowed him the accommodations mentioned above? If so, when were you made aware of these accommodation privileges?

Response:

    I'm not sure of when I became aware of the complainants accommodation, I did find a copy of the accommodations as I was reviewing my staff information.

7

19. The Complainant alleges that there came a time when you requested he attend an OPS meeting in which only supervisors were present? Is this allegation true? Furthermore, the Complainant maintains that this requirement is beyond his current job responsibilities. Please comment fully on this allegation.

Response:

    I have requested a number of my staff to attend an OPS meeting, Ernie Robinson, Herman Krebs, Grace Lopez, and I know that other supervisors have sent staff also. The EO group started sending staff members so that 1- other departments got to know other members of our staff, and 2- So that our staff could get information first hand.

20. The Complainant alleges that on March 1, 2005 he received a performance evaluation of "fully successful" that incorrectly appraises his level of performance. Additionally, why the delay from January 2005 (when his supervisors signed-off on it) and March 2005 when it was presented to the Complainant? Please explain fully the basis for the fully successful and the delay in presenting it to the Complainant.

Response:

    I do not understand the question about the Performance Appraisal rating of "Fully Successful" and that this rating, incorrectly appraises his level of performance in fact during the review of his Appraisal the complainant stated that the review was higher then he expected.
    I reviewed the Performance Appraisal with the complainant on 1/31/05 at which time I believe I gave him a copy to review that was not signed. I later signed the Appraisal and noted that the complainant declined to sign the review. I believe I put the Appraisal in a file, with my workload I did not realize that I had not given the complainant a signed copy until later.

21. Were there any other staff members for whom you performed and presented a performance evaluation concurrent with that given the Complainant? If so, who were they?

Response:

    I reviewed or worked on the reviews for all of the staff under my supervision around the same time period. My staff consists of 5 staff members, 2 Visual Information Specialists who are Ernie Robinson and Herman Krebs and 3 Exhibits Specialists who are Anthony Bowden, Arlene Grace Lopez and Sherod Mangum.

22. Please provide a list of names, position, by race, color, EEO status and last performance evaluation (by date and period) for all staffers reporting to you, along with the performance ratings.

Response:

8

With in my staff structure I have 2 Visual Information Specialists who are Ernie Robinson and Herman Krebs and 3 Exhibits Specialists who are Anthony Bowden, Arlene Grace Lopez and Sherod Mangum. As to my staff's race, color and EEO status please speak with OEEMA. The last Performance Evaluation, by date and rating are as follows Ernie Robinson - Extension, Herman Krebs 1/27/05 - Outstanding, Anthony Bowden 1/31/05 – Fully Successful, Grace Lopez 1/26/05 Outstanding, Sherod Mangum – Extension.

23. Are you aware that the Complainant has participated in prior EEO activity, both as a witness and as a Complainant? If so, when did you become aware of his prior EEO activity? Were you involved in any way in this prior EEO activity?

Response:

Yes I am aware that the complainant has participated in prior EEO activities. I am not certain as to the date that I became aware, but I responded to a complaint filed by Anthony Bowden on August 6, 04. SI Case NO.: 04-16-0080604

24. Is there any additional information you'd like to provide or any witnesses I should speak with as relates to these allegations?

Response:


I solemnly swear or affirm that the above information/responses, being provided by me, are true to the best of my knowledge and belief.

_____   Date: 6-15-05
Jeff Baxter

_____
EEO Investigator

9