UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY BOWDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2202 RBW |
| | ) |
| CRISTIÁN SAMPER, Acting Secretary, | ) |
| Smithsonian Institution, | ) |
| | ) |
| Defendant. | ) |
| | ) |

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

I.  INTRODUCTION

Following discovery in this action, Defendant filed a Motion For Judgment On The

Pleadings Or, In The Alternative, For Summary Judgment with Defendant's Statement Of

Material Facts Not In Genuine Dispute ("Statement Of Material Facts").  On July 30, 2008,[1]

Plaintiff opposed the motion.  Defendant submits that Plaintiff has offered no basis to proceed

further and that summary judgment in favor of Defendant is appropriate.

---

[1] Plaintiff suggests that Defendant was somehow untimely in filing the exhibits
referenced in the dispositive motion because they were filed after the motion. See Pl. Opp. at 2,
fn.2. Defendant believes that he was within the letter of Local Civil Rule 7(h) and Fed. R. Civ. P.
56, when it provided clear citations to the records which "include[d] references to the parts of the
record relied on to support the statement." Local Civil R. 7(h). Those references were specific in
identifying not just exhibit numbers, but specific descriptions of the exhibits themselves so that
Plaintiff could identify immediately what document was being relied upon. Then, within a week,
copies of the exhibits were labeled and filed with the Court. Nothing in the cases cited by
Plaintiff in the above-referenced footnote requires the filing of the exhibits at the time a motion
for summary judgment is filed. Plaintiff received the labeled exhibits over three months before
he opposed the dispositive motion and he, himself, has filed one of his exhibits after the date the
opposition was due without seeking leave of Court. See Docket No. 36. Thus, the request in his
footnote that the dispositive motion should be denied based on the delay in filing of the exhibits
is unfounded.

## II.  ARGUMENT

To survive summary judgment, the nonmoving party must offer more than mere allegations, <u>Anderson</u> [v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)], by going "beyond the pleadings and by its own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 324 (1986).

* * *

[L]egal conclusions "cloaked" as facts are not sufficient to create a genuine issue of material fact.

<u>United States</u> v. <u>BCCI Holdings</u>, 977 F. Supp. 1, 6 (D.D.C. 1997), <u>aff'd</u> <u>mem.</u>, 159 F.3d 637 (D.C. Cir. 1998).  Plaintiff has conceded most of the specific facts proffered by Defendant. Where Plaintiff has challenged the proffered material facts, he has either not properly supported his challenge or the matter is not material to the outcome of the motion.

### PLAINTIFF'S STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE ISSUE VIOLATES LOCAL RULE 7(h)

Local Rule 7(h) requires that an opposition to a motion for summary judgment "shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  When a non-moving party fails to comply with Local Rule 7(h), the Court may assume that the facts identified by the moving part are admitted.  <u>See</u> Local Civ. Rule 7(h).  Plaintiff's "Statement of Facts As To Which There Is A Genuine Issue" ("Pl. SOF") violates the Local Rule.  The facts identified in Defendant's statement of material facts should be "deemed admitted because they have not been adequately controverted."  <u>Canning</u> v. <u>Dep't of Defense</u>, 499 F.Supp.2d 14, 16 (D.D.C. 2007).

The Local Rule 7(h) procedure is designed to "isolate[]the facts that the parties assert are

material, distinguish[] disputed from undisputed facts, and identif[y] the pertinent parts of the record." <u>Hunter</u> v. <u>Rice</u>, 480 F.Supp.2d 125, 130 (D.D.C. 2007). It "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." <u>Canning</u>, 499 F.Supp.2d at 16 (internal citation and quotation omitted) (parenthetical quotation). A statement of fact that fails to satisfy these purposes violates the Local Rule. <u>Hunter</u>, 408 F.Supp.2d at 130.

Plaintiff's Statement of Facts violates Local Rule 7(h) for several reasons. First, Plaintiff's statement is not "concise": it is 57 pages, more than 3 times the length of Defendant's 18-page statement, and filled with excess verbiage. Second, Plaintiff's statement does not "isolate" or "crystallize" the facts Plaintiff contends are material. Many of Plaintiff's responses to Defendant's (largely) single-sentence factual assertions contain paragraphs, or even pages, of excess, unresponsive commentary, quotations, and allegations, which muddy the issues in dispute and violate the letter and spirit of the Rule. <u>See</u>, <u>e.g.</u>, Pl. SOF at 1-3; 20-22; 31-33; 34-37; 40-42.

Third, Plaintiff's statement of facts repeatedly and improperly blends factual assertions with argument. <u>Canning</u>, 499 F.Supp.2d 16 (disregarding statement of facts for this reason). <u>See</u>, <u>e.g.</u>, Pl. SOF at 4 ("Mr. Bowden's e-mail . . . cannot be read to support Defendant's expansive interpretation"); <u>id.</u> at 12 ("This is a misreading of ambiguously worded witness testimony"); <u>id.</u> at 15 ("Defendant's euphemistic characterization of Mr. Baxter's tirade as a 'scolding' soft-pedals the importance and emotional impact of the event at issue"); <u>id.</u> at 34 ("There is a great deal of evidence discrediting Ms. Dolnick's . . . self-serving testimony /concerning her alleged reasons for 'dissatisfaction with the pool of candidates"); <u>id.</u> at 49

(quoting complaint); id. at 52 ("Defense counsel's venomous, sarcastic tone in paragraph 78 perpetuates and perfectly encapsulates the nasty tone of ongoing harassment directed by the Agency against Mr, Bowden . . . .).  Plaintiff argues points even when admitting facts set forth in Defendant's statement.  See Pl. SOF at 29 ("Again, this uncontested statement is incomplete and misleading"); id. at 43, 44.

For all of these reasons, Plaintiff's statement of facts does not comply with Local Rule 7(h) and the facts identified in Defendant's statement of material facts should be deemed admitted.

DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S REPRISAL CLAIMS (COUNTS VI, X, XVI).

Plaintiff raised three retaliation claims in his Second Amended Complaint.  He alleged that Defendant retaliated against him by (i) creating a hostile work environment (Count VI); (ii) failing to select him for the Supervisory Exhibits Specialist position (Count X); and (iii) failing to properly compensate him (Count XVI).  Defendant established elsewhere in Defendant's filings that summary judgment is appropriate with respect to the hostile work environment, non-selection and unsuccessful desk-audit claims.  Defendant further establishes below that summary judgment is also appropriate on the hostile work environment reprisal claim because the challenged actions would not dissuade a reasonable employee from making a charge of discrimination; summary judgment is appropriate on the non-selection hostile work environment claim because Plaintiff has not produced sufficient evidence of pretext; and summary judgment is appropriate on the failure to compensate hostile work environment claim because Defendant's argument has been conceded.  See Pl. Opp. at 40.

- 4 -

In the short section in Plaintiff's opposition brief dealing with reprisal (Pl. Opp. at 38-39), Plaintiff attempts to raise additional reprisal claims that were not set forth in his Second Amended Complaint.  For example, Plaintiff asserts reprisal claims based on failure to accommodate a disability, failure to enforce a settlement agreement, and other asserted grounds. See Pl. Opp. at 39.  The Count in Plaintiff's Second Amended Complaint dealing with the settlement agreement (Count XVII) did not contain a reprisal claim.  See Second Amended Complaint at 39-40.  Similarly, the Count in Plaintiff's Second Amended Complaint dealing with the Rehabilitation Act did not contain a reprisal claim.  See id. at 40.[2]  Plaintiff may not pursue any such reprisal claims that were not stated in his Second Amended Complaint.  To the extent Plaintiff is seeking to pursue such claims, summary judgment in favor of Defendant would be appropriate anyway.  Plaintiff complains that his earlier settlement agreement was not satisfied, because his need for breaks to eat, use the restroom and get fresh air were met with questions by his supervisor about where he had been when he was missing.  See Pl. Opp. at 40.  Nowhere in the Settlement Agreement, however, was the Agency prohibited from asking Plaintiff where he has been when his supervisor could not locate him.  See Defendant's Exhibit 37 (Stipulation Of Settlement And Dismissal), ¶¶ 3, 11.[3]  Nor does the simple request that a missing employee

---

[2] In Count XI, Plaintiff alleged in part that Defendant created a hostile work environment based on disability in reprisal for Plaintiff's EEO activity.  That allegation is dealt with in Defendant's hostile work environment argument.

[3] Indeed, the breaks that Plaintiff negotiated in his settlement agreement were limited to "short breaks to go to the bathroom or if he is not feeling well."  Stipulation of Settlement and Dismissal, ¶ 3.  It is difficult to imagine how the agency could verify that Plaintiff's absence was authorized under this paragraph if his managers were precluded from asking whether Plaintiff's absence was, for instance: 1) a break from work as opposed to an instance where Plaintiff was working elsewhere; 2) necessitated by a need to go to the bathroom or to overcome an ill feeling, 3) short, or 4) simply unexcused.  Nothing in the Settlement immunizes Plaintiff from having to

explain his whereabouts when asked by his supervisor constitute the sort of action that would

"dissuade a <u>reasonable</u> worker from making or supporting a charge of discrimination."  <u>See</u>

<u>Rochon</u> v. <u>Gonzales</u>, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (emphasis added).

      Similarly, Plaintiff cannot <u>reasonably</u> complain that more of the agency was required

when a female co-worker was passing by Plaintiff as she was carrying cakes through a crowded

room and she ran into Plaintiff.  The agency took a police report, but a prosecution was not

pursued.  <u>See</u> Baxter Depo. at 157-58.  Under the circumstances, Plaintiff cannot reasonably

claim that more was mandated to avoid a hostile work environment.

      DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON <u>PLAINTIFF'S</u>
      <u>NON-SELECTION CLAIMS (COUNTS VII-X)</u>.

      Defendant has demonstrated that summary judgment should be granted with respect to

Plaintiff's claims that the failure to select Plaintiff for the position of Supervisory Exhibits

Specialist constitutes unlawful discrimination based on race, color, disability, and reprisal

(Counts VII-X of the Amended Complaint).  <u>See</u> Def. Mem. at 18-27; <u>See</u> Dolnick Depo. at 214,

230 (Mr. Baxter had more "production knowledge," more "supervisory" experience, more

"budgeting" experience, and more "project management" experience than plaintiff).  The

evidence demonstrates that Mr. Baxter, not plaintiff, was more qualified for the Supervisory

Exhibits Specialist position, and that Mr. Baxter was selected for the position based on his

qualifications.  <u>See id.</u>  This evidence compels summary judgment.

      Plaintiff acknowledges that Defendant has offered a non-discriminatory reason for Mr.

Baxter's selection (his qualifications), and that Plaintiff, to survive summary judgment, must

explain his absences.  <u>Id</u>.

demonstrate that Defendant's proffered reason is a pretext for discrimination.  See Pl. Opp. at 31.

Thus, Plaintiff must "produce sufficient evidence for a reasonable jury to find that [Defendant's]

asserted non-discriminatory reason was not the actual reason and that [Defendant] intentionally

discriminated against [him][.]"  Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494

(D.C. Cir. 2008); see also, Chappell-Johnson v. Bair, Civil Action No. 06-1074 RCL, __

F.Supp.2d __, 2008 WL 4058674 (D.D.C. Sep. 3, 2008) (Docket No. 27); Chappell-Johnson v.

Bair, Civil Action No. 06-1074 RCL, __ F.Supp.2d __, 2008 WL 4058674 (D.D.C. Sep. 3,

2008)(Docket No. 28).  Plaintiff has not made this showing.

 Plaintiff offers a host of reasons in an attempt to show pretext, none of which has merit.

For example, in Defendant's opening brief, Defendant explained that management revised the

initial job announcement for the Supervisory Exhibit Specialist position to place a greater

emphasis on production skills, including, but not limited to, the ability to manage graphic

production files using Filemaker and Quark Express.  See Def. Mem. at 19, 20 n.6.[4]  Plaintiff

claims the announcement was revised to "merely add[] qualifications aimed at excluding

[plaintiff] from qualifying for the position."  Pl. Opp. at 31.  But Plaintiff did qualify for the

position:  he was one of four persons who made the certification list and he was interviewed for

the job.  See Def. Mem. at 20.  He simply lost out to a more qualified candidate.  Moreover, the

"evidence" Plaintiff cites in support of his argument (Pl. Opp. at 31) is conjecture and not

_____

 [4] Plaintiff argues (Pl. Opp. at 31-32) that testimony from a Zoo management official that "we often change [job] announcements" (see Def. Mem. at 19 n.6 (citing testimony)) is inadmissible expert testimony.  Plaintiff is wrong.  Evidence concerning practices at the Zoo is not "expert" testimony and is not offered as such.  Indeed, this evidence was elicited by Plaintiff's counsel during a deposition called by Plaintiff.  See Def. Ex. 22 at 1, 73.  Plaintiff's witness Mr. Krebs also testified that he had seen job descriptions at the Zoo revised, including as many as three times.  See Pl. Ex. 3 at 188.

sufficient to persuade a reasonable jury of Plaintiff's pretext claim. Herman Krebs testified he

was just "guessing" when he said the job announcement was revised to "exclude" Plaintiff. Pl.

Ex. 3 at 188. Ernest Robinson testified that his sense that management did not want Plaintiff to

get the position was "just from past history." See Robinson Depo. at 217-18. Mr. Robinson

explained that after Mr. Baxter was hired, Mr. Baxter demonstrated that his abilities with

computer software were not as strong as he had indicated before he was hired. See id. at 219.

Mr. Baxter's application, undisputedly indicates that he did present himself as having significant

experience to include the following:

> As Designer/Detailer at the Freer and Sackler Galleries of Art,
> Smithsonian, and as Head of Design and Production at the Cleveland Museum of
> Art, it was my responsibility to manage exhibition production files. Production-
> managing software with wh[i]ch I am familiar [] are Excel, Filemaker, Auto Cad,
> Quark Express and others.

Exhibit 26 (Baxter Application, Response Selective Factor #3).

> [I]t was my responsibility to develop, manage and track budgets for multiple
> projects using Filemaker and Excel.

Exhibit 26 (Baxter Application, Response Quality Ranking Factor #5). Moreover, there is no

dispute that Mr. Baxter also claimed that as Designer/Detailer at the Freer and Sackler Galleries

of Art and as Head of Design and Production at the Cleveland Museum of Art, he had "the ability

to manage and track production files for the purpose of re-use, which would include use of

"Auto Cad, Filemaker and Quark." Exhibit 26 (Baxter Application, Response Quality Ranking

Factor #7). Whether or not Mr. Baxter was later successful in using these computer skills would

have no bearing on whether he was believed by Ms. Dolnick to be proficient in them. The

evidence of his later unsuccessful efforts to use the software could not have constituted any

evidence that Ms. Dolnick wrongly believed Mr. Baxter to have the skills. She simply could not

have known what Mr. Baxter might do in the future.

Plaintiff asserts that the ability to use Filemaker and Quark Express was "not even germane to the job." Pl. Opp. at 32. But even Plaintiff has admitted this is not so: elsewhere in his brief, for instance, Plaintiff states only that these software programs were not "essential to daily operations work in the Zoo's sign shop." Id. at 29 n.7. Plaintiff cannot establish pretext based on whether (or not) a particular Selective Factor in a vacancy announcement is truly "essential" to the position of Supervisory Exhibits Specialist. Courts lack authority, under Title VII, "to become a 'super-personnel department that reexamines an entity's business decisions.'" Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (internal citation omitted); accord Chappell-Johnson v. Bair, Civil Action No. 06-1074 RCL, __ F.Supp.2d __, 2008 WL 4058674 at *8. Moreover, Plaintiff does not dispute that his department had been trying for some time to install and utilize Filemaker and that his supervisor "wanted the software to work." Def. Mem. at 27 (citing Plaintiff's 2/20/08 Depo. at 91, 130; accord Plaintiff's 12/4/07 Depo. at 203 and Exhibit 40 (Plaintiff's Depo. Ex. 18). And while Plaintiff asserts that Mr. Baxter is not "well-versed" or an "expert" in using Filemaker and Quark Express (Pl. Opp. at 32), Plaintiff does not argue that he was more qualified than Mr. Baxter with respect to these software programs.

Plaintiff raises a number of general arguments concerning an alleged "pattern of adverse and disparate treatment" (Pl. Opp. at 33), none of which is sufficient evidence to establish pretext. For example, Plaintiff quotes an affidavit submitted by Mr. Krebs at the administrative level in support of one of Plaintiff's EEO complaints. See id. Mr. Krebs stated that Lynn Dolnick (the deciding official with respect to the promotion) "felt uncomfortable with men and

with African Americans." Id.  But Ms. Dolnick hired Mr. Baxter, a male candidate.[5]  Plaintiff

also argues (id.) that Ms. Dolnick "never promoted any blacks as high as GS-12 during Mr.

Bowden's tenure at the Zoo."  It is true that the Supervisory Exhibits Specialist position was a

GS-12, but using this Grade as a cut-off for determining pretext is artificial and insufficient to

establish that Ms. Dolnick intentionally discriminated against Plaintiff in her hiring decision.

Brady, 520 F.3d at 494.  Plaintiff admits that Dolnick promoted an African-American employee

and that this employee was at least a GS-11.  See Pl. Opp. at 33, Pl. Ex. 1 at 108.[6]

     Plaintiff's argument that Defendant has "resort[ed] to shifting, after-the-fact and/or

inherently incredible reasons to justify [its] promotion decision" (Pl. Opp. at 34) is meritless.

Plaintiff suggests it is somehow inconsistent to say, on the one hand, that Ms. Dolnick

encouraged Plaintiff to apply for the Supervisory Exhibits Specialist position, and, on the other,

that Ms. Dolnick ultimately determined that Plaintiff was not the most qualified candidate for the

job.  Id. at 34, 35.  There is no such inconsistency.  It is perfectly appropriate – and certainly not

_____

     [5]  Plaintiff also quotes from an affidavit submitted by Judith Tasse.  See Pl. Opp. at 33.
Ms. Tasse acknowledged in her affidavit that she had "no official knowledge about the selection
process" for the Supervisory Exhibits Specialist position.  Pl. Ex. 12 at 3.

     [6]  Citing to his deposition, Plaintiff asserts that Ms. Dolnick "vowed never to promote Mr.
Bowden to a salary level equal to Mr. Bowden's first-line supervisor, Kathleen Samiy, a white
woman, and that Ms. Dolnick laughed at the notion of Mr. Bowden being a supervisor."  Pl. Opp.
at 34.  This misstates Mr. Bowden's testimony.  See, e.g., Plaintiff's 2/20/08 Depo. at 77
(Plaintiff stated he heard that Ms. Samiy, not Ms. Dolnick (the hiring official), "had a problem
with [Plaintiff] being promoted because . . . Kathleen, you know, was saying that she didn't feel
it would be fair, I mean, for me to make the same money she did and a bunch of stuff."); id. at 78
(Plaintiff stated he heard Ms. Dolnick "laughed" that Plaintiff "thinks he's a COTR").
Moreover, Plaintiff, at his deposition, was simply repeating information he allegedly heard from
someone else.  See id.  These statements are "sheer hearsay" and cannot provide sufficient
evidence to defeat a summary judgment motion.  Greer v. Paulson, 505 F.3d 1306, 1315 (D.C.
Cir. 2007).

illegal – for management to encourage an employee to apply for a vacancy for which the supervisor believes the employee may be competitive, but to hire someone else (a superior applicant) after reviewing all of the candidates.[7]

Plaintiff argues that "doubt[s] . . . [about] the integrity of the hiring process" raise an inference of discrimination, because Ms. Dolnick allegedly "interviewed" a person named "Lance" and someone named "Becky Donnelly" before the Exhibit Supervisory Specialist position was posted.  Pl. Opp. at 35 & Pl. SOF at 34.  Plaintiff appears to believe that "Lance" and Ms. Donnelly were "pre-selected" for the position.  Pl. Opp. at 37.  But neither of these persons was hired for the job.  Mr. Baxter was.[8]

Plaintiff has produced no evidence which would enable a reasonable jury to conclude that Defendant's asserted non-discriminatory reason for selecting Mr. Baxter for the Supervisory Exhibits Specialist position – Mr. Baxter's qualifications – "was not the actual reason and that [Defendant] intentionally discriminated against [Plaintiff.]"  Brady, 520 F.3d at 494.  The

---

[7]  Nor is it "inherently incredible" that Ms. Dolnick would revise the initial vacancy announcement.  See Pl. Opp. at 34.  Plaintiff applied under this announcement, but Ms. Dolnick was not satisfied with the overall pool of candidates because certain persons "who had never done production were being rated highly" under the ranking factors in the first announcement.  See Def. Exhibit 20 at 207-09.  Plaintiff attempts to discredit Ms. Dolnick's testimony (Pl. Opp. at 35), but does not dispute:  (i) that under the first announcement certain persons who had never done production were being rated highly; (ii) that Ms. Dolnick wanted to emphasize production skills; or (iii) that the revised announcement in fact emphasized production skills.

[8]  Plaintiff also argues (Pl. Opp. at 36) that there is "evidence" that Defendant "failed to abide by its own stated policies."  But Plaintiff's "evidence" relates to unrelated hiring decisions and issues.  See id. ("[d]uring the hiring of Kathleen Samiy for the position of Production Supervisor, Dolnick asked staff members of a lower grade level than the position being selected to provide her an advance review of candidates.").  Plaintiff has not demonstrated how this "evidence" has any bearing on Defendant's decision to hire Mr. Baxter for the Supervisory Exhibits Specialist position.

evidence establishes that Mr. Baxter was hired based on his superior qualifications.  See Def.

Mem. at 19-27.  For these reasons, and those set forth at length in Defendant's opening brief,

Defendant's motion for summary judgment on Counts VII-X should be granted.

PLAINTIFF HAS FAILED TO ESTABLISH A HOSTILE WORK ENVIRONMENT CLAIM
(COUNTS  I-VI).

Plaintiff's argument in support of his hostile work environment claim concedes that he

must present facts that would support a reasonable juror on concluding that the plaintiff has been

the victim of "an objectively hostile or abusive work environment. . ."  Pl. Opp. at 8 (citing

George v.  Leavitt, 407 F.3d 405, 416 (D.C. Cir. 2005).  The Court in George summed up the

proper analysis as follows:

> "[W]hether an environment is 'hostile' or 'abusive' can be determined only by
> looking at all the circumstances.  These may include the frequency of the
> discriminatory conduct; its severity; whether it is physically threatening or
> humiliating, or a mere offensive utterance; and whether it unreasonably interferes
> with an employee's work performance." Harris [v. Forklift Systems Inc., 510 U.S.
> 17, 23 (1993)]. The Supreme Court has made it clear that "conduct must be
> extreme to amount to a change in the terms and conditions of employment."
> Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d
> 662 (1998). For example, "simple teasing, offhand comments, and isolated
> incidents (unless extremely serious) will not amount to discriminatory changes in
> the terms and conditions of employment." Id. (citation and internal quotation
> marks omitted).  In light of these well-established principles, the District Court
> correctly recognized that the facts alleged by George, even if true, would not
> permit a reasonable jury to conclude that George's workplace was "permeated
> with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe
> or pervasive to alter the conditions of [her] employment and create an abusive
> working environment.  At best, they constitute exactly the sort of " isolated
> incidents" that the Supreme Court has held cannot form the basis for a Title VII
> violation.  Accordingly, the District Court's grant of summary judgment . . . on
> this claim was proper.

George v. Leavitt, 407 F.3d at 416-17.

Plaintiff, even if he was outraged by the conduct of those around him, was not acting in a manner that would have had such an effect on a reasonable person.  Thus, perhaps because Plaintiff admittedly suffers from panic disorder[9] his conclusory assertions are not themselves necessarily sufficient to constitute harassment unless the <u>facts</u> would support a reasonable juror in concluding that the actions support an <u>objectively</u> hostile  or abusive work environment. Pl. Opp. at 8 (<u>citing</u> <u>George</u> v. <u>Leavitt</u>, 407 F.3d at 416.

The facts presented by Plaintiff when placed in context, simply do not meet the standard set forth in <u>George</u> v. <u>Leavitt</u> and <u>Harris</u> v. <u>Forklift Systems Inc.</u>  Plaintiff suggests that his working environment was made hostile because he was criticized for wearing biking pants around the office when others were not.  Pl. SOF at 29-30.  Again, the record to which Plaintiff draws the Court's attention distinguishes how Plaintiff was different from the other employees whom Plaintiff says were not criticized.  Plaintiff has testified that he would sometimes bike to work in tight-fitting bike pants that had a padded seat.  <u>See</u> Plaintiff's 12/4/07 Depo. at 163-64. He argues that Mr. Krebs and Ms. Lopez were not criticized.  Pl. SOF at 29.  Plaintiff, however, makes no assertion that he was ever sanctioned by anyone for wearing his biking clothes. Instead, he claims only that he was criticized.  <u>See</u> Plaintiff's 12/4/07 Depo. at 162-65; <u>see</u> <u>also</u> Krebs Depo. at 171 ("I have just a vague recollection of her [Kathleen Samiy] saying that the clothing was inappropriate.")  Plaintiff has complained that he had to use saws in the lower shop without proper ventilation, <u>see</u> Second Amended Complaint, ¶ 28(a), but Plaintiff has admitted

---

[9] According to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), "The essential feature of Panic Disorder is the presence of recurrent, unexpected Panic Attacks. . . ."  <u>See</u> <u>Reeves</u> v. <u>Johnson Controls World Services, Inc.</u> 140 F.3d 144, 148 (2d Cir. 1998); <u>Baguer</u> v. <u>Apfel</u>, 65 F.Supp.2d 1345, 1357 n.7 (M.D. Fla. 1999).

that he could use a dust mask and that he was not required to use the saws much after he

complained.  Plaintiff's 12/04/07 Depo. at 120-21; Plaintiff's 2/20/08 Depo. at 72-73.

Plaintiff's remaining complaints about the assertedly "hostile" environment also make out

no objectively hostile circumstances.  He cites his largely conclusory affidavit as evidence of

additional hostile actions.  See Plaintiff's SOF at 31-33 and Plaintiff's Exhibit 16.  In the exhibit,

Plaintiff makes assertions that simply are not sufficient to cause a reasonable person to feel they

have been subjected to conduct that was hostile, offensive or abusive.  For example, Plaintiff

claimed that his supervisor, Mr. Baxter, "demands" that work be done rather than "asks" that the

work be done. Plaintiff's Exhibit 16 at page 11.  Plaintiff claims he was told to do work that

Plaintiff believes should be done by Mr. Baxter (Plaintiff's supervisor and the Supervisory

Exhibits Specialist), such as repairing the panels in the Panda house (id. at page 12);[10] Plaintiff

complains that his supervisor communicated with him mostly by email (id.);[11] Plaintiff

complains that his supervisor demanded to know his whereabouts (id.),[12] questioned employees

under Plaintiff's supervision, such as welders (id., Second Amended Complaint, ¶ 28(j)), delayed

speaking to an Employee Assistance Program ("EAP") employee about Plaintiff's condition

---

[10]  Not surprisingly, repairing the panels in the panda house is not among the specific
duties of the supervisor.  See Exhibit 19 (Docket No. 32).  Plaintiff's refusal to accept such
responsibilities delegated to him would, however, explain his inability to maintain an outstanding
performance rating.

[11]  Plaintiff, however, also complained of additional discrimination when on September
10, 2004, Mr. Baxter "notified us that he does not want us to communicate any longer using E-
Mails.  He stated that when E-Mails are used this causes confusion and people misunderstand
what's being said."  Defendant's Exhibit 3 at 1.

[12]  Plaintiff argues that Ms. Grace Lopez was not required to follow the same rules about
keeping her supervisor informed of her whereabouts, but admits that Ms. Lopez was always on
time.  Plaintiff's 2/20/08 Depo. at 163.

(Plaintiff's Exhibit 16 at page 12); Plaintiff claims he was required to wait for an accurate

Position Description (id.);[13] Plaintiff's supervisor gave Plaintiff 12 work tickets (id. at page 11);

Plaintiff's supervisor instructed other employees to be cautious in how they spoke to Plaintiff

because of his medications. Id.[14]  Plaintiff's assertions simply fail to rise to the level of a hostile

work environment when viewed in context.

      The allegation that his supervisor used the term "you people" as many as three times over

the years[15] does not satisfy the hostile working environment threshold.  See Second Amended

Complaint, ¶ 28(h).[16]  Mr. Baxter does not specifically recall using the term, but does recall that

all he was trying to convey in the conversation was that he had to learn to trust the people under

his supervision, just as they had to learn to trust him.  See Baxter Depo. at 121 (The discussion

was "referring to people don't just automatically trust people.  It takes time.  It has to be earned

and developed.") ; see Plaintiff's 2/20/08 Depo. at 282-85 (recounting Baxter's use of the term

"you people" in a conversation with plaintiff in 2004, once again a year later in another

---

[13]  All of the employees, however, had position descriptions that did not accurately reflect the details of their jobs.  See Krebs Depo. at 130-31.

[14]  Plaintiff suggests that he was required to clean animal feces off the wall in the Giraffe house.  See Plaintiff's SOF at 32.  But, Plaintiff admitted in his deposition that after he complained about having to clean the walls in the giraffe area, he did not have to clean them  See Plaintiff's 2/20/08 Depo. at 279 (Question: "And did you ultimately end up having to clean those walls in the giraffe area?" Answer [by Plaintiff]:"I didn't have to clean those, but it just took so long for me to convince him that it wasn't safe for me.")

[15]  Plaintiff appears to count among the uses of "you people" later instances where Mr. Baxter was explaining what he meant in the earlier conversation.  See Plaintiff's 2/20/08 Depo. at 282-85; Baxter Depo. at 122.

[16]  No other use of any alleged racial epithets are claimed to have been made by anyone in the office.  See Robinson Depo. at 70-72.

conversation with just Plaintiff, and a third time later in 2005 in a conversation with Plaintiff, Chuck Fillah (a white male) and Ernest Robinson (a black male)); Robinson Depo. at 70-72(heard Mr. Baxter use the term "you people" only once, when Baxter first arrived).  The term is simply not sufficiently egregious, even when repeated three times over two years, to constitute a hostile work environment.[17]  Elsewhere, Plaintiff asserts that management recounted an ethnic joke about Asians (Pl. SOF at 32), but that assertion is apparently based on Plaintiff's subjective complaint that when asked for a "'laundry list' of work that needed to be performed," the supervisor added to the request "extra starch, extra starch."  Exhibit 3 at 2-3.  Even added to the earlier claims by Plaintiff, this does not create a hostile work environment.

_____PLAINTIFF HAS CONCEDED DEFENDANT'S MOTION WITH RESPECT TO THE DESK AUDIT/FAILURE TO COMPENSATE CLAIMS (COUNTS XI-XVI).

We demonstrated in our opening brief that summary judgment should be granted with respect to Plaintiff's desk audit/failure to compensate claims (Counts XI-XVI of the Amended Complaint).  See Def. Br. at 27-34 (addressing these counts, which allege discrimination based on race, color, sex, religion, disability, and reprisal).  Plaintiff's brief contains no substantive opposition to defendant's arguments.

Indeed, Plaintiff, in his 44-page brief, makes only two fleeting references to his desk audit/failure to compensate claims.  See Pl. Opp. at 1 (in summarizing complaint, noting claims relating to "the Zoo's refusal . . . to pay [plaintiff] adequately"); id. at 39 (in a section on retaliation, stating that "the Agency has subjected Plaintiff to other adverse actions, including

---

[17]  According to Plaintiff, Mr. Baxter was apparently not told that the term was deemed offensive until the last time it was used.  See Plaintiff's 2/20/08 Depo. at 282-85.

refusal to properly compensate him; . . . ").  Neither of these passing references engages – or disputes – the substantive arguments set forth in defendant's brief.

The Local Rules state that if a party fails to file an opposition, "the Court may treat the motion as conceded."  See Local Civ. Rule 7(b).  As this Court has explained, in the context of a discrimination case:  "[i]t is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  Buggs v. Powell, 293 F.Supp.2d 135, 141 (D.D.C. 2002) (Walton, J.) (granting motion to dismiss non-selection claim as unopposed).  See also Nails v. England, 311 F.Supp.2d 116, 122 (D.D.C. 2004) (Roberts, J.) (granting motion to dismiss retaliation claim as unopposed).

The Court should treat Defendant's motion with respect to Counts XI-XVI as conceded. See Buggs, 293 F.Supp.2d at 141.  Plaintiff had an adequate opportunity to respond to all of defendant's challenges to the desk audit/failure to compensate claims.  Plaintiff received two extensions of time to file his opposition, filed a lengthy brief, but declined to address Defendant's arguments with respect to these Counts.  Summary judgment on Counts XI to XVI should be granted.[18]

---

[18]  In his "Statement of Facts As To Which There Is A Genuine Issue," Plaintiff responded to the facts in Defendant's "Statement of Material Facts As To Which There Is No Genuine Dispute" relating to plaintiff's desk audit/failure to compensate claims.  See Pl. SOF at 43-48.  This is insufficient to constitute an opposition to defendant's motion under Local Civ. Rule 7(b) for several reasons.  First, the Local Civ. Rule requires an opposition brief – a "memorandum of points and authorities in opposition to the motion."  See Local Civ. Rule 7(b). Second, Plaintiff's Statement does not address the legal arguments upon which Defendant seeks summary judgment.  See Buggs, 293 F.Supp.2d at 141 ("a court may treat those arguments that the plaintiff failed to address as conceded") (emphasis added).  Third, Plaintiff's Statement, while occasionally phrased with caveats, admits many of the material facts identified by Defendant.  See Pl. SOF at 43-48.  Fourth, the facts Plaintiff attempts to dispute are supported

_____PLAINTIFF HAS CONCEDED DEFENDANT'S MOTION WITH RESPECT
TO THE BREACH OF CONTRACT CLAIM (COUNT XVII).

Defendant's opening brief demonstrated that summary judgment should be granted with

respect to Plaintiff's claim that Defendant breached a prior settlement agreement with Plaintiff

(Counts XVII of the Amended Complaint).  See Def. Mem. at 34-43.  Defendant argued that

summary judgment should be granted with respect to this breach of contract claim for three

independent reasons:  (i) first, because the Court lacks subject matter jurisdiction over Plaintiff's

claim under the Tucker Act (see id. at 34-37); (ii) second, because, even assuming jurisdiction,

plaintiff failed to state a claim for relief under the settlement agreement (see id. at 37-41; 43-45);

and (iii) third, because plaintiff's breach of contract claim is untimely under the applicable statute

of limitations (see id. at 41-43).

Plaintiff's opposition does not address Defendant's first and third arguments – threshold

arguments relating to jurisdiction and statute of limitations – which are independently dispositive

of Plaintiff's breach of contract claim.  By failing to address these points, Plaintiff has conceded

Defendant's motion with respect to breach of contract.  See Buggs v. Powell, 293 F.Supp.2d

135, 141 (D.D.C. 2005) ("[i]t is understood in this Circuit that when a plaintiff files an

opposition to a dispositive motion and addresses only certain arguments raised by the defendant,

a court may treat those arguments that the plaintiff failed to address as conceded.").

Even putting these points aside, Plaintiff's argument that he has stated a claim for relief

_____

directly by documents the authenticity of which Plaintiff does not dispute.  See Pl. SOF at 47-48
(acknowledging, in several places, that the Federal Position Description Cover Sheets states that
the classification of plaintiff's position is "based on OPM classification standards" and explains
the classification categories).  Fifth, even if Plaintiff's Statement could satisfy Local Civ. Rule
7(b), Defendant would be entitled to summary judgment based upon the admitted facts, the
record evidence, and the merits of Defendant's legal arguments.

- 18 -

under the settlement agreement lacks merit.  In his opposition, Plaintiff states that he is

withdrawing the portion of his breach of contract claim relating to unpaid leave (Pl. Opp. at 40),[19]

but that he is pursuing the portion of his claim concerning "the terms of the [Settlement]

Agreement whereby the Agency had agreed to make certain specific reasonable accommodations

to Mr. Bowden's medical condition."[20]  Id.  According to the settlement agreement:

> Following Bowden's transfer, the Smithsonian Institution will continue the
> accommodations which he has been receiving at the National Museum of Natural
> History.  Those accommodations are: (a) to allow Bowden short breaks to go the
> bathroom or if he is not feeling well, (b) to permit Bowden to go outside for a
> breath of fresh air when working in the spray booth, and (c) to allow Bowden to
> eat snacks when he takes his medication.  Bowden will continue to be permitted
> time for doctors' appointments in accordance with agency policies and availability
> of leave.  Such accommodations are accorded as a result of this settlement and do
> not constitute an admission of the existence of any disability.

Def. Exhibit 37 at 1-2, ¶ 3.[21]

Defendant argued in his motion that the Smithsonian has lived up to its obligations under

this provision of the agreement, citing supporting evidence in the record.  See Def. Mem. at 43-

44 (bathroom breaks); 9-10 (scheduling sick leave).  Plaintiff's principal response (Pl. Opp. at

---

[19]  Plaintiff suggests that somehow the Defendant was at fault for Plaintiff only recently learning that he had been compensated through workers compensation.  See Pl. Opp. at 39-40.  In fact, the materials were provided to Plaintiff within a week of receiving the materials from the Department of Labor.  Plaintiff, of course, had already received the pay for these days on which he was ill, and thus was on notice that he had been compensated.  Accordingly, Plaintiff should not have claimed otherwise in his pleadings. See Second Amended Complaint, ¶ 16.

[20]  Plaintiff stated at his deposition, however, that he was only challenging the provision of his settlement agreement relating to sick leave.  See Plaintiff's 12/4/07 Depo. at 9-14, 38 (Def. Exhibit 2).

[21]  Plaintiff contends that Defendant violated the settlement agreement by "fail[ing] to take appropriate action regarding an assault on Plaintiff by his co-worker Elena Lopez."  Pl. Opp. at 40.  This issue is not addressed in the settlement agreement and cannot provide a basis for a claim of breach.

40-41) is to cite the allegations in his Second Amended Complaint, which is insufficient to defeat a motion for summary judgment. See Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial."); see also Gustave-Schmidt v. Chao, 360 F.Supp.2d 105, 112 (D.D.C. 2004) ("The District of Columbia Circuit has stated that the non-moving party may not rely solely on mere conclusory allegations.").  Plaintiff also makes statements in his brief with no record support.  For example, Plaintiff argues that "[t]he record confirms that Mr Bowden was singled out for this harassment about his bathroom habits," but cites no evidence supporting that allegation.  See id. at 42.[22]  This cannot defeat summary judgment.

Plaintiff also alleges that he was "questioned about his medical appointments, when co-workers were not."  See Pl. Opp. at 42.  The deposition excerpt and affidavit Plaintiff cites in support do not corroborate this statement.  See Pl. Ex. 3 at 233, Pl. Ex. 12.  Moreover, Plaintiff has not alleged that he ever was denied sick leave for an inappropriate reason.  For all of these reasons, Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim (Count XVII) should be granted.

---

[22]  In Plaintiff's statement of facts – which, as explained above, should not be considered because it violates the Local Rules – Plaintiff cites excerpts from depositions of co-workers to support his contention that he was asked "to account for his whereabouts" (Pl. SOF at 30), but these excerpts do not relate to Plaintiff's "bathroom habits.  Indeed, the pages cited by Plaintiff to Mr. Ferster's deposition reveal that Mr. Ferster did not feel that his or Plaintiff's comings and goings were "closely monitored" See Ferster Depo. (Pl. Ex. 19) at 69-70 (cited in Pl. SOF at 31).

_____DEFENDANT'S MOTION SHOULD BE GRANTED WITH RESPECT TO
PLAINTIFF'S REHABILITATION ACT CLAIM (COUNT XVIII).

Plaintiff's argument with respect to his Rehabilitation Act claim (Pl. Opp. at 41-43)

largely incorporates his argument on his breach of contract claim, and lacks merit for the reasons

explained above.  The only additional issue addressed in Plaintiff's opposition is Plaintiff's

contention that Defendant "insisted that Mr. Bowden continue to attend staff meetings where

Elena Lopez would be present."  Pl. Opp. at 42.  This issue is addressed fully in Defendant's

opening brief.  See Def. Mem. at 44-45.  Defendant allowed Plaintiff to sit in the back of the

room or near an exit at staff meetings and allowed Plaintiff to leave the meeting if he felt

uncomfortable.  Defendant has demonstrated that this accommodation was reasonable and

Plaintiff's opposition offers nothing to rebut this showing.  Defendant's motion should be

granted.

III.  <u>CONCLUSION</u>

For these reasons and those previously presented to the Court judgment should be entered

in favor of Defendant.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

OF COUNSEL:
Craig M. Blackwell
Assistant General Counsel
Smithsonian Institution
Washington, DC 20854

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing reply has been made through the

Court's electronic transmission facilities on this 16th day of September, 2008.


_____ /s/
W. MARK NEBEKER
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, DC  20530
(202) 514-7230